EXHIBIT C

SETTLEMENT AGREEMENT

AGREEMENT made as of the 9th day of May, 1983 by and between "BOSTON", a Massachusetts oral partnership, consisting or which has consisted of Donald T. Scholz, Brad Delp, Sib Hashian, Barry Goudreau and Fran Sheehan ("Boston"), BOSTON WORLD TOURS, INC., a California corporation ("BWT") and BARRY GOUDREAU ("Goudreau").

WHEREAS, Goudreau is and has been an equal partner in that Massachusetts oral partnership known as "BOSTON";

WHEREAS, Goudreau is and has been a one-fifth (1/5) shareholder in BWT;

WHEREAS, Goudreau became involved in disputes with the other members of "BOSTON", resulting in Goudreau's having commenced litigation against said members, which litigation Goudreau is now willing to discontinue with prejudice in consideration of this Agreement;

WHEREAS, Goudreau now wishes to retire from "BOSTON", and to cease performing with the group professionally known as "BOSTON";

WHEREAS, Goudreau now wishes to sell all his interest in BWT;

000046 (13)

WHEREAS, the parties hereto wish to facilitate said retirement and interest sale by enumerating the compensation, rights and interests of Goudreau;

NOW, THEREFORE, in consideration of the premises and the agreements hereinafter contained, the parties hereto agree as follows:

1. By the execution hereof, the parties acknowledge that Goudreau is no longer, and he has ceased to be, a partner in Boston, and as such shall have no interest, right nor title to the name "BOSTON", nor to any recording royalties, performing rights royalties, performance income, copyright interests or payments, or financial interest therein, except as provided herein.

2. As full consideration for Goudreau's retirement, Boston agrees to pay to Goudreau the following payments:

A. <u>Future Recordings</u>: With respect to the next (third) Boston album only, the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000) shall be paid to Goudreau as set forth in Section 2.A(1) below. Thereafter, Goudreau shall receive no other royalties with respect to the next (third) Boston album or any other subsequent album recorded by Boston in the future. However, Goudreau shall not be entitled to

-2-

receive any royalties whatsoever under this Section 2.A if no albums are released after the date hereof under the name "Boston". The parties hereto agree to send to CBS, Inc. and any other persons or entities which are required to make payments to Boston in which Goudreau has an interest, irrevocable letters of direction providing for direct payment to Goudreau of such payments.

(1) Payment Schedule for Future Recordings: The $100,000 payment obligation set forth in Section 2.A hereof shall be paid to Goudreau as follows: (a) Goudreau shall receive concurrently with the issuance by CBS, Inc. of the first semi-annual royalty statement after the release of the third Boston album (the "first statement"), that portion of FIFTY THOUSAND DOLLARS ($50,000) determined by multiplying $50,000 times the fraction computed by dividing the number of complete months of sales of such third album reflected in the first statement by six (6); (b) concurrently with the issuance by CBS, Inc. of the second semi-annual royalty statement after the release of the third Boston album (the "second statement"), Goudreau shall receive FIFTY THOUSAND DOLLARS ($50,000); and (c) if the

-3-

first payment contained under clause (a) above is less than $50,000, concurrently with the issuance by CBS, Inc. of the third semi-annual royalty statement after the release of the third Boston album (the "third statement"), Goudreau shall receive the difference, if any, between ONE HUNDRED THOUSAND DOLLARS ($100,000) and the amount theretofore received by him. (By way of illustration, should the album be released in October of a calendar year such that sales of the album for the full months of November and December are included in a royalty statement rendered in the following March, Goudreau would receive two-sixths (2/6) of $50,000 or $16,666.66 concurrently with the first statement, an additional $50,000.00 concurrently with the second statement and the balance of $33,333.34 concurrently with the third statement).

B. <u>Current Partnership Assets</u>: The parties hereto agree that the current book value of the Boston partnership is Forty Thousand Dollars ($40,000), and Goudreau shall therefore receive or retain one-fifth (1/5) of said assets of Boston consisting of musical instruments and equipment having a value of EIGHT THOUSAND DOLLARS ($8,000).

-4-

C. **Previous Recordings:** The parties hereto expressly agree that Goudreau shall continue to receive his full one-fifth (1/5) royalty (paid in the same manner as is paid to BOSTON) on the two Epic albums by Boston, known as "BOSTON" and "DON'T LOOK BACK" and also the same proportionate share on any future use of individual sides of these same original recordings, said sides agreed to be: "More Then A Feeling", "Peace of Mind", "Foreplay/Long Time", "Rock and Roll Band", "Smokin'", "Something About You", "Hitch A Ride", and "Let Me Take You Home Tonight", each of which is embodied in the album known as "BOSTON" and "Don't Look Back", "The Journey", "A Man I'll Never Be", "Feeling Satisfied", "Party", "Used to Bad News", and "Don't Be Afraid", each of which is embodied in the album known as "DON'T LOOK BACK"; also, any previously unreleased BOSTON material on which Goudreau has played, Goudreau shall receive this one-fifth (1/5) royalty interest, as defined above.

D. **Expenses:** Goudreau shall be entitled to be reimbursed $16,486.70, which the parties hereto expressly agree shall be deemed to represent that portion of the expenses previously deducted from Goudreau's royalty payments since July 1, 1981,

-5-

which expenses the parties hereto agree shall be deemed for the purpose of this Agreement to have been expended in connection with the third Boston album (hereinafter said $16,486.70 is referred to as the "Expenses".) The parties further agree that Goudreau shall not be entitled to reimbursement of any other expenses that may have been charged to him. Goudreau shall not be charged with any further ongoing expenses of the group Boston following the date of this Agreement.

(1) Payment Schedule for Expenses: The Expenses shall be payable at the same time and in the same manner as specified in the Payment Schedule for Future Recordings as set forth in Section 2.A(1) hereof, except that for the purpose of determining the amount payable at the time of the rendering of any royalty statement, the sum of $8,243.35 (50% of $16,786.70) shall be substituted for $50,000 (50% of $100,000).

(2) Notwithstanding the foregoing paragraph, should a third Boston album not be released on or before December 31, 1983, Goudreau shall receive $8,243.35 not later than January 31,

-6-

1984. Thereafter, should a third Boston album not be released on or before December 31, 1984, Goudreau shall receive the remaining $8,243.35 not later than January 31, 1985. To the extent that Goudreau receives payments under this sub-section 2.D(2) hereof and a third Boston album is ultimately released, such amounts will be credited against and satisfy the payment obligation of sub-section 2.D(1) hereof.

E. Guarantee of Royalty and Expense Payments: In the event that a third Boston album is released and there are insufficient royalties to pay Goudreau the amount to which he is entitled under Section 2.A hereof, Donald T. Scholz, Brad Delp, Sib Hashian and Fran Sheehan personally guarantee, jointly and severally, payment of said monies. Scholz, Delp, Hashian and Sheehan shall also be jointly and severally liable for the $16,486.70 expense payment set forth in Section 2.D hereof.

D. The Name "BOSTON": The parties hereto expressly agree that Goudreau may use the term "Formerly of Boston" for and in conjunction with any biographical usage with respect to future performances, but, except to this extent, Goudreau shall have no other interest, right or title to the name

-7-

"BOSTON." Without limiting the foregoing, Goudreau may not use the name "BOSTON" for or in conjunction with any advertisement or promotion.

3. Boston and Goudreau acknowledge that there presently exists a recording royalty deferment plan with CBS, Inc. whereby certain monies are due or shall become due Boston. Boston and Goudreau agree that when said monies become due and payable to Boston because of said current deferment plan, Goudreau's interest in said sums shall be unaffected by this agreement, and Goudreau shall be entitled to his full share as if he were still a one-fifth (1/5) partner in Boston. Goudreau acknowledges that he shall have no right or interest in any future deferment plans, unless said plans involve royalties due Goudreau hereunder.

4. BOSTON WORLD TOURS hereby redeems all of Goudreau's shares and interest in BWT for an amount equal to one-fifth (1/5) of the book value of BWT as of the date hereof. As such, Goudreau shall cease to be a shareholder in BWT and shall have no right or interest in said corporation except as specified herein. BWT acknowledges that Goudreau's interest as of the date hereof in the pension and profit sharing plan of BWT, which the parties have been advised by AMES & ASSOCIATES has a current value of approximately Seventy Two Thousand Dollars ($72,000.00), shall remain the same and

-8-

payable on the same terms and conditions as presently contained in said pension and profit sharing plan. The parties agree that, at Goudreau's election, his interest in said plan will be transferred to him or to any qualified plan designated by him. Goudreau acknowledges that except for the above stated rights, he shall have no further right or title to any other payment under the above plans nor any future contributions to said plans or compensation from BHT whatsoever.

5. With respect to any and all payments, accountings, royalty statement or any financial information relevant to any monies due Goudreau hereunder, Goudreau shall have access to said financial information as if he were still a member of Boston, and any objections by Boston to statements rendered by CBS, Inc., Epic Records or Ahern Associates or any other person or entity shall be deemed to have been made additionally by Goudreau, it being understood that any future amendments or modifications resulting from such objections shall not affect Goudreau's rights hereunder.

6. The parties hereto agree that, simultaneously with the execution of this Agreement, Goudreau shall execute and deliver to Scholz, Delp, Hashian and Sheehan, a stipulation discontinuing the action Goudreau v. Scholz et al., Essex Superior Court No. 82-2050 (1982), with prejudice and without costs. At the same time, the parties hereto shall exchange general releases which shall except therefrom only the obli-

-9-

gations of the parties under this Agreement. The parties further agree to execute and deliver such other and further documents as may be reasonably required to effectuate the terms of this Agreement. Nothing herein shall be deemed to constitute an admission as to any of the allegations made in the complaint in such action.

7. This Agreement may be executed in any number of counterparts and, notwithstanding that all of the parties did not execute the same counterpart, each of the counterparts shall, for all purposes, be deemed an original, and all such counterparts shall constitute one and the same instrument binding on all of the parties hereto.

8. This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Massachusetts applicable to agreements made and to be performed entirely in Massachusetts.

9. Miscellaneous Provisions.

A. Communications. All notices, offers, approvals, consents, acceptances, waivers, reports, requests and other communications required or permitted to be given hereunder (all of the foregoing hereinafter collectively referred to as "Communications") shall be in writing and shall be deemed to have been duly given if delivered

-10-

personally with receipt acknowledged or sent by registered or certified mail or equivalent, if available (air mail if out-of-town), postage prepaid, such telex or cablegram was sent), addressed to the parties at the following addresses or to such other or additional address as any party shall hereafter specify by Communication to the other parties:

(a) If to Scholz:

Donald T. Scholz

(b) If to Delp:

Brad Delp

(c) If to Bashian:

Sib Hashian
30 Courtland Lane
Lynfield, Massachusetts  01940

(d) If to Sheehan:

Fran Sheehan

(e) If to Goudreau:

Barry Goudreau

-11-

A copy of any Communication sent to Scholz and/or Delp shall be sent to Frederick R. Cummings, Jr., Esq., Warshaw Burstein Cohen Schlesinger & Kuh, 555 Fifth Avenue, New York, New York 10017. A copy of any Communication sent to Sheehan and/or Bashian shall be sent to Lawrence C. Zalcman, Esq., One Boston Place, Boston, Massachusetts 02108. A copy of any Communication sent to Goudreau shall be sent to Peter Herbert, Esq., Parcher & Herbert, 500 Fifth Avenue, New York, New York 10110.

Except as otherwise provided herein, all Communications shall be deemed given, received and dated on the date when delivered personally, and three (3) business days after mailing.

B. **Entire Agreement, Modification, Consents and Waivers.** This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supercedes any and all prior agreements or understandings, written or oral, between the parties with respect to the subject matter hereof. No interpretation, change, termination or waiver of or extension of time for performance under any provision of the Agreement shall be binding upon any party unless in writing and

-12-

signed by the party intended to be bound thereby. Receipt by any party of money or other consideration due under this Agreement, with or without knowledge of breach, shall not constitute a waiver of such breach or any provision of this Agreement.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

"BOSTON"

By _____
Donald T. Scholz

_____
Barry Goudreau

By _____
Brad Delp

By _____
Sib Hashian

By _____
Barry Goudreau

By _____
Fran Sheehan

BOSTON WORLD TOURS, INC.

By _____
Donald T. Scholz

By _____
Brad Delp

By _____
Sib Hashian

By _____
Barry Goudreau

By _____
Fran Sheehan

-13-