# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
Docket No. 07-3944

DONALD THOMAS SCHOLZ and )
THE DTS CHARITABLE FOUNDATION, INC., )
)
Plaintiffs, )
)
v. )
)
MICKI DELP, CONNIE GOUDREAU, )
and JANE DOE, )
)
Defendants. )

## STIPULATED CONSENT DECREE and AGREEMENT FOR SEPARATE AND FINAL JUDGMENT

Plaintiffs Donald Thomas Scholz ("Scholz") and The DTS Charitable Foundation, Inc., and Defendants Micki Delp and Connie Goudreau hereby stipulate and agree to the entry of the following consent decree as the Separate and Final Judgment[1] of this Court in the above-entitled matter (excluding the claims against Jane Doe), waiving all rights of appeal, and each party bearing their own costs and attorneys' fees, except as set forth below:

1. Judgment hereby enters for Donald Thomas Scholz against Micki Delp and Connie Goudreau, jointly and severally, in the amount of $75,000. Upon the later of Scholz's receipt of the $75,000 or the Court's entry of this consent decree, Scholz shall file a satisfaction of judgment reflecting payment of the $75,000.

---

[1] This is a Separate and Final Judgment because it does not dispose of Count II of the Verified Complaint (Scholz's claim for defamation against Jane Doe).

BG 0022

      on www.guitarbootcamp.com/effects/rockman-gear/, or otherwise) under the name "getchasumm";

2.   the postings by "getchasumm" detailed at ¶¶ 105-107 of the complaint in the Litigation were not done by someone acting at the direction of or on behalf of MICKI DELP and/or CONNIE GOUDREAU; and

3.   neither MICKI DELP nor CONNIE GOUDREAU has any information as to the identity of "getchasumm" or has knowingly communicated with "getchasumm."

B.   MICKI DELP and CONNIE GOUDREAU shall sign the statements attached hereto as Exhibits A and B, respectively, and deliver the original signed statements to SCHOLZ's counsel, Susan E. Stenger, Esquire, with the executed original of this Agreement.

C.   MICKI DELP and CONNIE GOUDREAU agree to no longer represent themselves as the "family" of (or part of the family of) Brad Delp.

D.   Simultaneously with the delivery of the executed original of this Agreement, MICKI DELP and/or CONNIE GOUDREAU shall pay to SCHOLZ, via certified funds delivered to SCHOLZ's counsel, Susan E. Stenger, Esquire, or via wire transfer to SCHOLZ, the sum of $75,000.

E.   Simultaneously with the execution of this Agreement, the SCHOLZ PARTIES, MICKI DELP, and CONNIE GOUDREAU shall enter into a Stipulated Consent Decree And Agreement For Judgment in the form attached hereto as Exhibit C, and shall promptly thereafter submit the executed Exhibit C to the Middlesex Superior Court for approval and entry on the docket.

F.   Within five (5) days after execution of this Agreement, MICKI DELP and CONNIE GOURDREAU shall cancel their registration of the domain name www.dtsfoundation.com and shall cause the "parked page" at the web address to be taken down.

II.   BARRY GOUDREAU.

A.   BARRY GOUDREAU will not publicize or promote, or cause to be publicized or promoted, the single "Rockin' Away" or any other

BG 0023

      release or recording or performance or other project in which he is involved, as having any connection to BOSTON or any BOSTON album or any composition by Scholz.

B.    BARRY GOUDREAU will not publicize or promote or describe himself as an "original" member or guitarist of BOSTON, but rather as "a former guitarist" of BOSTON.

C.    BARRY GOUDREAU will take reasonable steps to ensure that third parties publicizing or promoting or reporting on or reviewing any release, recording, performance, or project in which his is participating will comply with Paragraphs II.A and II.B above.

D.    BARRY GOUDREAU agrees to no longer represent himself as the "family" of (or part of the family of) Brad Delp.

E.    BARRY GOUDREAU will sign an affidavit in the form attached hereto as <u>Exhibit</u> D, which he avers to be true under the pains and penalties of perjury.

III.   <u>Mutual Releases</u>.

    A.    Except for those rights, duties, obligations, claims, causes of action, and defenses specifically created by this Agreement, the SCHOLZ PARTIES, for themselves and their past and present officers, directors, shareholders, parents, subsidiaries, agents, attorneys, accountants, trustees, employees, successors, heirs, and assignees, hereby remise, release, and forever discharge MICKI DELP, CONNIE GOUDREAU, and BARRY GOUDREAU, as well as their respective past and present agents, attorneys, employees, successors, heirs, and assignees (collectively, the "SCHOLZ RELEASEES"), of and from any and all claims, counterclaims, defenses, acts, demands, actions, causes of action, suits, obligations, debts, accounts, contracts, controversies, agreements, promises, representations, omissions, damages, losses, executions, costs, expenses, damage indemnities, and all other liabilities whatsoever, of every name and nature, both in law and in equity, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, contingent or fixed, that any or all of the SCHOLZ PARTIES now has or ever had against or with respect to any or all of the SCHOLZ RELEASEES, from the beginning of the

BG 0024

world to the date of this Agreement, arising from the facts alleged in the Verified Complaint filed in the Litigation.

B. Except for those rights, duties, obligations, claims, causes of action, and defenses specifically created by this Agreement, MICKI DELP, CONNIE GOUDREAU, and BARRY GOUDREAU, for themselves and their past and present agents, attorneys, employees, predecessors, successors, heirs, and assignees, hereby remise, release, and forever discharge the SCHOLZ PARTIES, as well as their past and present officers, directors, shareholders, parents, subsidiaries, affiliated entities, agents, attorneys, accountants, trustees, employees, predecessors, successors, heirs, and assignees (the "DELP/GOUDREAU RELEASEES"), of and from any and all claims, counterclaims, defenses, acts, demands, actions, causes of action, suits, obligations, debts, accounts, contracts, controversies, agreements, promises, representations, omissions, damages, losses, executions, costs, expenses, damage indemnities, and all other liabilities whatsoever, of every name and nature, both in law and in equity, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, contingent or fixed, that any or all of MICKI DELP, CONNIE GOUDREAU, and BARRY GOUDREAU, now has or ever had against or with respect to any or all of the DELP/GOUDREAU RELEASEES, from the beginning of the world to the date of this Agreement, arising from the facts alleged in the Verified Complaint filed in the Litigation.

IV. Miscellaneous.

A. Except for the statements in Exhibits A, B, and D to this Agreement, nothing in this Agreement constitutes, or shall be construed as, an admission of liability or wrongdoing by any party hereto, and all undersigned parties expressly deny all liability and wrongdoing.

B. Any funds to be sent to SCHOLZ via bank wire under this Agreement shall be sent to the following account:

    Bank Name:
    Bank ABA:
    Account Name:
    Account Number:

BG 0025

C. Any notices to SCHOLZ under this Agreement shall be sent to SCHOLZ, with a copy to SCHOLZ's counsel, each by fax and by certified mail, at the following addresses:

|  |  |
|---|---|
| Mr. Donald Thomas Scholz | Susan E. Stenger, Esquire |
| c/o Walk On Tours, Inc. | Burns & Levinson LLP |
| 1484 Main Street | 125 Summer Street |
| Waltham, MA 02493 | Boston, MA 02110 |

Likewise, any deliveries to SCHOLZ's counsel shall be delivered to Susan E. Stenger at the foregoing address.

D. Each of the undersigned corporate signatories hereby warrants and represents that he or she is duly authorized to enter this Agreement on behalf of the respective corporation for which he or she signs.

E. This agreement shall be binding upon and shall inure to the benefit of the parties, and their respective heirs, successors, and assignees.

F. Should any provision of this Agreement be deemed or determined finally by any court to be illegal or invalid, the validity of the remaining provisions shall not be affected thereby.

G. Each of the signatories below hereby warrants and represents that he/she has read this Agreement in full, has obtained or had the opportunity to obtain the advice of legal counsel in entering this Agreement, fully understands each provision hereof, agrees to be bound by all of the terms and provisions set forth herein, and enters this Agreement of his/her own free will.

H. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

I. This Agreement is to be executed and delivered within the Commonwealth of Massachusetts, and its validity, construction,

BG 0026

and performance, as well as the rights and obligations of the parties hereunder, shall be governed, construed, and enforced in accordance with the laws of and in the Commonwealth of Massachusetts. The parties hereby accept the personal jurisdiction and venue of such courts.

J. In the event that additional documents are necessary or customary in order to accomplish the purpose of and the business deal represented by this Agreement, the undersigned parties agree to cooperate fully with one another in order to facilitate the exchange of properly executed documents.

MICKI DELP,

_____
December ____, 2007

CONNIE GOUDREAU,

_____
December ____, 2007

BARRY GOUDREAU,

_____
December ____, 2007

DONALD THOMAS SCHOLZ,

_____
December ____, 2007

THE DTS CHARITABLE FOUNDATION, INC.,

_____
By its President,
Donald Thomas Scholz

December ____, 2007

- 6 -

BG 0027



## AFFIDAVIT OF BARRY GOUDREAU

I, BARRY GOUDREAU, do hereby depose and say:

1. I am an individual residing in Swampscott, Massachusetts.

2. I make this affidavit based on my personal knowledge and observation, except where stated to be based on information which I believe to be true.

### The BOSTON demo tapes.

3. I did not perform on any of the six demo tape songs that were sent to record companies and which ultimately resulted in a contract with Epic Records, a division of CBS, Inc.

4. On information and belief, Brad Delp sang all of the vocals, Jim Masdea played the drums, and Tom Scholz played all other instruments on those demo tapes.

5. I was not a party to the original BOSTON recording contract signed in 1976. On information and belief, the only persons whose signatures CBS, Inc., required were Tom Scholz and Brad Delp.

### BOSTON's first album, "BOSTON."

6. I did not in whole or in part write the music or the lyrics of any of the songs appearing on BOSTON's first album, entitled "BOSTON."

7. The liner notes of the original mastering of the first album do not describe which musicians played on each song. The liner notes list my participation simply as: "*BOSTON is [ . . . ] BARRY GOUDREAU—lead & rhythm guitars.*"

8. In fact, I performed on only two of the eight sound recordings on the first album: "Let Me Take You Home Tonight" and "Foreplay/Long Time" (I played lead guitar on "Long Time" and rhythm guitar on "Foreplay").

9. Thus, I did not play on the sound recordings "More Than A Feeling," "Peace Of Mind," "Rock & Roll Band," "Smokin,'" "Hitch A Ride," or "Something About You."

10. Despite this, I received (and still receive) a full 20% share of the performer's royalties on the entire first album. At Tom Scholz's direction, Tom Scholz,

Brad Delp, Fran Sheehan, Sib Hashian, and I all received equal one-fifth shares of the performance royalties from BOSTON's first album.

### BOSTON's second album, "Don't Look Back."

11.  I did not in whole or in part write the music or the lyrics of any of the songs appearing on BOSTON's second album, entitled "Don't Look Back."

12.  The liner notes of the original mastering of the second album do not describe which musicians played on each song. The liner notes list my participation simply as: *"BARRY GOUDREAU—lead and slide guitar, percussion."*

13.  I performed on part of only three of the eight sound recordings on the second album, including the lead guitar at the end of "Don't Look Back."

14.  Despite this, I received (and still receive) a full 20% share of the performer's royalties on the entire second album. At Tom Scholz's direction, Tom Scholz, Brad Delp, Fran Sheehan, Sib Hashian, and I all received equal one-fifth shares of the performance royalties from BOSTON's second album.

### Lawsuits.

15.  Tom Scholz has never filed a lawsuit against me.

16.  After the release of BOSTON's second album, I voluntarily left BOSTON to pursue a solo career, in part because I thought Tom was taking too long to create the third BOSTON album.

17.  In the late 1970's or early 1980's, I filed a lawsuit against Tom Scholz regarding my pay-out after I chose to leave BOSTON. The suit was settled quickly and that was the end of my involvement with BOSTON.

18.  I testified against Tom Scholz in the large lawsuit which CBS, Inc., brought against him, and which CBS, Inc., lost.

BG 0029

<u>The November 13, 2006, Doug Flutie Concert.</u>

19. To the best of my information and belief, Tom Scholz did not try to prevent Sib Hashian or me from performing that the November 13, 2006, benefit concert at Boston's Symphony Hall in honor of Doug Flutie.

<u>Brad's "family."</u>

20. Since Brad's death, I have repeatedly represented myself, along with others, as "Brad's family." Although my wife's sister, Micki Delp, was once married to Brad, they had been divorced for over ten years at the time of Brad's death. I am not related to Brad.

<u>Retraction.</u>

21. I have no basis for statements I have made: that Tom Scholz abused Brad Delp; that Tom Scholz caused any pain and suffering to Brad and his family; that the dismissal of Fran Cosmo (a/k/a Fran Migliaccio) from BOSTON was especially difficult for Brad; or that Tom Scholz and/or BOSTON caused Brad to become depressed and/or to take his own life.

Signed under the pains and penalties of perjury, this _____ day of December 2007.

_____
BARRY GOUDREAU

- 3 -