# Exhibit E

## MUTUAL GENERAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual General Release and Settlement Agreement (hereinafter referred to as "Release") is made and entered into this _____ day of March, 1991, by and among John T. Hashian a/k/a Sib Hashian ("Hashian"), Donald Thomas Scholz ("Scholz"), Scholz Research & Development, Inc., ("SR&D"), Third Stage Tours, Inc. ("Third Stage") and MCA Records, Inc. ("MCA").

WHEREAS, Scholz and Hashian, together with certain other individuals, had performed professionally in a band as members of the recording and touring group professionally known as "BOSTON";

WHEREAS, the said band "BOSTON" recorded and released two albums entitled "Boston" and "Don't Look Back" (said albums shall hereinafter collectively be referred to as the "First Two Albums") and toured the United States and elsewhere thus generating certain compensation and other amounts;

WHEREAS, Hashian and Scholz entered into an agreement dated September 30, 1981 (said agreement shall hereinafter be referred to as the "1981 Agreement"), and possibly other agreements which related to their relationship with respect to recording, touring, and other activities to be undertaken under the name "BOSTON";

WHEREAS, a third "BOSTON" album entitled, "Third Stage" (said album shall hereinafter be referred to as the "Third Album"), was released and distributed by MCA in 1986

and tours were undertaken by Third Stage, Scholz and
in 1987 and 1988 under the name "BOSTON";

WHEREAS, the rights and obligations of Hash
Scholz under the 1981 Agreement, and with respect to
Third Album and the 1987 and 1988 tours, and MCA's
involvement in the release and distribution of the Th
Album and other issues, are the subject of a civil ac
entitled <u>Hashian v. Scholz and MCA Records, Inc.</u>, Civ
Action No. 87 Civ. 0598 (VLB), now pending in the Uni
States District Court, Southern District of New York
entire action shall hereinafter be referred to as the
"Litigation");

WHEREAS, the parties hereto mutually desire
terminate and resolve all disagreements between Hashi:
the one hand, and Scholz, SR&D, Third Stage and MCA,
individually and collectively, on the other hand, inc]
but not limited to, all such disagreements arising frc
connection with the matters and facts referred to in t
Litigation and relating to the 1981 Agreement, the Thi
Album, the 1987 and 1988 "BOSTON" tours, any future BC
recording, touring, merchandising, publishing, songwri
and performing; and by this Release to resolve all
differences between said parties and, except as set fc
paragraphs 6 and 7 herein, to release said parties f·
and all claims, demands and causes of action of w·
kind or nature, known or unknown, suspected or
including but not limited to all such claims

"B" 03/05/91                    -2-                    ▲.

causes of action arising directly or indirectly out of the averments, allegations and agreements placed at issue in the Litigation; and

WHEREAS, Sony Music Entertainment, Inc., formerly CBS Records Inc., which was formerly CBS Records, a Division of CBS, Inc. (hereinafter Sony Music Entertainment, Inc., CBS Records Inc. and their predecessors and successors shall collectively be referred to as "CBS"), maintains on its books and records the following artist and producer royalty accounts relating to its exploitation of the First Two Albums: (1) CBS account entitled "Artist Scholz Boston" bearing CBS Records code number 57541000 (hereinafter referred to as the "Producer Account"), (2) CBS accounts entitled "Artist Boston-McKenz 34188" and "Artist Boston-McKenz 35050" bearing CBS code numbers 06370500 and 06370501, respectively (hereinafter together referred to as "McKenzie Account") and (3) CBS accounts entitled "Artist Boston 55" and "Artist Boston PLG 15396" bearing CBS code numbers 06370200 and 06370201, respectively (hereinafter together referred to as "Artist Account").

NOW, THEREFORE, in consideration of the foregoing and the respective promises and releases herein contained, the parties agree as follows:

1.    MCA agrees to pay to Hashian One Million, One Hundred Twenty-Five Thousand ($1,125,000.00) Dollars by wiring said money to Kaye, Fialkow, Richmond & Rothstein's client trust fund account No. 1528 7014 at the Bank of New

"B" 03/05/91                      -3-                    Hashian.agt

England, State Street, Boston, MA 02109, ABA No. 011 000 138, upon receipt by Donald S. Engel at Engel & Engel, 9200 Sunset Blvd, Suite 505, Los Angeles, CA 90069 of the fully executed original of this Release, conformed copies ordered by the Court of the fully executed Stipulations of Dismissal referred to in paragraph 10(a) herein and a conformed copy ordered by the Court of the fully executed Stipulation Terminating Escrow Fund referred to in paragraph 11 herein.

2.    Scholz, SR&D, Third Stage and MCA have made no representations of any kind whatsoever with respect to net or gross income from the Third Album, the 1987 and 1988 tours, or otherwise, as a basis for any of the amounts to be paid in this Release.  It is agreed by Hashian, MCA, Scholz, SR&D and Third Stage that this Release shall govern all rights between Hashian, on the one hand, and Scholz, SR&D, Third Stage and MCA, individually and collectively, on the other hand, notwithstanding any fact which is now known or unknown, by any party, or which has been revealed or concealed by any party prior to the signing of this Release.  In furtherance of such agreement and intention, each of the parties waives and relinquishes any right or benefit which he, she or it has or may have under Section 1542 of the Civil Code of the State of California in the event California law is held to be applicable to this Release despite the parties' express agreement that the Release shall be construed in accordance with the laws of the Commonwealth of Massachusetts.

"B"  03/05/91                    -4-              Hashian.agt

3.     Hashian acknowledges and agrees that he does not have the right to participate in any activities involving BOSTON and/or Scholz and agrees that, except as explicitly set forth in paragraph 13 herein:  he is not entitled to any proceeds (whether monetary or otherwise) from any past, present or future activities involving "BOSTON" and/or Scholz or any use of the name "BOSTON," including, but not limited to, proceeds derived from the Third Album, the 1987 and 1988 tours, any future BOSTON and/or Scholz' recordings, touring, songwriting, music publishing, merchandising or other activities and hereby irrevocably quitclaims, relinquishes and conveys to Scholz any and all interest, right or title he has or had to receive any such proceeds.  Hashian also acknowledges and agrees that although Scholz and MCA and their assignees and licensees have the right in perpetuity (but not the obligation) to use Hashian's name, biographical material and/or picture in connection with the exploitation of the Third Album, they are not obligated to provide Hashian with any credit or identification on the Third Album or on any material used in connection with the manufacturing, selling, distributing, advertising, publicizing or exploiting of the Third Album and Hashian hereby releases and absolves Scholz and MCA and their licensees and assignees from any and all claims relating to their failure to provide such credit and/or identification to Hashian in the future.  Hashian also acknowledges and agrees that the decision and order rendered by Judge Vincent L. Broderick in open court on March 20,

"B" 03/05/91                    -5-                    Hashian.agt

1987, as amended by Order dated April 9, 1987, shall be of no further force or effect.

4.    Hashian acknowledges that Scholz cannot be adequately compensated in damages and will be irreparably harmed if Hashian uses the name "BOSTON" other than in a manner authorized by this Release, and he hereby agrees that, in addition to any monetary damages or other remedies to which Scholz may be entitled for such unauthorized use, Scholz shall also be entitled to injunctive relief to prevent such unauthorized use.

5.    Hashian acknowledges and agrees that he has not written, composed or co-authored any song with Scholz, and that he is not entitled to an ownership interest in, or any songwriting, publishing or other monies generated from, any of the musical compositions embodied on the First Two Albums, the Third Album, any future BOSTON albums, or any musical composition, work or arrangement written, composed, created, conceived, owned or controlled, in whole or in part, in the past, present or future by Scholz.  Although Hashian is not entitled to any publishing, songwriting or other monies generated from any musical composition embodied on any BOSTON album, Hashian is entitled in accordance with paragraph 13 herein to a percentage of the artist royalties generated from the exploitation of the sound recordings (as copyrighted by CBS) which comprise the First Two Albums.

6.    Except for any obligations set forth in this Release and as provided in the following sentence, Hashian

"B" 03/05/91                    -6-                    Hashian.agt

and all corporations or entities owned or controlled by
Hashian, for themselves and their legal predecessors,
successors and assigns, release and absolve and forever
discharge Scholz, Scholz Research & Development, Inc., Third
Stage Tours, Inc., DTS Charitable Foundation, Inc. and any
entity owned or controlled by Scholz, and their predecessors,
successors and assigns, and each of them, of and from any and
all claims, demands, debts, liabilities, accounts,
reckonings, obligations, costs, expenses, liens, actions and
causes of action of every kind and nature whatsoever, whether
known or unknown, suspected or unsuspected, which Hashian and
any and all corporations or entities owned or controlled by
Hashian now have, own or hold, or at any time heretofore had,
owned, or held, or could, shall or may hereafter have, own,
or hold based upon, related to, or by reason of any manner,
cause, fact, act or omission heretofore or to the date hereof
occurring or existing, related to or by reason of any
contract (expressed or implied in fact or in law), lien,
liability, matter, cause, fact, thing, act or omission
whatsoever occurring or existing at any time from the
beginning of the world to and including the date hereof.
Notwithstanding the filing of the dismissals referred to in
paragraphs 10(a) and (b) herein, or anything stated to the
contrary in this paragraph or anywhere else in this Release,
Hashian and all corporations or entities owned or controlled
by Hashian, for themselves and their legal predecessors and
assigns, do not hereby release, discharge, absolve or in any

"B" 03/05/91                  -7-                Hashian.agt

way waive, and hereby expressly reserve, any right they may have to seek indemnification and/or contribution from Scholz or anyone else with respect to any claim related to the First Two Albums or with respect to any judgment entered against Hashian in the consolidated action entitled CBS, Inc. v. Paul Ahern, et al. (Case Nos. 83 Civ 7918 and 84 Civ 5995 (CLB)) pending in the United States District Court, Southern District of New York, in the event there is an appeal of such action and the action is remanded to the District Court for further proceedings.

        7.    Except for any obligation set forth in this Release and as provided in the following sentence, Scholz, Scholz Research & Development, Inc. and Third Stage Tours, Inc., and all corporations or entities controlled or owned by Scholz, for themselves and their legal predecessors, successors and assigns, release and absolve and forever discharge Hashian, or any entity owned or controlled by Hashian, and their predecessors, successors and assigns, and each of them of and from any and all claims, demands, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which Scholz, Scholz Research & Development, Inc. and Third Stage Tours, Inc., and any and all corporations or entities owned or controlled by Scholz, now have, own or hold, or at any time heretofore had, owned, or held, or could, shall or may hereafter have, own, or hold,

"B" 03/05/91                    -8-                    Hashian.agt

8.    Except for any obligation set forth in this Release, Hashian, and all corporations or entities owned or controlled by Hashian, for themselves and their legal predecessors, successors and assigns, release and absolve and forever discharge MCA and any entity owned or controlled by MCA, and their legal predecessors, successors and assigns, and each of them of and from any and all claims, demands, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, action and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which Hashian and any and all corporations or entities owned or controlled by Hashian now have, own or hold, or at any time heretofore had, owned, or held, or could, shall or may hereafter have, own, or hold based upon, related to, or by reason of any manner, cause, fact, act or omission heretofore or to the date hereof occurring or existing, related to or by reason of any contract (expressed or implied in fact or in law), lien, liability, matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time from the beginning of the world to and including the date hereof.

9.    Except for any obligation set forth in this Release, MCA and all corporations or entities owned or controlled by MCA, for themselves and their legal predecessors, successors and assigns, release and absolve and forever discharge Hashian and any entity owned or controlled by Hashian, and their legal predecessors,

"B" 03/05/91                        -10-                        Hashian.agt

successors and assigns, and each of them of and from any and
all claims, demands, debts, liabilities, accounts,
reckonings, obligations, costs, expenses, liens, action and
causes of action of every kind and nature whatsoever, whether
known or unknown, suspected or unsuspected, which MCA and any
and all corporations or entities owned or controlled by MCA
now have, own or hold, or at any time heretofore had, owned,
or held, or could, shall or may hereafter have, own, or hold
based upon, related to, or by reason of any manner, cause,
fact, act or omission heretofore or to the date hereof
occurring or existing, related to or by reason of any
contract (expressed or implied in fact or in law), lien,
liability, matter, cause, fact, thing, act or omission
whatsoever occurring or existing at any time from the
beginning of the world to and including the date hereof.

10.(a)   Hashian, Scholz and MCA agree to cause to
be executed, filed and ordered by the Court, upon the signing
of this Release, a Stipulation of Dismissal with Prejudice
and without costs of the entire Litigation, in the form
annexed hereto as Exhibit "A."  Hashian also agrees to cause
to be fully executed, filed and ordered by the court in the
action entitled <u>James Masdea v. Donald T. Scholz</u>, Case No.
88-3049 pending in the Superior Court of the Commonwealth of
Massachusetts ("Masdea Action"), a Stipulation of Dismissal
without Prejudice and without costs of Hashian's cross-claim
in that action against Scholz.

(b)  Scholz agrees to sign a Stipulation of
Dismissal agreeing to Masdea's dismissal with prejudice of
the claims filed against Hashian by Masdea in the Masdea
Action.  Notwithstanding anything stated in the previous
sentence, Scholz is not obligated to cause Masdea to sign the
Stipulation of Dismissal dismissing Masdea's claims against
Hashian in the Masdea Action and Scholz' sole obligation with
respect to the stipulation is to sign it on behalf of
himself.

11.  Hashian agrees to cause to be executed, filed
and ordered by the Court, upon the signing of this Release,
the Stipulation Terminating Escrow Fund, a copy of which is
attached hereto as Exhibit "B."

12.  MCA and Hashian agree that all payments made
by MCA to Hashian hereunder shall be deemed to be ordinary
and necessary expenses paid or incurred by MCA in carrying on
its trade or business and thus deductible under Internal
Revenue Code, Section 162 and the regulations promulgated
thereunder.  MCA and Hashian further agree that $725,000.00
of the payments made by MCA to Hashian pursuant to paragraph
1 herein shall be deemed to be paid in settlement of
Hashian's claims for personal injury damages to his standing
in the community and for such personal injury damages as are
claimed in paragraph 59 of the Complaint filed in the
Litigation.

13.  Notwithstanding anything to the contrary
contained in this Release, Scholz hereby confirms and agrees

"B" 03/05/91                    -12-                    Hashian.agt

that Hashian is due, and he has no objection to Hashian
continuing to have and to be due, a full one-fifth (1/5)
interest in the artist's royalty share (after deduction of
the producers' share, Ahern Associates' share and Charles
McKenzie's share which was assigned to Scholz, and any other
deductions made by CBS Records) of monies generated from the
sale of phonograph records, cassettes, compact discs or other
configurations from which sounds can be perceived
(hereinafter referred to as "phonorecords") manufactured from
the sound recordings (as copyrighted by CBS) which are
embodied on the First Two Albums (such sound recordings shall
hereinafter be referred to as "Masters"), and for any past,
present or future sales of such phonorecords by CBS or
others, and that Hashian has and shall continue to have and
maintain any and all rights of whatsoever kind or nature he
has or ever had to receive monies from the sale of
phonorecords manufactured from the Masters.  Hashian
acknowledges and agrees that he is not, nor has ever been,
entitled to any monies generated from the selling, licensing
or otherwise exploiting of masters or phonorecords which
embody performances of one or more of the musical
compositions contained on the First Two Albums, which are not
manufactured from the Masters.  (Such masters and
phonorecords shall hereinafter be referred to as "re-
recordings.")  Hashian also acknowledges and agrees that with
respect to a "Best Of" or "Greatest Hits" album embodying
Masters and other masters (such other masters may include re-

"B" 03/05/91                    -13-                    Hashian.agt

recordings), Hashian shall be entitled to a one-fifth
interest of the net artist's royalties multiplied by a
fraction the numerator of which is equal to the number of
Masters embodied on the album and the denominator of which is
equal to the total number of masters (including the Masters)
embodied on the album; i.e., if a "Best Of" album contains
four Masters, three re-recordings and three masters from the
Third Album, Hashian shall be entitled to one-fifth of four-
tenths of the net artist's royalties.

       14.    In accordance with paragraph 13 above, Hashian
hereby confirms and agrees that he:

       (a)    Has no objection to Scholz' previous
receipt directly from CBS of $1,598,990.67 of the monies
which were being held by CBS in the Producer Account,
McKenzie Account and the Artist Account, along with interest
thereon; and

       (b)    Has no objection to CBS in the future
accounting and paying directly to Scholz commencing with the
accounting period ending June 30, 1990 (i) any and all
royalties payable from the "Producer Account," (ii) any and
all royalties payable from the "McKenzie Account" and (iii)
Scholz' allocable portion of any and all royalties payable
from the Artist Account computed by adding together the
amounts payable in the Artist Account and McKenzie Account
and multiplying the total by fifteen and one-half (15.5%)
percent (said fifteen and one-half (15.5%) percent represents
one-fifth of the aggregate artists royalties after deduction

"B" 03/05/91                -14-                    Hashian.agt

of management commissions of twenty-two and one-half (22.5%) percent).

15.  In accordance with paragraph 13 above, Scholz hereby confirms that he:

(a)  Has no objection to Hashian's previous receipt from Ahern of $658,799.45 of the monies which were being held by CBS in the Artist Account; and

(b)  Has no objection to Hashian directly receiving his proportionate share of any future royalties from the Artist Account computed by adding together the amounts payable in the Artist Account and McKenzie Account and multiplying the total by fifteen and one-half (15.5%) percent (said fifteen and one-half (15.5%) percent represents one-fifth of the aggregate artists royalties after deduction of management commissions of twenty-two and one-half (22.5%) percent).

16.  Hashian agrees not to do anything to interfere with Scholz' right to receive the monies referred to in paragraph 14 and Scholz agrees not to do anything to interfere with Hashian's right to receive the monies referred to in paragraph 15.

17.  Notwithstanding anything contained in this Release to the contrary, Hashian shall be entitled in the future to use with regard to himself the term, "formerly of 'BOSTON,'" or a similar designation, which designation explicitly indicates that any association of Hashian with "BOSTON" is a former or past one, provided that such

"B" 03/05/91                    -15-                    Hashian.agt

designation does not misrepresent or overstate Hashian's role in the band and is not used so boldly or prominently as to exploit the name "BOSTON" as a trademark or trade name. Hashian shall not participate as an individual or member of a group in any performances on recordings, in live concerts or via broadcast or tape media which utilize the name "BOSTON" in violation of the provisions of this paragraph or this Release.

18. To the extent, if any, that Hashian may have any right, title or interest in any sound recording comprising the Third Album, Hashian grants and assigns to Scholz exclusively, perpetually, and throughout the Universe, all right, title and interest in and to such sound recording, including but not limited to all rights of the owner of copyright specified in 17 U.S.C. §106 and all renewal rights therein. For purposes of this paragraph:

        (1) Hashian hereby makes, constitutes and appoints Scholz, irrevocably and coupled with an interest, Hashian's true and lawful attorney in fact for Hashian and in Hashian's name, place and stead to sign, execute and acknowledge, deliver and record all documents and instruments necessary or desirable to grant and assign to Scholz, exclusively, perpetually and throughout the Universe, all exclusive rights, title and interest in and to all such sound recordings as described above

# Exhibit E

## MUTUAL GENERAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual General Release and Settlement Agreement (hereinafter referred to as "Release") is made and entered into this _____ day of March, 1991, by and among John T. Hashian a/k/a Sib Hashian ("Hashian"), Donald Thomas Scholz ("Scholz"), Scholz Research & Development, Inc., ("SR&D"), Third Stage Tours, Inc. ("Third Stage") and MCA Records, Inc. ("MCA").

WHEREAS, Scholz and Hashian, together with certain other individuals, had performed professionally in a band as members of the recording and touring group professionally known as "BOSTON";

WHEREAS, the said band "BOSTON" recorded and released two albums entitled "Boston" and "Don't Look Back" (said albums shall hereinafter collectively be referred to as the "First Two Albums") and toured the United States and elsewhere thus generating certain compensation and other amounts;

WHEREAS, Hashian and Scholz entered into an agreement dated September 30, 1981 (said agreement shall hereinafter be referred to as the "1981 Agreement"), and possibly other agreements which related to their relationship with respect to recording, touring, and other activities to be undertaken under the name "BOSTON";

WHEREAS, a third "BOSTON" album entitled, "Third Stage" (said album shall hereinafter be referred to as the "Third Album"), was released and distributed by MCA in 1986

and tours were undertaken by Third Stage, Scholz and

in 1987 and 1988 under the name "BOSTON";

WHEREAS, the rights and obligations of Hash

Scholz under the 1981 Agreement, and with respect to

Third Album and the 1987 and 1988 tours, and MCA's

involvement in the release and distribution of the Th

Album and other issues, are the subject of a civil ac

entitled Hashian v. Scholz and MCA Records, Inc., Civ

Action No. 87 Civ. 0598 (VLB), now pending in the Uni

States District Court, Southern District of New York

entire action shall hereinafter be referred to as the

"Litigation");

WHEREAS, the parties hereto mutually desire

terminate and resolve all disagreements between Hashia

the one hand, and Scholz, SR&D, Third Stage and MCA,

individually and collectively, on the other hand, inc:

but not limited to, all such disagreements arising fro

connection with the matters and facts referred to in t

Litigation and relating to the 1981 Agreement, the Thi

Album, the 1987 and 1988 "BOSTON" tours, any future BO

recording, touring, merchandising, publishing, songwri

and performing; and by this Release to resolve all

differences between said parties and, except as set fo

paragraphs 6 and 7 herein, to release said parties f

and all claims, demands and causes of action of w'

kind or nature, known or unknown, suspected or

including but not limited to all such claims

"B" 03/05/91                    -2-                    1.

causes of action arising directly or indirectly out of the averments, allegations and agreements placed at issue in the Litigation; and

WHEREAS, Sony Music Entertainment, Inc., formerly CBS Records Inc., which was formerly CBS Records, a Division of CBS, Inc. (hereinafter Sony Music Entertainment, Inc., CBS Records Inc. and their predecessors and successors shall collectively be referred to as "CBS"), maintains on its books and records the following artist and producer royalty accounts relating to its exploitation of the First Two Albums:  (1) CBS account entitled "Artist Scholz Boston" bearing CBS Records code number 57541000 (hereinafter referred to as the "Producer Account"), (2) CBS accounts entitled "Artist Boston-McKenz 34188" and "Artist Boston-McKenz 35050" bearing CBS code numbers 06370500 and 06370501, respectively (hereinafter together referred to as "McKenzie Account") and (3) CBS accounts entitled "Artist Boston 55" and "Artist Boston PLG 15396" bearing CBS code numbers 06370200 and 06370201, respectively (hereinafter together referred to as "Artist Account").

NOW, THEREFORE, in consideration of the foregoing and the respective promises and releases herein contained, the parties agree as follows:

1.   MCA agrees to pay to Hashian One Million, One Hundred Twenty-Five Thousand ($1,125,000.00) Dollars by wiring said money to Kaye, Fialkow, Richmond & Rothstein's client trust fund account No. 1528 7014 at the Bank of New

England, State Street, Boston, MA 02109, ABA No. 011 000 138, upon receipt by Donald S. Engel at Engel & Engel, 9200 Sunset Blvd, Suite 505, Los Angeles, CA 90069 of the fully executed original of this Release, conformed copies ordered by the Court of the fully executed Stipulations of Dismissal referred to in paragraph 10(a) herein and a conformed copy ordered by the Court of the fully executed Stipulation Terminating Escrow Fund referred to in paragraph 11 herein.

2.    Scholz, SR&D, Third Stage and MCA have made no representations of any kind whatsoever with respect to net or gross income from the Third Album, the 1987 and 1988 tours, or otherwise, as a basis for any of the amounts to be paid in this Release. It is agreed by Hashian, MCA, Scholz, SR&D and Third Stage that this Release shall govern all rights between Hashian, on the one hand, and Scholz, SR&D, Third Stage and MCA, individually and collectively, on the other hand, notwithstanding any fact which is now known or unknown, by any party, or which has been revealed or concealed by any party prior to the signing of this Release. In furtherance of such agreement and intention, each of the parties waives and relinquishes any right or benefit which he, she or it has or may have under Section 1542 of the Civil Code of the State of California in the event California law is held to be applicable to this Release despite the parties' express agreement that the Release shall be construed in accordance with the laws of the Commonwealth of Massachusetts.

"B" 03/05/91                   -4-              Hashian.agt

3.    Hashian acknowledges and agrees that he does not have the right to participate in any activities involving BOSTON and/or Scholz and agrees that, except as explicitly set forth in paragraph 13 herein:  he is not entitled to any proceeds (whether monetary or otherwise) from any past, present or future activities involving "BOSTON" and/or Scholz or any use of the name "BOSTON," including, but not limited to, proceeds derived from the Third Album, the 1987 and 1988 tours, any future BOSTON and/or Scholz' recordings, touring, songwriting, music publishing, merchandising or other activities and hereby irrevocably quitclaims, relinquishes and conveys to Scholz any and all interest, right or title he has or had to receive any such proceeds.  Hashian also acknowledges and agrees that although Scholz and MCA and their assignees and licensees have the right in perpetuity (but not the obligation) to use Hashian's name, biographical material and/or picture in connection with the exploitation of the Third Album, they are not obligated to provide Hashian with any credit or identification on the Third Album or on any material used in connection with the manufacturing, selling, distributing, advertising, publicizing or exploiting of the Third Album and Hashian hereby releases and absolves Scholz and MCA and their licensees and assignees from any and all claims relating to their failure to provide such credit and/or identification to Hashian in the future.  Hashian also acknowledges and agrees that the decision and order rendered by Judge Vincent L. Broderick in open court on March 20,

"B" 03/05/91                    -5-                    Hashian.agt

1987, as amended by Order dated April 9, 1987, shall be of no further force or effect.

4.    Hashian acknowledges that Scholz cannot be adequately compensated in damages and will be irreparably harmed if Hashian uses the name "BOSTON" other than in a manner authorized by this Release, and he hereby agrees that, in addition to any monetary damages or other remedies to which Scholz may be entitled for such unauthorized use, Scholz shall also be entitled to injunctive relief to prevent such unauthorized use.

5.    Hashian acknowledges and agrees that he has not written, composed or co-authored any song with Scholz, and that he is not entitled to an ownership interest in, or any songwriting, publishing or other monies generated from, any of the musical compositions embodied on the First Two Albums, the Third Album, any future BOSTON albums, or any musical composition, work or arrangement written, composed, created, conceived, owned or controlled, in whole or in part, in the past, present or future by Scholz.  Although Hashian is not entitled to any publishing, songwriting or other monies generated from any musical composition embodied on any BOSTON album, Hashian is entitled in accordance with paragraph 13 herein to a percentage of the artist royalties generated from the exploitation of the sound recordings (as copyrighted by CBS) which comprise the First Two Albums.

6.    Except for any obligations set forth in this Release and as provided in the following sentence, Hashian

"B" 03/05/91                    -6-                    Hashian.agt

and all corporations or entities owned or controlled by
Hashian, for themselves and their legal predecessors,
successors and assigns, release and absolve and forever
discharge Scholz, Scholz Research & Development, Inc., Third
Stage Tours, Inc., DTS Charitable Foundation, Inc. and any
entity owned or controlled by Scholz, and their predecessors,
successors and assigns, and each of them, of and from any and
all claims, demands, debts, liabilities, accounts,
reckonings, obligations, costs, expenses, liens, actions and
causes of action of every kind and nature whatsoever, whether
known or unknown, suspected or unsuspected, which Hashian and
any and all corporations or entities owned or controlled by
Hashian now have, own or hold, or at any time heretofore had,
owned, or held, or could, shall or may hereafter have, own,
or hold based upon, related to, or by reason of any manner,
cause, fact, act or omission heretofore or to the date hereof
occurring or existing, related to or by reason of any
contract (expressed or implied in fact or in law), lien,
liability, matter, cause, fact, thing, act or omission
whatsoever occurring or existing at any time from the
beginning of the world to and including the date hereof.
Notwithstanding the filing of the dismissals referred to in
paragraphs 10(a) and (b) herein, or anything stated to the
contrary in this paragraph or anywhere else in this Release,
Hashian and all corporations or entities owned or controlled
by Hashian, for themselves and their legal predecessors and
assigns, do not hereby release, discharge, absolve or in any

"B" 03/05/91                    -7-                    Hashian.agt

way waive, and hereby expressly reserve, any right they may
have to seek indemnification and/or contribution from Scholz
or anyone else with respect to any claim related to the First
Two Albums or with respect to any judgment entered against
Hashian in the consolidated action entitled <u>CBS, Inc. v. Paul
Ahern, et al.</u> (Case Nos. 83 Civ 7918 and 84 Civ 5995 (CLB))
pending in the United States District Court, Southern
District of New York, in the event there is an appeal of such
action and the action is remanded to the District Court for
further proceedings.

7.    Except for any obligation set forth in this
Release and as provided in the following sentence, Scholz,
Scholz Research & Development, Inc. and Third Stage Tours,
Inc., and all corporations or entities controlled or owned by
Scholz, for themselves and their legal predecessors,
successors and assigns, release and absolve and forever
discharge Hashian, or any entity owned or controlled by
Hashian, and their predecessors, successors and assigns, and
each of them of and from any and all claims, demands, debts,
liabilities, accounts, reckonings, obligations, costs,
expenses, liens, actions and causes of action of every kind
and nature whatsoever, whether known or unknown, suspected or
unsuspected, which Scholz, Scholz Research & Development,
Inc. and Third Stage Tours, Inc., and any and all
corporations or entities owned or controlled by Scholz, now
have, own or hold, or at any time heretofore had, owned, or
held, or could, shall or may hereafter have, own, or hold,

"B" 03/05/91                -8-                Hashian.agt

8.    Except for any obligation set forth in this Release, Hashian, and all corporations or entities owned or controlled by Hashian, for themselves and their legal predecessors, successors and assigns, release and absolve and forever discharge MCA and any entity owned or controlled by MCA, and their legal predecessors, successors and assigns, and each of them of and from any and all claims, demands, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, action and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which Hashian and any and all corporations or entities owned or controlled by Hashian now have, own or hold, or at any time heretofore had, owned, or held, or could, shall or may hereafter have, own, or hold based upon, related to, or by reason of any manner, cause, fact, act or omission heretofore or to the date hereof occurring or existing, related to or by reason of any contract (expressed or implied in fact or in law), lien, liability, matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time from the beginning of the world to and including the date hereof.

9.    Except for any obligation set forth in this Release, MCA and all corporations or entities owned or controlled by MCA, for themselves and their legal predecessors, successors and assigns, release and absolve and forever discharge Hashian and any entity owned or controlled by Hashian, and their legal predecessors,

successors and assigns, and each of them of and from any and all claims, demands, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, action and causes of action of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, which MCA and any and all corporations or entities owned or controlled by MCA now have, own or hold, or at any time heretofore had, owned, or held, or could, shall or may hereafter have, own, or hold based upon, related to, or by reason of any manner, cause, fact, act or omission heretofore or to the date hereof occurring or existing, related to or by reason of any contract (expressed or implied in fact or in law), lien, liability, matter, cause, fact, thing, act or omission whatsoever occurring or existing at any time from the beginning of the world to and including the date hereof.

10.(a)  Hashian, Scholz and MCA agree to cause to be executed, filed and ordered by the Court, upon the signing of this Release, a Stipulation of Dismissal with Prejudice and without costs of the entire Litigation, in the form annexed hereto as Exhibit "A." Hashian also agrees to cause to be fully executed, filed and ordered by the court in the action entitled James Masdea v. Donald T. Scholz, Case No. 88-3049 pending in the Superior Court of the Commonwealth of Massachusetts ("Masdea Action"), a Stipulation of Dismissal without Prejudice and without costs of Hashian's cross-claim in that action against Scholz.

"B"  03/05/91                    -11-                    Hashian.agt

(b)  Scholz agrees to sign a Stipulation of Dismissal agreeing to Masdea's dismissal with prejudice of the claims filed against Hashian by Masdea in the Masdea Action.  Notwithstanding anything stated in the previous sentence, Scholz is not obligated to cause Masdea to sign the Stipulation of Dismissal dismissing Masdea's claims against Hashian in the Masdea Action and Scholz' sole obligation with respect to the stipulation is to sign it on behalf of himself.

11.  Hashian agrees to cause to be executed, filed and ordered by the Court, upon the signing of this Release, the Stipulation Terminating Escrow Fund, a copy of which is attached hereto as Exhibit "B."

12.  MCA and Hashian agree that all payments made by MCA to Hashian hereunder shall be deemed to be ordinary and necessary expenses paid or incurred by MCA in carrying on its trade or business and thus deductible under Internal Revenue Code, Section 162 and the regulations promulgated thereunder.  MCA and Hashian further agree that $725,000.00 of the payments made by MCA to Hashian pursuant to paragraph 1 herein shall be deemed to be paid in settlement of Hashian's claims for personal injury damages to his standing in the community and for such personal injury damages as are claimed in paragraph 59 of the Complaint filed in the Litigation.

13.  Notwithstanding anything to the contrary contained in this Release, Scholz hereby confirms and agrees

that Hashian is due, and he has no objection to Hashian
continuing to have and to be due, a full one-fifth (1/5)
interest in the artist's royalty share (after deduction of
the producers' share, Ahern Associates' share and Charles
McKenzie's share which was assigned to Scholz, and any other
deductions made by CBS Records) of monies generated from the
sale of phonograph records, cassettes, compact discs or other
configurations from which sounds can be perceived
(hereinafter referred to as "phonorecords") manufactured from
the sound recordings (as copyrighted by CBS) which are
embodied on the First Two Albums (such sound recordings shall
hereinafter be referred to as "Masters"), and for any past,
present or future sales of such phonorecords by CBS or
others, and that Hashian has and shall continue to have and
maintain any and all rights of whatsoever kind or nature he
has or ever had to receive monies from the sale of
phonorecords manufactured from the Masters.  Hashian
acknowledges and agrees that he is not, nor has ever been,
entitled to any monies generated from the selling, licensing
or otherwise exploiting of masters or phonorecords which
embody performances of one or more of the musical
compositions contained on the First Two Albums, which are not
manufactured from the Masters.  (Such masters and
phonorecords shall hereinafter be referred to as "re-
recordings.")  Hashian also acknowledges and agrees that with
respect to a "Best Of" or "Greatest Hits" album embodying
Masters and other masters (such other masters may include re-

"B" 03/05/91                    -13-                Hashian.agt

recordings), Hashian shall be entitled to a one-fifth interest of the net artist's royalties multiplied by a fraction the numerator of which is equal to the number of Masters embodied on the album and the denominator of which is equal to the total number of masters (including the Masters) embodied on the album; i.e., if a "Best Of" album contains four Masters, three re-recordings and three masters from the Third Album, Hashian shall be entitled to one-fifth of four-tenths of the net artist's royalties.

14.   In accordance with paragraph 13 above, Hashian hereby confirms and agrees that he:

(a)  Has no objection to Scholz' previous receipt directly from CBS of $1,598,990.67 of the monies which were being held by CBS in the Producer Account, McKenzie Account and the Artist Account, along with interest thereon; and

(b)  Has no objection to CBS in the future accounting and paying directly to Scholz commencing with the accounting period ending June 30, 1990 (i) any and all royalties payable from the "Producer Account," (ii) any and all royalties payable from the "McKenzie Account" and (iii) Scholz' allocable portion of any and all royalties payable from the Artist Account computed by adding together the amounts payable in the Artist Account and McKenzie Account and multiplying the total by fifteen and one-half (15.5%) percent (said fifteen and one-half (15.5%) percent represents one-fifth of the aggregate artists royalties after deduction

of management commissions of twenty-two and one-half (22.5%)
percent).

15.    In accordance with paragraph 13 above, Scholz
hereby confirms that he:

(a)    Has no objection to Hashian's previous
receipt from Ahern of $658,799.45 of the monies which were
being held by CBS in the Artist Account; and

(b)    Has no objection to Hashian directly
receiving his proportionate share of any future royalties
from the Artist Account computed by adding together the
amounts payable in the Artist Account and McKenzie Account
and multiplying the total by fifteen and one-half (15.5%)
percent (said fifteen and one-half (15.5%) percent represents
one-fifth of the aggregate artists royalties after deduction
of management commissions of twenty-two and one-half (22.5%)
percent).

16.    Hashian agrees not to do anything to interfere
with Scholz' right to receive the monies referred to in
paragraph 14 and Scholz agrees not to do anything to
interfere with Hashian's right to receive the monies referred
to in paragraph 15.

17.    Notwithstanding anything contained in this
Release to the contrary, Hashian shall be entitled in the
future to use with regard to himself the term, "formerly of
'BOSTON,'" or a similar designation, which designation
explicitly indicates that any association of Hashian with
"BOSTON" is a former or past one, provided that such

"B" 03/05/91                    -15-                    Hashian.agt

designation does not misrepresent or overstate Hashian's role in the band and is not used so boldly or prominently as to exploit the name "BOSTON" as a trademark or trade name. Hashian shall not participate as an individual or member of a group in any performances on recordings, in live concerts or via broadcast or tape media which utilize the name "BOSTON" in violation of the provisions of this paragraph or this Release.

       18.  To the extent, if any, that Hashian may have any right, title or interest in any sound recording comprising the Third Album, Hashian grants and assigns to Scholz exclusively, perpetually, and throughout the Universe, all right, title and interest in and to such sound recording, including but not limited to all rights of the owner of copyright specified in 17 U.S.C. §106 and all renewal rights therein.  For purposes of this paragraph:

         (1)  Hashian hereby makes, constitutes and appoints Scholz, irrevocably and coupled with an interest, Hashian's true and lawful attorney in fact for Hashian and in Hashian's name, place and stead to sign, execute and acknowledge, deliver and record all documents and instruments necessary or desirable to grant and assign to Scholz, exclusively, perpetually and throughout the Universe, all exclusive rights, title and interest in and to all such sound recordings as described above

including, but not limited to, all rights to the owner of copyright specified in 17 U.S.C. §106.

(2) The documents and instruments referred to in paragraph 18(1) above shall include, but shall not be limited to, documents to apply for and obtain all registration of copyrights in and to any and all such sound recordings as described above, and documents to assign such copyrights to Scholz.

(3) Hashian grants to said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done with respect to such sound recordings as described above as fully for all intents and purposes as Hashian might or could do if personally present, hereby ratifying all that Hashian's said attorney shall lawfully do or cause to be done by virtue of this power of attorney.

(4) Hashian's said attorney is empowered to determine under his sole discretion the time when, purpose for and manner in which any power conferred upon him shall be exercised, and the conditions, provisions and covenants of any document or instrument which may be

executed by him pursuant to this power of attorney.

19. Each party agrees, at the request of any other party, to execute any and all documents reasonably requested by any other party to effectuate the terms of this Release.

20. Hashian agrees to deliver to Steve Simon, Esq. at Bernkopf, Goodman & Baseman, 125 Summer Street, 13th Floor, Boston, MA 02210 within seven days of the signing of this Release: (1) all originals and copies of any documents produced or otherwise provided to Kaye, Fialkow, Richmond and Rothstein (as attorneys for Hashian and/or Francis Sheehan) by Scholz, Scholz Research & Development, Inc. and/or Third Stage Tours, Inc., or any of their agents, employees or attorneys, in connection with any litigation, and (2) all originals and copies of any and all transcripts of any depositions (other than the transcripts of Hashian's deposition) taken in any litigation in which Scholz is or was a party. Scholz agrees that in the event of any future litigation between Hashian, on the one hand, and Scholz, Scholz Research & Development, Inc. or Third Stage Tours, Inc., on the other hand, to return to Hashian any or all of the materials delivered to Steve Simon pursuant to this paragraph within seven days of Steve Simon's receipt of a written request from Hashian for any such materials. The parties acknowledge and agree that upon delivery to Steve Simon of the items described above, the Stipulation and Order Providing for Confidential Treatment of Documents, Testimony

"B" 03/05/91                    -18-                    Hashian.agt

and Information entered by the court in July of 1988 shall be of no further force or effect.

21.    The provisions of this Release shall be deemed to extend to, be binding upon, inure to the benefit of (in addition to the named parties): The officers, directors, agents, employees, and attorneys of each named party and their respective legal heirs, successors, licensees and personal representatives, assigns, parent, subsidiary or affiliate companies of each named party and their officers, directors, agents, employees and attorneys of each such parent, subsidiary, and affiliated company of each of them, and their respective legal heirs, successors, licensees, personal representatives and assigns.

22.    Each of the parties acknowledges that no other party nor any agent nor attorney of any other party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him to execute this Release, and each of the parties acknowledges that he or it has not executed this Release in reliance upon any promise, representation or warranty not contained herein.

23.    Each person executing this Release on behalf of any party represents and warrants that he or she has been fully empowered to execute this Release, and that all necessary action for the execution of this Release has been taken.

"B" 03/05/91                    -19-                    Hashian.agt

24.   No purported waiver by any party of any breach by another party of any of its obligations, agreements, or covenants hereunder, or any part thereof, shall be effective unless made in writing signed by the party or parties sought to be bound thereby and no waiver of any term, provision or condition of this Release whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of such term, provision or condition of this Release.   No failure to pursue or elect any remedy with respect to any default or breach of any provisions of this Release, or any part thereof, shall be deemed to be a waiver of any other subsequent, similar or different default or breach, or any election of remedies available in connection therewith.

25.   In the event of any litigation between the parties to enforce any of the provisions of this Release or any right of any party hereto, the non-prevailing party to such litigation agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by the prevailing party, all of which shall be included in and be a part of the judgment rendered in such litigation.

26.   This Release shall be construed in accordance with the laws of the Commonwealth of Massachusetts.

27.   Each party, hereby represents to each other party that it has not heretofore assigned or transferred, or purported to assign or transfer, to any person, firm or

"B" 03/05/91                    -20-                    Hashian.agt

corporation whatsoever, any of the claims released hereunder. Each party agrees to indemnify and hold harmless each other party against any claim, demand, debt, obligation, liability, costs, expenses, right of action or cause of action, based upon, arising out of, or in connection with, any such transfer or assignment or purported transfer or assignment, including the reimbursement of reasonable attorneys' fees.

28.    Hashian agrees not to communicate or disclose to any individual, corporation or entity, except to the Internal Revenue for tax purposes or as required by law, that a portion of the money paid hereunder was deemed in settlement for personal injury damages.

29.    Hashian hereby acknowledges and agrees that Scholz possesses in perpetuity the sole and exclusive worldwide right, without any requirement of Scholz to pay any royalties or other amounts in connection therewith to Hashian, to use and to permit others to use the name "BOSTON" for any purpose whatsoever, that Hashian does not have the right to use (except in a manner authorized by paragraph 17 herein) or license the use of the name "BOSTON" and that to the extent Hashian ever had any such rights, he transferred them to Scholz in the 1981 Agreement. Except for anything expressly stated to the contrary in this Release, Hashian hereby irrevocably relinquishes, conveys and assigns to Scholz in perpetuity any and all rights he has or had under the 1981 Agreement or any other agreements between the parties.  Scholz and Hashian hereby declare the 1981