## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DONALD THOMAS SCHOLZ, )
)
           Plaintiff, )
)   1:13-cv-10951
   v. )
)   **JURY TRIAL DEMANDED**
BARRY GOUDREAU, )
)   *\* Leave to File Granted On May 19, 2014\**
          Defendant. )
)
)

## FIRST AMENDED COMPLAINT

Plaintiff Donald Thomas ("Tom") Scholz seeks relief from trademark infringement, unfair competition, breach of contract, and other unlawful acts of the defendant Barry Goudreau, all in violation of the laws of the United States and Commonwealth of Massachusetts, based upon Goudreau's persistent, unauthorized, and willful misuse of Scholz's trademarks and the misappropriation of Scholz's goodwill.

### *INTRODUCTION*

1.     Tom Scholz founded the hugely successful rock music band BOSTON in the early 1970s and owns various trademarks used in connection with the band, including two federally-registered trademarks for BOSTON.  Scholz has devoted nearly forty years to the cultivation of BOSTON's unique sound, which the BOSTON trademarks have come to symbolize.  As a result of Scholz's long and extensive use and promotion of the BOSTON trademarks in interstate commerce, such marks have become distinctive and famous in designating the source or origin of recordings, live performances, and merchandise of the rock music band BOSTON.  Furthermore, the BOSTON trademarks have come to distinguish the band's recordings, live performances, and merchandise from the music, performances, and goods

of other musicians and rock bands. Scholz has built up and owns valuable goodwill associated with his music, performances, and band-related products. The BOSTON trademarks have come to symbolize that good will.

2.     Barry Goudreau is a former member of the band BOSTON who last performed as a member of the band in 1979. He has no rights to the BOSTON trademarks. Despite his limited and long-past involvement with BOSTON, Goudreau is now, without authorization, trying to take advantage of BOSTON's goodwill and esteem by using the BOSTON trademarks to promote his own music career and that of various bands in which he plays in venues in Massachusetts and throughout the country. By suggesting that he is currently affiliated with the band BOSTON, or that he contributed more to the band than is the case, Goudreau has attempted to gain more attention for his current performances by misleading consumers into thinking that they would be experiencing a true BOSTON performance. Correspondingly, Goudreau's use of BOSTON to promote his performances distracts potential concert goers and fans from attending true BOSTON concerts featuring Scholz or purchasing BOSTON records. As such, Goudreau is trying to trade on the substantial goodwill associated with these trademarks and which Scholz has worked diligently to build over the years.

3.     Goudreau's use of the BOSTON trademarks have caused, and, if unabated, will continue to cause a likelihood of confusion, mistake, and/or deception as to the current status of BOSTON (which continues to record music and perform live concerts), Goudreau's affiliation (or lack thereof) with BOSTON, and whether or not the band BOSTON is performing at the various events promoted by Goudreau. Goudreau's unauthorized use of the BOSTON trademarks is thus lessening the capacity of Scholz's famous marks to identify and distinguish Scholz's goods and services. Goudreau's unauthorized use of the BOSTON trademarks also

deprives Scholz of his ability to control fully the nature and quality of all products and services provided under the BOSTON trademarks and harms the valuable reputation and goodwill of BOSTON.   In short, this likelihood of confusion undermines the value of the unique sound, experience, and goodwill that Scholz created and maintains as the founder and leader of BOSTON and that is symbolized by the BOSTON trademarks.

## THE PARTIES

4.     Plaintiff Donald Thomas ("Tom") Scholz is an individual residing in Middlesex County, Massachusetts.

5.     Defendant Barry Goudreau is an individual who, on information and belief, resides in Swampscott, Massachusetts.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition claims).

7.     This Court has jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.  The state and common law claims arise from or are substantially related to the same acts giving rise to the federal claims.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because both parties reside in this judicial district.

## FACTUAL BACKGROUND

### A.     Origins of BOSTON

9.     Scholz is a successful musician, composer, recording engineer, and producer who, in the early 1970s, founded the rock music group that would eventually be known as "BOSTON" and would go on to sell over 30 million albums.

10.     The original members of BOSTON included Scholz, who played all instruments except for drums, and Brad Delp, the lead vocalist. Scholz wrote all the songs on the original demo recordings and produced, engineered, and financed the recording of the demos himself. Goudreau was not, at that point, part of the band and did not play on the demos. These demos landed Scholz interest from record companies before he had even formed a touring band to play his music at live concerts.   In essence, Scholz created the BOSTON sound and recorded the songs before he enlisted Goudreau and others to perform live as BOSTON.

11.     BOSTON's self-titled debut album, which was released in August 1976, sold 17 million copies and is one of the most successful debut albums of all time. The album included radio hits such as *More Than a Feeling* and *Peace of Mind*. A second album, *Don't Look Back*, was released in 1978, sold seven million copies, and included more radio hits. Scholz wrote most of the songs on both albums and played most of the instruments, including all of the guitar parts on the majority of the songs.

12.     Goudreau played guitar for BOSTON during only three years (1976-1979) of the band's nearly thirty-seven years of existence. During that short period, Goudreau performed only a small portion of the guitar parts on BOSTON's first two albums. In all, Goudreau played guitar on two of the eight tracks on the debut album and made cameo appearances on four of the eight tracks on the second album. He did not appear on any subsequent BOSTON albums.

13.     Goudreau appeared with BOSTON on a few of its early concert tours but last performed as a member of BOSTON in about 1979, after which he left the band to pursue a solo music career.

14.     After Goudreau left the band, BOSTON continued to record and release successful albums, including *Third Stage*, *Walk On*, and *Corporate America*. *Third Stage*, for

instance, produced the number one radio hit *Amanda* and was certified platinum four times, meaning it sold at least four million copies in the United States alone. Goudreau did not appear on this album. BOSTON, without Goudreau, also continued to perform in numerous live concerts, including a number of major national tours. The most recent national tour was conducted during the spring and summer of 2012, during which BOSTON played approximately 38 dates across New England, the Mid-Atlantic, the South, and the Midwest

### B.     *Scholz's Federally Registered and Common Law Trademarks*

15.     Scholz is the sole owner of the trademark "BOSTON."  Scholz first used the trademark in interstate commerce in or about August 1976.  The mark is registered with the United States Patent and Trademark Office ("USPTO"), Registration No. 1,730,705, with respect to phonographic recordings and/or audio tapes, costume jewelry, souvenir merchandise, paper goods, and entertainment services in the nature of a rock band.  *See* Exhibit A (a true and accurate copy of USPTO registration for the trademark BOSTON).  Scholz applied for registration of the mark on June 14, 1990, and registration issued on November 10, 1992.  The mark has been in continuous use in commerce ever since.  Subsequently, Scholz filed with the USPTO so-called Section 8 and Section 15 affidavits attesting that the mark had been used in commerce for at least five years and that no adverse rulings had been made against the mark. The USPTO accepted these filings.  Thus, the federal registration is now incontestable.

16.     Scholz is also the sole owner of the trademark/servicemark "BOSTON (logo)," shown below:



17.     This mark was first used in interstate commerce at least as early August 1976. The mark is registered with the USPTO, Registration. No. 1,734,444, with respect to phonographic recordings and/or audio tapes, costume jewelry, souvenir merchandise, paper goods, and entertainment services in the nature of a rock band. *See* Exhibit B (a true and accurate copy of USPTO registration for the trademark BOSTON (logo)).  Scholz applied for registration of the mark on June 14, 1990, and registration issued on November 24, 1992.  The mark has been in continuous use in commerce ever since.  Subsequently, Scholz filed with the USPTO so-called Section 8 and Section 15 affidavits attesting that the mark had been used in commerce for at least five years and that no adverse rulings had been made against the mark. The USPTO accepted these filings.  Thus, the federal registration is now incontestable.  (Both the BOSTON and BOSTON (logo) trademarks/service marks will hence be cited, collectively, as the "BOSTON Marks.")

18.     Since obtaining the federal registrations in 1992, and for many years before then, Scholz sold or licensed goods and performed musical concerts under the BOSTON Marks and continues to do so.

19.     Scholz has devoted over forty years to the cultivation of BOSTON's unique sound, both in sound recordings and in live performances.  The BOSTON Marks symbolize and represent this unique BOSTON sound.  As a result of Scholz's long and extensive use and promotion of the BOSTON Marks in interstate commerce, such marks have become distinctive

- 6 -

and famous in designating recordings, live performances, and merchandise of the rock music band BOSTON.   Furthermore, the BOSTON Marks have become distinctive to distinguish BOSTON's recordings, live performances, and merchandise from the performances and goods of other musicians and rock bands.   Scholz has built up and owns considerable, valuable goodwill, which the BOSTON Marks have come to symbolize.

20.     The BOSTON Marks are famous, as evidenced, *inter alia*, by the fact that BOSTON has sold over 30 million albums over the years and its hit songs-- such as *More Than a Feeling*, *Peace of Mind*, *Don't Look Back*, *Rock and Roll Band*, *Amanda* and others--are a staple of album oriented and classic rock stations around the country and continue to be played today. BOSTON also continues to tour nationally and internationally and to record and produce music. As such, Scholz has developed substantial goodwill through the BOSTON Marks.

21.     Scholz is also the owner of the common law marks and tag lines JUST ANOTHER BAND OUT OF BOSTON and WE WERE JUST ANOTHER BAND OUT OF BOSTON (collectively, the "JUST ANOTHER BAND Marks").   Scholz began using these marks in commerce at least as early as August 1976 in connection with entertainment services in the nature of a rock music band.   For example, Scholz uses these marks to introduce and start most of his BOSTON rock music concerts and otherwise to publicize his band and concerts.

### C.     *Goudreau's Infringing Activities*

22.     Despite Goudreau's limited role with BOSTON,  and even though Scholz played all of the guitar parts on most of the songs, Scholz nonetheless agreed to pay Goudreau 20 percent of the artists' royalties from all tracks on BOSTON's first two albums, the same percentage of artists' royalties that the founder, Scholz, and the lead singer, Delp, received. Scholz agreed to Goudreau's receiving a full one-fifth share of the artists' royalties on these first

two albums in an effort to foster harmony among the band members.  In an effort to part with Goudreau on good terms, Scholz continued to grant this 20 percent share of royalties to Goudreau even after Goudreau left BOSTON in 1979 and was no longer involved with the band.

23.     Despite this arrangement, in 1982, Goudreau sued Scholz, the other band members, and the band's touring company, seeking a greater share of the band's income.

24.     On or about May 9, 1983, Scholz and Goudreau (and the other then-band members and BOSTON's touring company) executed a settlement agreement ending Goudreau's lawsuit (the "Agreement").  In the Agreement, Goudreau stated that he "wishes to retire from 'BOSTON', and to cease performing with the group professionally known as 'BOSTON.'" Exhibit C, Agreement at 1.  Goudreau also agreed to other obligations in exchange for certain payments, including 20 percent of artist royalties for all songs on the first two BOSTON albums, even though the majority of the songs did not contain his performances, because Scholz had played all the guitar tracks.

25.     Goudreau agreed that he would "have no interest, right nor title to the name 'BOSTON.'"  Agreement at ¶ 1.  He further agreed that he would not use BOSTON to promote or advertise future performances:

> The Name "BOSTON": The parties hereto expressly agree that Goudreau may use the term "formerly of Boston" for and in conjunction with any biographical usage with respect to future performances, but, except to this extent, Goudreau shall have no other interest, right or title to the name "BOSTON." Without limiting the foregoing, *Goudreau may not use the name "BOSTON" for or in conjunction with any advertisement or promotion.*

Agreement at ¶ 2(D) (emphasis added).

26.     The above-quoted covenant was a major incentive for Scholz's agreeing to the payments that Goudreau would receive under the Agreement.

27.     Despite this covenant, Goudreau has repeatedly, and without right or authorization, used the name "Boston," the BOSTON Marks, and the JUST ANOTHER BAND Marks to advertise and promote himself and others in connection with rock music performances. Goudreau has placed and used these marks, or has caused others acting on his behalf, at his direction, or jointly or in partnership with him, to place and use these marks in interstate commerce in connection with goods or services he has provided, and/or on containers for goods for sale in commerce, such as compact discs.

28.     Goudreau and/or others acting on his behalf, at his direction, or jointly or in partnership with him, has also actively promoted, advertised, and held himself out as being a founder of BOSTON, an original band member, or <u>currently</u> affiliated with BOSTON, rather than "formerly of Boston," thereby exaggerating his involvement with the band, violating the terms of the Agreement, misleading consumers, and causing brand confusion.  For example, as seen in recent advertisements and marketing materials promoting concert performances by Goudreau, and in interviews he has conducted in connection with promoting his concerts and music career, Goudreau has referred to himself as "Barry Goudreau from Boston," "Barry Goudreau of Boston," "Barry Goudreau of the Multi-Platinum Group BOSTON," and "Barry Goudreau Lead Guitarist Rock Legend from The Band Boston."  Goudreau also suggests in some of these materials that he had more of a role in the success of BOSTON and the creation of the BOSTON sound than was the case.

29.     On at least one occasion, Goudreau also taped a promotional piece in support of a political campaign in which Goudreau stated: *"Hi, this is Barry Goudreau of the band Boston . . . ."*.  The present tense of Goudreau's statement wrongly suggested that Goudreau is still an active member of BOSTON and/or that BOSTON was endorsing the political candidate.  On

- 9 -

information and belief, Goudreau allowed himself to be introduced by the candidate at the event, and/or held himself out as, "the guy who did *More than a Feeling*." Goudreau did not play on that recording however. Furthermore, Scholz would not allow his BOSTON marks or his music to be used to promote political campaigns. Goudreau's use of BOSTON in this circumstance thus tarnished the BOSTON Marks.

30.    Goudreau has also traded on the BOSTON Marks and associated goodwill by exaggerating his role with the band in conjunction with promotions or advertisements for a series of live concert appearances that he promoted as "The Best of Boston," and during which he, and/or others acting on his behalf, under his direction, or jointly or in partnership with him, again held himself out as an original and/or founding member of BOSTON, when in fact he was neither. Promotions for Goudreau's "The Best of Boston" appearances have also included a graphic of "The Best of Boston" designed to resemble Scholz's federally registered and incontestable BOSTON (logo) mark. For example:



31.    Goudreau has also appeared with the band Ernie & The Automatics. In that role, Goudreau has been using the BOSTON Marks and the JUST ANOTHER BAND Marks to advertise and promote rock music for Ernie & The Automatics recordings and live performances

and to suggest a false association or affiliation with BOSTON, including describing Goudreau as an "original member" of BOSTON.  Such commercial advertisements and promotions have been broadcast on radio, television, and the internet and have also appeared on Ernie & The Automatics' compact discs for sale at various commercial outlets.  For example:



32.     Publications promoting various live musical performances of Ernie & The Automatics have identified Goudreau as one of the "original members of the rock band BOSTON."

33.     The foregoing trademark violations have been caused directly or indirectly by Goudreau, who has, on information and belief, knowingly provided to various members and/or representatives of Ernie & The Automatics and the media false information concerning Goudreau's involvement and affiliation with BOSTON.

34.     Most recently, Goudreau has been appearing with The James Montgomery Blues Band at various venues across Massachusetts.  Internet advertisements and marketing materials promoting these concert performances have referred to Goudreau as "Lead Guitarist Rock

Legend From the Band Boston," such as the advertisement reprinted below:



35.    In addition, at least one radio advertisement broadcast in the greater Boston market promoted an August 2012 concert by referring to Goudreau as an "original member" of BOSTON while original BOSTON musical tracks played as background music for the advertisement.  These recent print and radio advertisements coincided with a 2012 concert tour performed by Scholz and BOSTON, which included a July 2012 concert date in New England.

36.    Goudreau has further amplified the false association between him and BOSTON by playing BOSTON songs (*e.g.*, *More than Feeling* and *Rock and Roll Band*) during live performances, even though Goudreau neither wrote nor played on the well-known studio recordings of these songs.  Several of these concerts were held in and around the city of Boston and in New England generally.  Furthermore, during various live concert performances as a member of Ernie & The Automatics, Goudreau has used the phrase "we were just another band out of Boston" in reference to Ernie & The Automatics, further suggesting an affiliation with BOSTON and its JUST ANOTHER BAND Marks.  (The words "we were just another band out of Boston" are the first lyrics from the song *Rock and Roll Band*, which appeared on BOSTON's debut album.  Scholz uses the lyric as a trademark to introduce BOSTON's live performances.) Many of these performances have been recorded and are available on YouTube, including, for example,    the    following    performance    available    at    the    following    link:

- 12 -

http://www.youtube.com/watch?v=_N--34fMpY4&feature=player_embedded.

37.     Goudreau's repeated misuse of the BOSTON and JUST ANOTHER BAND Marks, in conjunction with his performances of BOSTON's hit songs during live performances, has, on information and belief, caused consumers to believe they have paid for and attended a true BOSTON concert experience or BOSTON reunion concert, when in fact they have not. Goudreau's misuse of these trademarks also causes a likelihood that music fans will believe that the band BOSTON does not continue to exist (when, in fact, it does), such that the only way they will be able to experience the BOSTON sound is through Goudreau's appearances.

38.     Goudreau's promotions have also exaggerated his role with BOSTON by stating that Goudreau played on recordings of various BOSTON hit songs, when in fact he did not. For example, Goudreau performed on a concert tour known as "World Classic Rockers" that promoted Goudreau's work as a "trademark" of the BOSTON sound on "smash singles such as *More Than A Feeling*, *Peace of Mind*, *Foreplay/Longtime*, *Rock n Roll Band*, *Don't Look Back* and other chart-toppers."   This promotion incorrectly and misleadingly stated that Goudreau played on the recordings of *More Than A Feeling*, *Peace of Mind*, and *Rock n Roll Band*, three of BOSTON's greatest hits from BOSTON's debut album.   In fact, Goudreau played guitar parts only on *Foreplay/Long Time* and *Let Me Take You Home Tonight* from that debut album.

39.     Goudreau also owns and controls a website, www.barrygoudreau.com, which improperly uses keyword metatags such as "Boston," "band Boston," "and "Tom Scholz" in its website metadata.   Thus, when a consumer enters one of these terms in an internet search engine, instead of being directed to a website owned or operated by Scholz and/or BOSTON, the consumer may be misdirected to Goudreau's website, which is in no way affiliated or associated with, or endorsed by, Scholz and/or BOSTON.

ME1 17045507v.2

40.     Even when Goudreau follows the letter of the Agreement and uses only the authorized phrase "formerly of Boston," the word "Boston" is often featured more prominently than surrounding text (*e.g.*, in all capital letters or in larger letters) or the phrase appears with other wording and design elements intended to obscure the "formerly of" and suggest, falsely, a current or more substantial affiliation with BOSTON.   Moreover, in breach of the Agreement, the use of "BOSTON" appears in advertisements or promotional materials rather than in strictly biographical materials.   For example:



41.     Scholz commissioned a consumer survey showing that Goudreau's various uses of the BOSTON Marks have caused consumer confusion as to Goudreau's affiliation with BOSTON and whether the band BOSTON was performing at the specific concerts at which Goudreau was actually performing.  Specifically, a high percentage of survey respondents who viewed representative examples of Goudreau's advertisements for a live musical performance wrongly believed, *inter alia*, that BOSTON was the performer identified in the advertised concert and/or that Goudreau was an original and/or founding member of BOSTON.

42.     Based on the foregoing, Goudreau has infringed, and continues to infringe, Scholz's trademarks, has misappropriated Scholz's goodwill for his own benefit and commercial gain, and has diluted the BOSTON Marks.   Goudreau's infringement includes, without limitation, his distribution of commercial advertising and promotional materials using the trade name BOSTON, which materials, among other things, misleadingly refer to Goudreau as an original and/or founding member of BOSTON, and/or which exaggerate Goudreau's role with BOSTON during the 1970s, and his distribution of commercial advertising and promotional materials using a confusingly similar logo as Scholz's BOSTON (logo).  Goudreau's conduct in this respect also breaks his promise to Scholz, as embodied in the Agreement, that he would not use the BOSTON trademark to promote himself and would confine his use of "BOSTON" to the agreed-upon phrase "formerly of BOSTON" for biographical purposes only.

43.     Goudreau's various uses of the BOSTON Marks and the JUST ANOTHER BAND Marks have caused, are likely to cause, and will continue to cause confusion, mistake, and/or deception as to the current status of BOSTON (which continues to exist and perform musical concerts to this day), Goudreau's affiliation (or lack thereof) with BOSTON, and whether or not the band BOSTON is performing at the various concerts promoted by Goudreau.

44. Such confusion is compounded by the fact that Goudreau routinely performs several songs composed by Scholz and which appeared on BOSTON's first and second albums, including songs for which Goudreau did not perform on the recordings.

45. Goudreau's unauthorized uses of the BOSTON Marks and the JUST ANOTHER BAND Marks are lessening the capacity of Scholz's famous marks to identify and distinguish Scholz's goods and services.

46. Goudreau's unauthorized uses of the BOSTON Marks and the JUST ANOTHER BAND Marks deprives Scholz of his ability to control fully the nature and quality of all products and services provided under the BOSTON Marks and JUST ANOTHER BAND Marks and harms the valuable reputation and goodwill of BOSTON.

47. Scholz has been and will continue to be damaged by Goudreau's unauthorized use of Scholz's marks.

## COUNT I

### Federal Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

48. Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

49. The BOSTON Marks are federally registered and incontestable.

50. Goudreau has used, reproduced, and/or imitated the federally registered BOSTON Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce.

51. Goudreau's unauthorized use of the BOSTON Marks, as described above, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

52.     Goudreau's use of the BOSTON Marks has caused and is causing irreparable injury to Scholz for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau is enjoined by this Court.

53.     Goudreau's infringing use of the BOSTON Marks has been willful, wanton, reckless and in total disregard of Scholz's rights.

54.     By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

## COUNT II

### Unfair Competition and False Designation of Origin
### Under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)

55.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

56.     Goudreau's unauthorized use of the BOSTON Marks and the JUST ANOTHER BAND Marks, as well as the trade name BOSTON, as described above, constitutes unfair competition, direct and contributory trademark infringement, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Goudreau's use of the BOSTON Marks and the JUST ANOTHER BAND Marks has caused and is causing irreparable injury to Scholz for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau is enjoined by this Court.

58.     Goudreau's infringing use of the BOSTON Marks and the JUST ANOTHER BAND Marks has been willful, wanton, reckless and in total disregard of Scholz's rights.

59.     By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

ME1 17045507v.2

## COUNT III

### Unfair Competition and False Advertising under
### 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)

60.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

61.     Goudreau's unauthorized use of the BOSTON Marks and the JUST ANOTHER BAND Marks, as well as the trade name BOSTON, as described above, and in conjunction with commercial advertising and promotion, constitutes unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Goudreau's false statements and misrepresentations concerning his historical involvement with BOSTON and alleged contribution to the band's sound and success, including but not limited to the false statements and misrepresentations identified in the foregoing paragraphs (*e.g.*, that Mr. Goudreau is an "original" or "founding" member of BOSTON, that he is somehow currently affiliated with BOSTON, or that he played on more songs than was the case), are material in that the representations are likely to influence, and have influenced, the purchasing decisions of consumers.

63.     Goudreau's misrepresentations violated, and continue to violate the Lanham Act in that the misrepresentations have actually deceived, or have the tendency to deceive, a substantial segment of the public that Goudreau is targeting with his false and misleading advertising, marketing and promotional materials.

64.     Alternatively, because Goudreau's statements are literally false, there is a presumption under the Lanham Act that the statements actually misled, and continue to mislead, consumers.

65.     Goudreau violated the Lanham Act by placing in interstate commerce the false and/or misleading statements throughout the various advertising and promotional materials identified in the foregoing paragraphs.

66.     Goudreau's actions herein have been willful, wanton, malicious, undertaken in bad faith, and with the intent to deceive, misrepresent, harm and damage Scholz.

67.     As a direct and proximate result of Goudreau's false and misleading advertising and promotions, Scholz has suffered, is suffering, and will continue to suffer damages.

<u>**COUNT IV**</u>

**Federal Trademark Dilution under 15 U.S.C. § 1125(c)**

68.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

69.     As a result of Scholz's continuous and substantial use and promotion of the BOSTON Marks throughout the United States and abroad in connection with BOSTON's distinctive hit songs, records, and concerts, the BOSTON Marks have become famous long before Goudreau's unlawful acts.

70.     Goudreau's unauthorized and willful use of the BOSTON Marks, as described above, have lessened and diluted, and will continue to lessen and dilute, the distinctive quality of Scholz's famous BOSTON Marks in a willful effort to trade on Scholz's goodwill and reputation.

71.     Goudreau has used the BOSTON Marks for commercial gain and in commerce.

72.     Goudreau's acts, as described above, constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

73.     Goudreau's use of the BOSTON Marks has caused and is causing irreparable

ME1 17045507v.2

injury to Scholz for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau is enjoined by this Court.

74.     Goudreau's infringing use of the BOSTON Marks has been willful, wanton, reckless and in total disregard of Scholz's rights.

75.     By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

## COUNT V

### Contributory Trademark Infringement In Violation of 15 U.S.C. § 1114(1)

76.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

77.      With full knowledge of Scholz's rights in the BOSTON Marks, and after being warned repeatedly that his conduct and/or the conduct of third parties with whom he has been associated could constitute infringement, Goudreau has participated in or otherwise knowingly contributed to the use, reproduction, and/or imitation of the federally registered BOSTON Marks and/or the JUST ANOTHER BAND Marks by third parties in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce on his behalf. For example, Goudreau has performed in concerts knowing that they were being, or would be, promoted in ways that misused the BOSTON Marks and/or JUST ANOTHER BAND Marks and has thus profited from these acts of infringement.

78.     Goudreau's contributory conduct in connection with the unauthorized and unlawful acts of his third party agents, partners, and associates, has enabled Goudreau to trade unlawfully upon Scholz's established goodwill and reputation.  Goudreau is thereby unjustly enriching himself at the expense of and to the damage and injury of Scholz.

79.     The unauthorized use of the BOSTON Marks and/or JUST ANOTHER BAND

Marks by Goudreau and/or his third party agents, partners, and associates, as described above, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

80.     Scholz has been damaged by the foregoing contributory infringement, has suffered and will continue to suffer monetary damages and loss of goodwill, and absent injunctive relief, will continue to be irreparably harmed by the actions of Goudreau and/or his third party agents, partners, and associates.

<u>**COUNT VI**</u>

**Vicarious Trademark Infringement In Violation of 15 U.S.C. § 1114(1)**

81.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

82.     Goudreau has the right and ability to control the content and appearance of advertising and promotional materials published and distributed on his behalf by third party agents or promoters in connection with the sale, offering for sale, distribution, or advertising of Goudreau's goods or services in interstate commerce.

83.     The use of the BOSTON Marks by Goudreau's third party agents as described herein has caused confusion among consumers, and constitutes infringement of Scholz's BOSTON Marks and JUST ANOTHER BAND Marks.

84.     Goudreau receives a direct financial benefit from the unauthorized use of the BOSTON Marks and JUST ANOTHER BAND Marks by such third parties.

85.     Goudreau is therefore vicariously liable for the infringing use of the BOSTON Marks and JUST ANOTHER BAND Marks by his third party agents.

86.     Scholz has been damaged by the foregoing vicarious infringement, has suffered and will continue to suffer monetary damages and loss of goodwill, and absent injunctive relief,

- 21 -

will continue to be irreparably harmed by the actions of Goudreau and/or his third party agents, partners, and associates..

## COUNT VII

### Trademark Infringement under Massachusetts Common Law

87.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

88.     Goudreau is engaged in trade and commerce in the Commonwealth of Massachusetts.

89.     Goudreau's actions as described above regarding the BOSTON Marks and the JUST ANOTHER BAND Marks constitute trademark infringement in violation of Massachusetts common law.

90.     Goudreau's use of the BOSTON Marks and the JUST ANOTHER BAND Marks has caused and is causing irreparable injury to Scholz for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau is enjoined by this Court.

91.     Goudreau's infringing use of the BOSTON Marks and the JUST ANOTHER BAND Marks has been willful, wanton, reckless and in total disregard of Scholz's rights

92.     By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

## COUNT VIII

### Trademark Dilution under M.G.L. c. 110H

93.     Scholz repeats and realleges each allegation contained in the proceeding paragraphs as if fully set forth herein.

94.     Goudreau is engaged in trade and commerce in the Commonwealth of Massachusetts.

95.     Goudreau's actions as described above are likely to cause injury to Scholz's business reputation or to dilute the distinctive quality of the famous BOSTON Marks and JUST ANOTHER BAND Marks, as well to the trade name BOSTON.  Goudreau's acts began long after the BOSTON Marks and JUST ANOTHER BAND Marks became distinctive and famous.

96.     Goudreau's actions constitute trademark dilution in violation M.G.L. c. 110H, § 13.

97.     Goudreau's use of the BOSTON Marks and JUST ANOTHER BAND Marks has caused and is causing irreparable injury to Scholz, for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau's use of the marks is enjoined.

98.     Goudreau's conduct as described above has, on information and belief, been willful, wanton, reckless, and in total disregard of Scholz's rights.

99.     By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

## COUNT IX

## Unfair Competition under Massachusetts Common Law

100.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

101.     Goudreau is engaged in trade and commerce in the Commonwealth of Massachusetts.

102.     Goudreau's actions as described above regarding the BOSTON Marks and the JUST ANOTHER BAND Marks constitute unfair competition in violation of Massachusetts common law.

103.     Goudreau's use of the BOSTON Marks and the JUST ANOTHER BAND Marks

has caused and is causing irreparable injury to Scholz for which Scholz has no adequate remedy at law, and will continue to do so unless Goudreau is enjoined by this Court.

104.    Goudreau's infringing use of the BOSTON Marks and the JUST ANOTHER BAND Marks has been willful, wanton, reckless and in total disregard of Scholz's rights.

105.    By reason of the foregoing, Scholz has suffered and will continue to suffer monetary damages and loss of goodwill.

## COUNT X

### Unfair Methods of Competition and Deceptive Practices under M.G.L. c. 93A

106.    Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Scholz and Goudreau are both engaged in trade and commerce (including, *e.g*, providing live and recorded music performances) in the Commonwealth of Massachusetts.

108.    Goudreau's unfair and deceptive conduct occurred, and is occurring, primarily and substantially in the Commonwealth of Massachusetts.

109.    Goudreau's infringing use of the BOSTON Marks and the JUST ANOTHER BAND Marks has been willful, wanton, reckless, and in total disregard of Scholz's rights.

110.    By reason of the foregoing, Goudreau has engaged in unfair and deceptive practices in violation of M.G.L. c. 93A.

111.    Such conduct by Goudreau has caused and will continue to cause irreparable injury to Scholz for which Scholz has no adequate remedy at law.

112.    Such conduct by Goudreau has caused and will continue to cause damage to Scholz.

ME1 17045507v.2

## COUNT XI

**Violation of M.G.L. c. 93, §§ 12 and 43B (Truth in Music Statute)**

113.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

114.     Scholz and Goudreau are both engaged in trade and commerce (including, *e.g*, providing live and recorded music performances) in the Commonwealth of Massachusetts.

115.     Goudreau, who long ago severed all ties with the band BOSTON, has nonetheless advertised and promoted live musical performances in the Commonwealth of Massachusetts through the use of a false, deceptive, or misleading affiliation, connection, or association with the band BOSTON.

116.     Goudreau's infringing use of the name BOSTON to promote his live musical performances has been willful, wanton, reckless, and without authorization from Scholz.

117.     By reason of the foregoing, Goudreau has engaged in unfair and deceptive practices in violation of M.G.L. c. 93, §§ 12 and 43B.

118.     Such conduct by Goudreau has caused and will continue to cause irreparable injury to Scholz for which Scholz has no adequate remedy at law.

119.     Such conduct by Goudreau has caused and will continue to cause damage to Scholz.

## COUNT XII
**Breach of Contract**

120.     Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

121.     Scholz and Goudreau were parties to an enforceable contract.

122.     Scholz has performed his obligations under the contract.

- 25 -

123.    By reason of the acts described above, Goudreau has breached that contract., including the limitations on his use of the BOSTON Marks and limits on how he may represent his affiliation with the band BOSTON.

124.    Such conduct by Goudreau has caused and will continue to cause damage to Scholz.

## COUNT XIII

### Breach of Implied Covenant of Good Faith and Fair Dealing

125.    Scholz repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

126.    The parties' contract contains an implied covenant of good faith and fair dealing.

127.    By reason of the foregoing, Goudreau has breached that covenant.

128.    Such conduct by Goudreau has caused and will continue to cause damage to Scholz.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donald Thomas Scholz prays that this Court:

A.    Enter judgment in favor of Scholz against Goudreau on all counts.

B.    Order that Goudreau, and anybody acting in concert with or under the supervision of Goudreau, be preliminarily and permanently enjoined from:

i.    Using the BOSTON Marks and the JUST ANOTHER BAND Marks, or any other trade or service name or logo confusingly similar to such marks, alone or in combination with other words or with graphic symbols or

logotypes, in connection with Goudreau's performances, goods, and services;

ii.    Using in any manner any trade name, words, abbreviations or any combination thereof which would imitate, resemble or be suggestive of the BOSTON Marks and the JUST ANOTHER BAND Marks;

iii.    Otherwise infringing on the BOSTON Marks and the JUST ANOTHER BAND Marks;

iv.    Stating or suggesting in any manner that Goudreau is currently affiliated with the band Boston and/or was an original and founding member of the band Boston; and

v.    Unfairly competing with Scholz, diluting the distinctiveness of the BOSTON Marks, and otherwise injuring Scholz and his goodwill in any manner.

C.    Terminate and rescind the Agreement, including any right of Goudreau to receive continuing royalty payments or other payments.

D.    Order Goudreau to pay monetary damages in an amount to be determined at trial.

E.    Multiply the amount of damages awarded to Scholz as permitted by law.

F.    Order Goudreau to compensate Scholz for the costs of this action and Scholz's reasonable attorney's fees.

G.    Grant Scholz such other, further, different or additional relief as this Court deems equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Donald Thomas Scholz respectfully requests a trial by jury for all triable issues of all claims alleged in this complaint.

Respectfully submitted,

DONALD THOMAS SCHOLZ,
Plaintiff,
By his counsel,


/s/ Nicholas W. Allen
Erik Paul Belt (BBO # 558620)
ebelt@mccarter.com
Nicholas W. Allen (BBO # 663409)
nallen@mccarter.com
MCCARTER & ENGLISH, LLP
265 Franklin St.
Boston, MA 02110
Tel: 617.449.6500
Fax: 617.607.9200

Date:  May 21, 2014

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas W. Allen, hereby certify that on this 21st day of May, 2014, the within document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).


/s/ Nicholas W. Allen
Nicholas W. Allen