UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DONALD THOMAS SCHOLZ,
    Plaintiff and
    Counterclaim Defendant

v().

BARRY GOUDREAU,
    Defendant and
    Counterclaim Plaintiff

Civil Action No. 13-cv-10951-DJC

**AFFIDAVIT OF JEFFREY S. BAKER IN SUPPORT OF PETITION
FOR ATTORNEY'S FEES**

I, Jeffrey S. Baker, being duly sworn and under oath, do hereby depose and state under the pains and penalties of perjury upon person knowledge as follows:

**OVERVIEW OF THE REPRESENTATION OF DEFENDANT BARRY
GOUDREAU AND SPECIFIC REQUEST FOR FEES BY ATTORNEY BAKER**

1. I am lead counsel to the Defendant, Barry Goudreau ("Goudreau"). I have been counsel to Goudreau since May, 2016 along with the other co-counsel in this case who are as follows: David Given, of Philips Erlewine Given and Carlin, of San Francisco, CA; Dan Tarlow, of Copani Tarlow and Cranney, of Methuen, MA; and David Herlihy, of The Law Offices of David Herlihy, Newton, MA.

2. This affidavit is submitted to substantiate our petition for attorney's fees and expenses in this matter

3. I personally am seeking compensation limited exclusively for my time and expenses in connection with this matter in the amount of $305,592, which time and charges for services relate to the successful defense at trial of the trademark infringement claims brought against my client, Barry Goudreau.

4. I have attached hereto my billing records. The amount of time charges is

1

higher than what sought herein. I have kept contemporaneous records since the commencement of my representation of Goudreau. I have also addressed each time entry in a review of the same at the time of submission of this support to the Court. I have further supplemented my records by providing a more detailed description of the tasks involved and the services performed at the time of this submission.

5. My methodology for the representation of Goudreau is predicated on the fact that I, among our trial defense team at the time that our representation commenced, am the only lawyer with experience trying jury trials in the United States District Court for Massachusetts. In fact, I have participated in numerous jury trials in Federal Court. As such, I was designated lead counsel among this defense team of highly skilled, experienced trial lawyers.

6. I was charged with the duty of overall strategy, lead representation in addressing the Court, conducting the opening statement, examination and cross examination of key witnesses, and giving the closing argument.

7. I participated in all aspects of the trial preparation and in Court appearances during pretrial matters, the trial itself and post-trial matters.

8. Consistent with this undertaking, however, the primary focus always was to exculpate our client Goudreau from any trademark infringement liability. We as defense counsel viewed that responsibility as our primary objective.

9. As such, while recognizing that much of the proof of the Goudreau counterclaims overlapped with the defense of the trademark claims, it is fair to state that approximately 10% of my time was allocated to the exclusive representation of our client on the counterclaims and thus my application should be reduced by that percentage.

10. I also did not prepare Goudreau directly for his testimony (I only assisted in this task), nor did I conduct the examination of Goudreau in Court. That matter was given to

Dan Tarlow.

11. In addition, all of the administrative tasks—what few there were remaining at the time that we got involved in the case in May 2016, were delegated to attorney Tarlow. I nonetheless feel that a 5% reduction of my overall fee for services to accommodate any possible "administrative tasks" which are not compensable is more than fair, and therefore my application should be reduced by that percentage.

12. As a final adjustment, I am also reducing my fee request by an additional 5% to address any possibility of human error or unnecessary overlap that the Court may wish to consider in evaluating the amount that is appropriate in this fee application, and therefore my application should be reduced by that percentage.

13. Accordingly, my fee petition is reduced by a total of 20% to $305,592.00.

14. I seek, therefore, $305,592.00 as compensation for my work to my client Barry Goudreau all of which is related to the successful defense of the trademark infringement claims that I together with co-counsel defended at trial.

15. I and attorneys Given and Herlihy have not been compensated *any amount* by Goudreau as of the date hereof.

16. Attorney Herlihy is seeking $74,940.00 for his direct representation of Goudreau in this matter. Attorney Herlihy maintains his own separate law firm. Attorney Herlihy's time records are attached hereto.

17. Virtually all of the time expended by Herlihy on the matter related to the trademark infringement case except approximately 8.7 hours for assistance with the 93A opposition to the Plaintiff's motion to dismiss the 93A claim. The amount sought by Herlihy represents an approximate 3% reduction or $2610 in the total recorded time charges to accommodate for only matters relating to the trademark infringement case.

**LODESTAR ANALYSIS**

The following "lodestar" factors are addressed herein in support of our petition: the time and labor required for our services to Goudreau; (2) the novelty and difficulty of the questions present in the case; (3) the skill requisite to perform the legal services properly and thoroughly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) our customary legal fees; (6) the nature of our fee with Goudreau (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results we obtained for Goudreau; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of our professional relationship with Goudreau; and (12) the size of awards in similar cases.

**(1)  Time and Labor Required**

18.  I and attorneys David Given and David Herlihy have represented Goudreau in this matter for the first time. Attorney Dan Tarlow has represented Barry Goudreau in other matters for a number of years. Together with attorneys Given and Herlihy, I represented Goudreau commencing in mid-May, 2016. We were retained at a critical juncture in the case, namely after pleading and discovery was completed and the case was being prepared for trial. The prior counsel to Goudreau had withdrawn essentially on the eve of trial.

19.  Representing Goudreau on this matter was a complicated and difficult legal endeavor. The Plaintiff, Thomas Scholz, had substantial resources and hired a well-known, big firm in Boston. As the evidence at trial demonstrated, the matter was thoroughly and hotly litigated. Moreover, Scholz demonstrated, and his trial testimony so corroborated, that Scholz had extremely large resources available to litigate this matter. The transactional cost of the litigation was substantial. Counsel for Goudreau had to expend substantial effort and time to prepare the matter thoroughly and exhaustively. Any settlement offers and demands, moreover, by Scholz were onerous and burdensome. There was,

4

really, no option but to try the matter, given the settlement posture of the Plaintiff. It is fair to say, therefore, that substantial legal services were incurred as a result of the Plaintiff's procedural maneuvering. Much of our efforts have been spent trying to simply get the case ready for and to trial. The docket sheet indicates the numerous motions filed and argued before this Court. Substantial time was spent, in addition, by all counsel, explaining to our client who wanted to remain well informed the procedural steps involved in this case as the case moved towards trial. As perhaps the Court may recall, Mr. Goudreau attended nearly every hearing, and all days of trial together with his family. It was clearly necessary to explain to Mr. Goudreau the meaning of many of the legal documents, as well as the various procedural rules and legal principles that related to the removal and remand back of the case. It was also necessary to work closely with Goudreau to uncover the facts relating to the defendants, and ensuring that Goudreau understood the litigation process.

20. The case itself was, without exception, one of the more complicated and time consuming cases because of the intricacies of the Lanham Act and the general principles of trademark infringement. In addition, Plaintiff Scholz seemed to "change gears" during the pre-trial process. Specifically, at first it seemed that Scholz was presenting an affiliation case. Scholz's testimony spoke in terms of infringement based on the confusion resulting from a sponsorship or affiliation case and then once trial started it became apparent that this strategy was now shifting to a palming off case of infringement. As a consequence, Goudreau's counsel had to prepare the case from essentially all plausible angles in order to be ready. This fact is underscored by the Defendant Goudreau's request at the final pre-trial conference on September 8, 2016, for an offer of proof as to the nature of the case. To this extent, therefore, counsel devoted themselves to the vindication of Goudreau's rights based on a more complex and time consuming trial preparation because of the conduct in the litigation by the Plaintiff. In addition, some of the motions that Scholz lost were then reconsidered and re-argued, thus requiring additional time and effort by this firm.

21. Regarding the time and labor required, attached hereto as Exhibits A and B are two

billing statements which are detailed itemizations of time that Attorney Herlihy and I spent in furtherance of Goudreau's case from the inception of our representation of Goudreau May 2016 through the trial and certain post-trial motions in November, 2016. All the time recorded on my bills annexed hereto recorded the tasks which were then performed. The dates the work performed, the tasks performed, and the time entries are correct to a high degree of accuracy. Due to the sheer volume of documents, pleadings, filings, correspondence, drafting, discovery and research, there was clearly a small margin of error. There is no duplication of effort or work; in many instances this case required the participation of all the attorneys to prepare for or to complete certain tasks.

22. Each attorney interviewed and prepared witnesses. We did an enormous amount of legal research of complex trademark issues. We prepared Goudreau and the third-party witnesses. We investigated factual background matters, the history of the band "Boston". We spent many hours working with Goudreau to ensure that he understood the nature of the litigation process, and the trial process itself. We prepared and explained in careful detail to Goudreau the entire process, the contents of his affidavits, the contents of the complaints, his interrogatory responses, and the nature of the legal proceedings that were occurring and to prepare him for the `trial`.

23. Attorney Herlihy assisted as well. His time is included in the legal invoices annexed to this affidavit as well. Attorney Herlihy is an exceptionally talented and efficient lawyer who is highly skilled at intellectual property, trademark law and legal analysis. Mr. Herlihy assisted the attorneys capably throughout. This affidavit confirms that the time indicated for his work is accurate as well.

24. The time spent on the case which is included in the attached itemization was necessary to advance Goudreau's claims. All the time indicated was reasonable and necessary for the effective preparation of Goudreau for all aspects of the motion practice as well as the trial itself. None of the time indicated was duplicative, unproductive or excessive.

25. All time set forth in the itemization is for legal work actually undertaken by the counsel identified. No time is indicated or charged for administrative duties such as photocopying, collating, mailing, affixing postage, preparing pleading binders, financial accounting or other non- legal tasks.

26. Each time entry in which both my time and Attorney Herlihy's time are itemized and charged reflects work actually conducted by both attorneys which was

reasonably necessary, in our opinion, for the successful advancement of Goudreau' case.

27. In addition, the time charges that are itemized and charged in the affidavits of Dan Tarlow and David Given reflects work conducted by both attorneys which was reasonably necessary, in our collective opinion, for the successful advancement of Goudreau' case. Where tasks were undertaken by all such attorneys and indicated on the itemization, such as documents reviewed by both attorneys, meetings attended by all attorneys and trial prepared for by both attorneys, both of our time is indicated because both of our time and participation was reasonably necessary for the successful advancement of Goudreau's case.

28. For the hundreds of electronic mails transmitted among co-counsel, opposing counsel and third-party witnesses in this case, a minimal amount and often no time is actually charged. This assumption also incorporates the regular and routine telephone follow-up communications with counsel and witnesses. All such communication time is incorporated in the e-mail correspondence calculations. Due to the sheer volume of e-mail and telephone communication, quite often these tasks were simply not charged, which renders therefore a conservative undervaluation of the time actually incurred in drafting, reviewing, reading, and conferring between counsels on the issues raised therein.

29. The complexity of the legal issues and the time incurred by myself and the other attorneys is well known to the Court, in light of the high volume of separate docket entries and the numerous complicated and time-consuming motions filed by both Goudreau and the Plaintiff. Moreover, all counsel had to analyze and understand the summary judgment rulings in order to properly prepare for the trial.

30. I spent virtually every day for the entire summer of 2016 except for a few days in August, 2016, preparing for trial. I did not spend the entire day each day the

summer months, but certainly a good portion of the day was spent involved in the preparation. This allocation necessary largely to the fact that the case had been fully discovered and we, as counsel, were retained virtually just before the commencement of the trial. There was a substantial amount of material and facts to absorb and understand. Moreover, we did not participate in the discovery of the case and therefore we all as counsel had to learn the facts quickly and for the first time.

31. The amount of damages sought by the Plaintiff Scholz moreover was virtually everything that Goudreau had ever accumulated since his departure from Boston in 1983.

32. Scholz sought to take all Goudreau's royalty rights away, and Scholz sought a substantial amount of money form Goudreau, an amount of which would have left Goudreau penniless.

33. Our client made clear, and we as lawyers clearly understood, that we wanted to be very well prepared for trial and did not want to lose for lack of preparation and effort.

**(2) The Difficulty of the Issues**

34. This case involved numerous complicated issues of both fact and law. The facts were complicated. Scholz advanced a number of different trademark infringement theories, and furthermore it was only at the final pretrial conference that we, as counsel, first clearly understood how Scholz was going to proceed with respect to damages. The trademark and legal issues were complicated. There were myriad issues raised throughout the course of the case, some of which were undoubtedly novel in application, ranging from the 93A litigation issues to the trademark law issues. It was unclear, moreover, until the commencement of trial, whether the Defendant Goudreau would advance a nominative fair use defense. The absence of Ernie Boch Jr. as a party to

the case made more difficult the precise positon of Goudreau with respect to the issues of proof and the advancement of certain theories and legal defenses. This omission of Boch certainly added to the novelty of the case and the legal issues. Each of these issues, both factually and as to the state of the law, was fully investigated, researched and briefed.

35. Preparing the case involved reviewing the depositions of the Plaintiff, Goudreau and a number of third-party witnesses. There were thousands of pages of discovery materials furnished by the plaintiff and the defendant, as well as third party witnesses, including out of state witnesses in California and New York. There were numerous pages of financial documents that had to be reviewed and "reduced" to a manageable level in order to understand and make sense of the information. There were many motions for reconsideration filed by the Defendants. It was therefore necessary to brief the court on all of the complex factual and legal issues raised by the defendants.

**(3) The Skill Required to Represent Mr. Goudreau Properly**

36. There was substantial skill required to perform the legal services for Goudreau properly. This was complex business litigation which required the combined efforts and experience of all of the lawyers to properly handle and prepare. Moreover, there were numerous witnesses who had to be interviewed and some who had to be prepared in the event of trial. Goudreau took substantial time and effort to accomplish this task.

37. This case required the combined experience of all of the lawyers to properly prepare. All of the attorneys were present in court during trial except attorney Herlihy who missed a small amount of trial time due to his commitments as a professor at Northeastern University.

**(4) The Preclusion of Other Employment by the Attorneys due to Acceptance of the case**

38.     All of the attorneys sacrificed our personal time and other law cases in order to thoroughly prepare for this case. We forwent other potential paying clients and substantial expected legal fees in other potential cases in order to properly plead, prepare and try Goudreau's case. All of us devoted a substantial amount of time in our law practices to the diligent, thorough and careful preparation of this case. The sacrifice of all of us cannot truly be expressed in the limitations of an affidavit. I maintain a fulltime law practice as do the other lawyers. In addition, Herlihy is professor. Working on this case was undoubtedly to the exclusion of other cases and work from time to time. We both sacrificed time on numerous weekends as well as in the evenings to prepare for the various motions and the trial itself. We worked virtually nonstop in order to fulfill the obligations of this case.

**(5)   Our Customary Legal Fees**

39.     My standard billable rate is $595 per hour. I have charged this rate since 2014 on many commercial litigation matters. For an attorney with my experience, credentials and reputation, $595 per hour for my time is fair and reasonable, and is commensurate with the standard rate for such services in the Greater Boston area based on my personal knowledge by interacting with and consulting with my colleagues and at least 5 other attorneys. In 2011, in the case of <u>Robert Smith and Maria Dasilva v. Dwight Jenkins et al.</u>, civil action no.1:07-CV-12067-RGS, this same court (Stearns, J.) in a fee petition for G.L. c93A found my rate at that time of $450.00 an hour to be fair and reasonable for the period covering September 2007 to April 2011. In the matter of <u>Hylas Yachts Inc. v. Richard Strother</u> 1:12-cv-12468-DJC, this Honorable Court awarded me a legal fee based on my normal billable rate in 2012($450.00 an hour). The case involved difficult principles of trademark infringement law and similar civil commercial litigation. This case, however, involved more complex principles of law and also my rates, as have

many other rates charged by attorneys in greater Boston, have increased in 2016 over 2012. Attorney Herlihy normally charges at this period of time as his standard billable rate the rate of $300 per hour. Please see Section 9, below, for analysis regarding these hourly charges.[1]

**(6)    The Nature of the Fee**

40.    In March of 2016, Goudreau entered into a written fee agreement with my firm, Baker and Associates. The Agreement provided that Goudreau would pay this firm $595 per hour for my services; $300 per hour for those services rendered by David Herlihy; and expenses incurred in the lawsuit[5]. Goudreau has not paid a fee for the work done.

**(7)    The Time Limitations Imposed by the Client or the Circumstances.**

41.    This case required an enormous commitment of time, given the totality of the circumstances including: the behavior and bad faith of the Defendants in the litigation itself, the shifting legal strategies put forth by the Plaintiff, myriad legal issues raised by the facts, and the necessity of substantial motion practice.

**(8)    The Amount Involved and the Results Obtained.**

42.    We obtained substantial, favorable results for Goudreau. We persevered and obtained judgment on all counts of trademark infringement. To the extent that the most critical factor in determining the reasonableness of the award is the degree of success obtained, Attorney Herlihy and I as well as Given and Tarlow are entitled to the

---

[1] Attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate. See People Who Care v. Rockford Bd. Of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996). The best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work.
Spegon v. Catholic Bishop, 175 F.3d 544, 550 (1st Cir. 1999).
[5] Baker and Associates is certainly willing to produce for the Court's inspection such written and signed fee agreement upon request.

full measure of the fees we request hereunder.[2]

**(9)    The Experience, Reputation and Ability of the Attorneys**

43.    My standard billable rate is $595.00 per hour. I routine charge this hourly fee to my clients. This hourly fee is commensurate with those attorneys in the Greater Boston legal community who practice in the same areas that I do and that have the commensurate skill and experience levels that I have.

44.    I have been practicing law in Massachusetts since my graduation from law school thirty-two years ago, in 1984 and my admission to the Bar in 1985.  I have been in good standing with the Bar at all times since my admission. I grew up in Stony Brook, Long Island, where my mother was an English professor at the local State University. I have always been in an academic environment and I believe have achieved academic success at every level. I graduated from Trinity College, Hartford, CT, in 1981 and Suffolk University School of Law in 1984.  Upon my graduation from law school, I immediately joined a law firm in Boston called Caviston and McArdle, where I worked in both real estate and civil litigation. Shortly thereafter, in 1986, I joined the firm of Gargill, Sassoon and Rudolph, of Boston, MA, in the litigation and bankruptcy department. I remained as an associate at that firm until I left and started my own firm in 1987.  My practice focuses upon business and commercial litigation, which includes claims, brought under G.L.c. 93A.  I have tried hundreds of cases in state and federal courts all over the country.  I have appeared and argued in a number of Appeals Courts, primarily in Massachusetts. I have appeared for a six month trial in the United States Bankruptcy Court in the Eastern District of Louisiana. I have conducted in 2015 two jury trials and a number of 93A related claims to the bench. I have tried a case in the

---

[2] Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th cir. 1997) (success may be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked).

Bankruptcy Court Southern District of Florida. I have appeared before the United States Supreme Court (successfully) on an amicus curiae brief. I have represented numerous individuals, corporations, unincorporated businesses and partnerships in a wide variety of disputes throughout my career. I have been lead counsel for a securities registration with the Securities and Exchange Commission and numerous blue sky states. I have been a guest lecturer at Northeastern University on issues related to entertainment law and litigation. I have been invited to lecture on issues relating to entertainment law at the Berklee School of Music. Most attorneys who practice business litigation as I have charge a similar fee, or more, per hour for their work with similar or commensurate experience and expertise.

45. I believe that I have a very good reputation in the Greater Boston legal community for hard work, legal competence and ability. I comport myself at all times with the highest ideals of legal integrity and I believe my reputation in the community reflects this.

46. Attorney Herlihy's current standard billable rate is $300 per hour. He has charged this rate since 2008 on intellectual property matters. For an attorney with his experience, credentials and reputation, $300 per hour for his time is fair and reasonable, and is commensurate with the standard rate for such services in the Greater Boston area based on my personal knowledge by interacting with and consulting with my colleagues. Attorney Herlihy received a B.A., Political Science, cum laude, Honors Program, from Boston College in 1979 and a J.D. from Boston College Law School in 1982. He is admitted to practice before Supreme Judicial Court of Massachusetts and the U.S. Federal District Court for the District of Massachusetts.

47. Since 1993, attorney Herlihy has maintained an intellectual property/entertainment law practice in the Boston area. His clients include musicians,

recording artists, authors, writers, composers, performers, managers, producers, visual artists, entrepreneurs, multi-media companies, filmmakers, music publishers, record companies, software companies and service providers.

48. Attorney Herlihy is a frequent lecturer and panelist at music industry conferences, colleges, universities, law schools and bar associations, including The South By Southwest Music Conference and the Copyright Society of the USA regarding entertainment law and Attorney Herlihy is a frequent panelist and presenter at Massachusetts Continuing Legal Education, and the Boston Bar Association, where he educates attorneys on the subject of intellectual property.

49. Attorney Herlihy has contributed as an entertainment law commentator in various television programs, radio programs, print and on-line media, including the PBS/WGBH news show "Greater Boston", NBC's "Today Show", The Boston Globe, The Boston Herald, Lawyers Weekly, Business Insider and The Boston Phoenix in connection with developments in the entertainment industry.

50. Attorney Herlihy is also a Teaching Professor at Northeastern University in the College of Art, Media and Design. Since 1997, attorney Herlihy has taught numerous four credit courses, including *Music Industry I* and *II, Copyright Law for Musicians, Record Industry, Artist Management, Special Topics in the Music Industry* and *Running an On-Line Music Company*. He also teaches classes in Northeastern University's Master of Music Industry Leadership Program, including *Intellectual Property for Music Management* and *Advanced Licensing.*

51. I know that Attorney Herlihy has a very good reputation as an intellectual property authority in the Greater Boston legal community. I believe that attorney Herlihy rendered all such services identified on the invoices and expended the amount of time he identified on the invoices. David Herlihy and reviewed every time entry that he has

identified on his invoice and we discussed the work that was done by attorney Herlihy; I compare it to my own notes I have an extremely high degree of confidence and certainty that attorney Herlihy actually performed the services for the duration of time indicated on the invoices. As we share my office frequently during this matter, I personally observed much of the work product as attorney Herlihy worked.

**(10) The Undesirability of the Case**

52. There is nothing unique about this case that would affect this factor.

**(11) The Nature and Length of the Professional Relationship with the Client.**

53. This is the first time either I, David Given or attorney Herlihy represented Mr. Goudreau. Attorney Tarlow has an ongoing prior relationship with Goudreau.

**(12) The Size of Awards in Similar Cases**

54. I am unaware of any factors that would affect this aspect of the analysis except for the fact that we succeeded in defending the trademark claims and this Court therefore has the authority to award a legal fee based upon such success.

55. We received no settlement offer from any of the defendants which were substantial or realistic. No settlement offers were made which approached the value of the case.

56. The fees and costs requested herein reflect the amount of work, effort and time Attorney Herlihy and I invested in this case.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 15th DAY OF DECEMBER, 2016

/s/ Jeffrey S. Baker

_____

Jeffrey S. Baker