1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3    _____

4    DONALD THOMAS SCHOLZ,

5                    Plaintiff,        Civil Action
                                       No. 13-10951-DJC
6    V.
                                       October 31, 2016
7    BARRY GOUDREAU,                   4:01 p.m.

8                    Defendant.
     _____
9

10

11              TRANSCRIPT OF CHARGE CONFERENCE

12         BEFORE THE HONORABLE DENISE J. CASPER

13              UNITED STATES DISTRICT COURT

14          JOHN J. MOAKLEY U.S. COURTHOUSE

15                   1 COURTHOUSE WAY

16                  BOSTON, MA  02210

17

18

19

20
              DEBRA M. JOYCE, RMR, CRR, FCRR
21                 Official Court Reporter
              John J. Moakley U.S. Courthouse
22              1 Courthouse Way, Room 5204
                    Boston, MA  02210
23                 joycedebra@gmail.com

24

25

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3   LAWRENCE G. GREEN, ESQ.
     SUSAN E. STENGER, ESQ.
 4   Burns & Levinson LLP
     125 Summer Street
 5   Boston, MA 02110
     617-345-3000
 6
     FOR THE DEFENDANT:
 7
     JEFFREY S. BAKER, ESQ.
 8   Baker & Associates
     2 West Hill Place
 9   Suite 100
     Boston, MA 02114
10   617-573-9505

11   DAVID M. GIVEN, ESQ.
     Phillips, Erlewine, Given & Carlin LLP
12   39 Mesa Street, Suite 201 - The Presidio
     San Francisco, CA 94129
13   415-398-0900

14   DANIEL P. TARLOW, ESQ.
     Copani Tarlow & Cranney
15   265 Broadway
     Methuen, MA 01844
16   978-686-0010

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Denise J. Casper, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on October 31, 2016.)

THE CLERK:  Court is in session.  Please be seated.

THE COURT:  Ms. Hourihan, can you just hand these to counsel, two to each side, verdict forms?

Counsel, I've given you the jury charge, and now Ms. Hourihan is handing two copies either side of the verdict form.  I'd take up the charge before the verdict form.

I know there were a few other matters you wanted to be heard on today, some of which are also related to charge issues.

Counsel, I'm just going to take them up in the following order:  Mr. Green, do you want to be heard further on the motion to amend?

MR. GREEN:  Yes, your Honor, and I'll be brief.  I understand that you have read the papers here.

I don't know that I've seen an opposition on this, although I had understood Mr. Given was filing something.

THE COURT:  Okay.

Counsel, give me one second.

(Discussion off the record.)

```
 1              THE COURT:  Mr. Tarlow, is there a written opposition?
 2   You just want to be heard?
 3              MR. TARLOW:  There's no written opposition.  I'll be
 4   heard if the Court feels it's necessary.  Otherwise I just
 5   stand in opposition to the motion.
 6              THE COURT:  Counsel, Mr. Green, just give me one
 7   moment, please.
 8              MR. GREEN:  Certainly.
 9              (Pause.)
10              THE COURT:  So, counsel, I have before me all of the
11   case law and relevant section of Rule 15 before me.  I just
12   also wanted a hard copy of your motion.
13              I'll hear you now.
14              MR. GREEN:  You now have the hard copy before you?
15              THE COURT:  I have a hard copy as well.  I just wanted
16   it in front of me.
17              MR. GREEN:  I think I will ask you to turn to the top
18   of page 3, your Honor --
19              THE COURT:  Yes.
20              MR. GREEN:  -- which talks about the fact that under
21   Rule 15, the implied consent to an unpleaded claim can be --
22   can occur in two ways.  And it's either/or, your Honor.  And we
23   would submit to the Court that we satisfy both of these, and
24   that if you're convinced on either one of them, you should be
25   granting the amendment.  The claim can be introduced outside of
```

1    the complaint and then be treated by the opposing party as

2    having been pleaded.

3         And here we have a case, your Honor, where you have

4    dismissed -- you have dismissed a contract claim, and we are

5    saying that the complaint that is now before this Court for

6    this trial did not include a contract claim, and because of the

7    lines of questioning that we have referenced here from both

8    Mr. Boch and Mr. Goudreau, we have very clearly, your Honor,

9    that Mr. Boch was authorized by Mr. Goudreau, in essence, to

04:05 10    take care of all of the advertising, all of the promotions.  It

11    was certainly made clear in the 2009 agreement where

12    Mr. Goudreau, in essence, signs away all rights to this.

13    Mr. Boch was confirming that even before then he had that

14    authority.

15         We also note, your Honor, that Mr. Boch made clear

16    that he was acting for the band.  This is not some LLC.  He

17    said he was acting for the members of the band.  We had him

18    list the band, and Mr. Goudreau's testimony was consistent.

19         And then going back to page 3, your Honor, or if the

04:06 20    opposing party acquiesces to the introduction of evidence which

21    is relevant only to the unpleaded issue.  Arguably, this

22    evidence was not relevant to the case because I was asking

23    about express authority here.  There was no objection, of

24    course.  So they have consented.

25         THE COURT:  But is that true where that would also

1    bear on whether or not there's apparent authority?

2        MR. GREEN:  Well, it's interesting, because apparent

3    authority, your Honor, is really how the parties are held out

4    to the outside world, whether either of them is basically

5    saying something to the outside world as to the fact that they

6    have apparent authority here.  And I don't know that there is

7    much on the record on that, but this has to do with the

8    relationship between and among the two parties here,

9    Mr. Goudreau and Mr. Boch here.  They had an express

04:07 10   understanding as to what the authority was here.

11        The other point I would make here, your Honor, is that

12   prejudice is to be considered here.  Again, I don't see any

13   written opposition, I'll be glad to respond if Mr. Tarlow is

14   going to make this argument, but I fail to see what the

15   prejudice is.  And indeed, I would argue that, indeed, not only

16   is there severe prejudice to Mr. Scholz by denying the

17   amendment, but it is going to be a really harmful waste to the

18   resources of this Court, to the parties, if we need to go up to

19   appeals court on this and they were to decide either that

04:07 20   summary judgment should have been denied on that ground or that

21   this Court should grant the Rule 15 motion.  I, frankly, don't

22   see any prejudice to them by proceeding ahead at this point in

23   time, and we do ask that the amendment be allowed.

24        Thank you, your Honor.

25        THE COURT:  Mr. Tarlow.

1      MR. TARLOW:  Your Honor, I'll only respond if the

2  Court feels that it's necessary to clear up any points.

3      THE COURT:  Well, I'll hear you certainly as to the

4  last point about prejudice, counsel.

5      MR. TARLOW:  Yes, your Honor.

6      Had we tried this case as a breach of contract case,

7  we would have prepared the case much differently.  We would

8  have placed much more emphasis on the issues of material breach

9  related to the contract, and we would have called other

04:08  10  witnesses related to the understanding of the contract.

11      I would suggest to your Honor that if you take the

12  evidence as was stated and you were to take it out of this case

13  and say, Well, this is a contract reformation action or a

14  contract rescission action, but probably closer to a contract

15  reformation action between Mr. Boch and Mr. Goudreau.  Both

16  parties testified consistently, and there was no inconsistent

17  testimony that the meeting of the minds of the parties had

18  nothing to do with the actual authority to go and advertise any

19  way he wants.  Therefore, even though you have a writing which

04:09  20  nobody who testified seems to have read, nobody who testified

21  seems to have understood the agreement, you grant this

22  expressive authority, no one even thought at the time that was

23  going to be even an issue, that now a third party wants to

24  enforce a term that the two parties to the agreement, two of

25  the five parties -- six parties to the agreement wants to

```
 1    enforce.  And there is prejudice, your Honor, on a breach of
 2    contract claim, and we would have tried the case much
 3    differently and spent a lot more time.
 4         To your point, you already anticipated one of my
 5    objections.  The reason why it was relevant and came in and why
 6    we didn't object to further delay the trial more than it was
 7    delayed was because we felt at some slim level it does have a
 8    bearing on the issue of apparent authority, to the extent the
 9    Court even gets to that at this point given the testimony.
10         THE COURT:  Counsel, I appreciate the arguments on
11    either side.
12         Mr. Green, I did have a chance not just to review the
13    motion but also the relevant case law in this circuit,
14    specifically in regards to Rule 15(b)(2).  And I think it was
15    framed correctly, and I think Mr. Tarlow's response is also
16    framed correctly in terms of what standard I apply here.
17         Counsel, I can't say, at least for 15(b)(2), that
18    there is any implied consent or acquiescence by the defense
19    here in the introduction of this evidence.  I think I disagree
20    with the contention that it has no relevance to the apparent
21    authority issue.
22         I also think that there is prejudice to the defense
23    for the reasons that Mr. Tarlow has articulated.  I
24    certainly -- no offense to counsel -- have no interest in doing
25    this again with all of you, but, certainly, Mr. Green, the
```

04:10 (line 10)
04:10 (line 20)

1    issue is preserved, and your objection is noted for the record.

2        MR. GREEN:  Thank you, your Honor.

3        THE COURT:  Counsel, just to, I suppose, take the

4    various Rule 50 motions in sequence.  And, Mr. Given,

5    Ms. Hourihan may have already mentioned this to you, but you

6    should be sure to file your motion on ECF in the normal course,

7    especially since I've written on my copy.

8        MR. GIVEN:  We'll do that as soon as we get back to

9    our office.

04:11 10        THE COURT:  I will hear from you, Mr. Green.  I will

11    hear you from in response, but also in regards to the Rule 50

12    motion on the counterclaims.

13        MR. GIVEN:  Sure.  I'm going to make these points very

14    quickly, your Honor, because we've briefed them several times,

15    and we've argued them several times.

16        I think the whole case on the other side is cooked for

17    two reasons -- I say "cooked," the whole case is cooked because

18    everything proceeds from the trademark infringement case.  It's

19    cooked for the first reason because, unlike every other case

04:12 20    that I've done on a counterfeit trademark case, the plaintiff

21    has failed to put in the goods or services as part of their --

22    as part of their case in chief.  This is a highly unusual

23    situation.

24        In the normal counterfeit case, you come in with the

25    actual physical products and you present them to the jury so

1   the jury can actually see the similarity between the two goods.

2   That was not done by the plaintiff in this case.  They did not

3   put in any evidence with respect to the recordings of -- the

4   actual recordings, that is -- the Ernie and the Automatics "Low

5   Expectations" album and any one of the six or seven BOSTON

6   albums they could have put into evidence to demonstrate to the

7   jury.  And, again, in 30 years of practice, I've never heard a

8   best evidence objection, but I'm going to turn the tables now.

9   The best evidence of the similarity of that good is the actual

04:13 10   recordings; the recordings are not in evidence.  And for that

11   reason, I think it the claim fails.

12        Same with respect --

13        THE COURT:  Counsel, doesn't it -- counsel, doesn't it

14   at least apply to the -- the jury has seen the Ernie and the

15   Automatics video promotion, and they've certainly seen the ads

16   for how Mr. Goudreau was presented for purposes of the services

17   coming, right, for the purposes of the performances coming?

18        MR. GIVEN:  Sure.

19        THE COURT:  Why isn't that enough at least for Rule 50

04:13 20   purposes?

21        MR. GIVEN:  If we're talking about the live

22   performances, there's no -- I don't think it's enough to simply

23   refer to an ad and say that's enough to present a case for

24   counterfeit services.  You have to actually have evidence of

25   what those services are.  The best evidence of those services

        1    would have been a recorded performance of Ernie and the

        2    Automatics.

        3            Incidentally, we were prepared to present that to the

        4    Court, and we were shot down on that.  But a recorded version

        5    of the live performance of Ernie and the Automatics and,

        6    likewise, at or about the same time a recorded version of a

        7    live performance of BOSTON, that is the best evidence of the

        8    services that are contended to be on the one hand genuine and

        9    on the other hand counterfeit.

04:14  10            Same with respect to the record.  The best evidence of

       11    those goods is the actual recordings.  We could have heard one

       12    or two tracks from each of the recordings, one or two tracks

       13    from "Low Expectations," for example, one or two tracks from

       14    any of the six or seven BOSTON albums.  That would have been

       15    the best evidence of the goods, the counterfeit goods allegedly

       16    on the one hand, the "Low Expectations" recordings, and the

       17    genuine goods on the other hand, the BOSTON recordings.  Those

       18    were not put into evidence, and for that reason, the case

       19    fails.

04:15  20            The other reason that the case fails, the trademark

       21    case fails, is because there's been no evidence of harm.  Harm

       22    is a necessary element to a trademark infringement case.  In

       23    the 1st Circuit, there are two species of harm.

       24            The first species is lost sales.  Zero evidence on the

       25    subject of lost sales.  We all know that by now.  We've been

1  pounding that on the defense side, and I don't think the other

2  side really is going to have an answer to that.

3  The other is a devaluation of the mark through what's

4  called so-called reverse confusion.  Again, I collected the 1st

5  Circuit cases at D. 203-3 at page 22.  I believe that's one of

6  our proposed jury instructions.  All of the leading 1st Circuit

7  cases are there.

8  Both species of harm in this circuit require, quote,

9  organized economic evidence to support a finding.  That's the

04:16 10  Fishman case.  We've cited that repeatedly.  That's probably

11  the most important case as it applies to this case.  That's 684

12  F.3d 187, and the jump cite is 193 on the subject of organized

13  economic evidence.  There was no organized economic evidence

14  produced or adduced by the plaintiffs in this case on either

15  lost sales or devaluation of the mark.

16  And it's very interesting.  I believe that Mr. Green

17  is about to get up and say, Well, Mr. Scholz testified that,

18  you know, it affected his mark.  Well, that's exactly what the

19  plaintiff did in Fishman, and the 1st Circuit said that's not

04:16 20  enough.  You need to come to court with organized economic

21  evidence, typically adduced through an expert, that says here

22  is how we value the mark, here is how we show a diminution in

23  the value of the mark.  Was not done here.  That's fatal to the

24  trademark infringement case.

25  Now, I did notice in the proposed jury instructions --

1    and I'm sure we'll get to those rather quickly -- that we've

2    taken the secondary liability subject first, which I think is

3    an error, according to my reading of the 1st Circuit authority

4    on it, and it just makes logical sense that you would query --

5    you would instruct and query the jury first on primary

6    liability -- primary first -- before you get to the subject of

7    secondary liability, which goes second.

8          The other points that I want to make very briefly on

9    the plaintiff's case:  The plaintiff failed to produce -- first

04:17 10   of all, this is not an actual damages case.  As the Court may

11   recall, at the final pretrial conference, the plaintiff

12   disclaimed any actual damages.

13         THE COURT:  We're going to return to that.

14         MR. GIVEN:  I was shocked to see there was an actual

15   damages instructions in the proposed instructions.  I'm sure

16   that's going to come out.

17         In order to get to disgorgement of profit remedy --

18   again, Fishman directly on point on this subject -- you have to

19   show one of two things: either direct one-for-one competition,

04:18 20   which means that the two products or services in question are

21   complete substitutes.  That's the exact language that's used by

22   the 1st Circuit, one for the other.  You almost never see that

23   in a services case.  In fact, in my personal experience, I've

24   never seen that.  In a product or goods case, the only time you

25   typically see that is when there are two competitors in the

1    marketplace.  Highly unusual in this circumstance for there to

2    be a direct one-for-one competition case.

3         There is no evidence whatsoever -- Mr. Scholz got on

4    the stand and repeatedly used words like "unique" and

5    "singular" and "special" and "groundbreaking" and "new" and

6    "improved," whatever you want to call it, to describe his

7    sound, to describe his recordings, to describe his live

8    performances.

9         The only other way to get to a case for disgorgement

04:19 10    of profit in this circuit is to prove willful violation.

11    Because this is a secondary liability case, I would suggest to

12    your Honor, there's only one path to willful, and that's

13    through contributory infringement.  By definition -- again, I

14    briefed this several times now to the Court -- there's no such

15    thing as willful apparent authority or willful vicarious

16    liability.  Vicarious liability is by operation of law.  By

17    definition, you can't have a willful apparent authority.  That

18    would be actual authority, doesn't make any logical sense.

19         So I think that the case for direct one-for-one

04:19 20    competition comes out, which means, by definition, the

21    vicarious liability case comes out.

22         The last point I'll make, which is a point I made at

23    the close of the opening, which you said you would reserve on

24    under the Rule 50, is the implied covenant claim.  Again, I've

25    cited direct 1st Circuit authority on this subject, citing the

1    Restatement of Contracts, citing Farnsworth, citing

2    Massachusetts Supreme Judicial Court law to the effect that

3    there is no disgorgement remedy for a breach of contract case.

4    An implied covenant case is a species of breach of contract,

5    unless you have a fiduciary duty running between the parties.

6    There is no fiduciary duty presently running between Mr. Scholz

7    and Mr. Goudreau.  There is no nominal damage claim that can be

8    raised for an implied covenant of good faith and fair dealing,

9    unlike a breach of contract case; and therefore, that claim,

04:20 10    too, fails as a matter of law.

11            THE COURT:  Thank you.

12            Counsel, there are a few of those issues that we'll

13    return to when we talk about the charge, but on the willful

14    infringement, what do you cite for that?  Is it Fishman?

15            MR. GIVEN:  Yes, ma'am.

16            THE COURT:  Okay.

17            Mr. Green, you can respond.  And also, if you want to

18    address your Rule 50 as to --

19            MR. GREEN:  I'll be glad to, your Honor.

04:21 20            Your Honor, Exhibit 10 in this case is the trademark,

21    and it deals with the use of the word "BOSTON" in the musical

22    context.  That does not mean that we have to show act after

23    act, song after song.  What it does mean, your Honor, is that

24    the word "BOSTON" means something in the musical context.  And

25    when you have a defendant acting in coordination with Ernie and

1    the Automatics, time after time taking advantage of that mark,

2    misusing that mark, we have every right to bring a trademark

3    claim.

4         I note that the first ground that Mr. Given

5    mentioned -- I don't even see it in his brief here.

6         The second ground, your Honor, there is very much a

7    devaluation of the mark.

8         Mr. Scholz testified at length his concerns about what

9    went into his work in putting together the quality of the sound

04:22 10    that means BOSTON, an overall theme, an overall lifestyle.  And

11    he was concerned that when we had Ernie and the Automatics

12    playing at the quality that they were playing, with two former

13    band members trying to hold themselves out as that, repeatedly

14    using the mark in a CD, in a video, in web page, print ads, TV,

15    and radio, that they are doing something to devalue the mark

16    and causing confusion.  So, yes, we have very much stated a

17    claim.

18         We do take exception with my brother's recitation that

19    we need to show some type of willfulness on the issue of

04:22 20    disgorgement.  Clearly, my brother recognizes that we have

21    every right to ask for disgorgement.  We disagree with him on

22    the law.  If you want further briefing on that, your Honor, we

23    can give you that.

24         THE COURT:  Counsel, just to back up.

25         So what about your brother's argument about the need

1    to show economic harm for the purposes of the trademark claims?

2            MR. GREEN:  I think my brother recognized here, your

3    Honor, that if you look at page 2 of his brief, he's talking

4    about two species of harm, either lost sales -- and, no, we're

5    not relying on that -- or devaluation of the mark.  And I did

6    try to address that just now, your Honor, that Mr. Scholz had

7    every concern and it is in evidence time and time again that he

8    worked long and hard to create something that was very special

9    to the mark BOSTON, and that time and time again it was

04:23 10    devalued by what Ernie and the Automatics was doing.  So we

11    think we have shown that in spades here, your Honor.

12            THE COURT:  Counsel, on this -- actually, I don't know

13    that I asked your brother this, but what's the best citation

14    for the willfulness not needing to be shown?

15            MR. GIVEN:  Are you asking me?  I say it does need --

16            THE COURT:  Mr. Green -- I'll come back to you.

17            MR. GREEN:  I can't give you that cite as I'm standing

18    here.  We're not seeing it in what we have to do.  If we can

19    get back to you by tomorrow morning with that, we will give you

04:24 20    a cite.

21            THE COURT:  Mr. Given, what do you -- I see the

22    argument in your papers.

23            MR. GIVEN:  It's all over -- I would just commend the

24    Fishman case to your Honor.  Read the Fishman case.  It's all

25    there.

```
 1            THE COURT:  I'll go back to Fishman.  I see that
 2     cited.
 3            MR. GIVEN:  It's all over that case.
 4            Incidentally, that was a panel in which one of the
 5     former associate justices of the Supreme Court was sitting on.
 6            Fishman is your guide on this subject, your Honor.
 7     Absolutely crystal clear.  In the absence of organized economic
 8     evidence that allow the jury to estimate damages, this
 9     information would not have been sufficient for an award of
04:25 10     damages.  That's referring to the plaintiff's own self-serving
11     testimony that, Oh, my God, my trademark was hurt because this
12     guy was out there selling another product that had my name on
13     it.  It's not enough.
14            THE COURT:  Mr. Green.
15            MR. GREEN:  Should I move to my motion, your Honor?
16            THE COURT:  Yes.
17            Counsel, just give me -- yes.  To the extent I have
18     follow-up questions, I'll address them when we get to the
19     charge.
04:25 20            MR. GREEN:  Thank you, your Honor.
21            We are moving for -- we are moving for the direction
22     of a verdict in our favor as to the three claims that are part
23     of the counterclaim here.
24            I am looking, your Honor, at page 36 of Mr. Goudreau's
25     counterclaim here, his --
```

```
 1              THE COURT:  You mean the two counterclaims, right?
 2              MR. GREEN:  I was going to cover the breach of
 3    contract first --
 4              THE COURT:  Okay.
 5              MR. GREEN:  -- your Honor.
 6              Mr. Goudreau is basically talking about three types of
 7    breach:  Interfering with Goudreau's right to identify himself
 8    as a former member of the band BOSTON with respect to future
 9    performances; two, interfering with his right to accurately
10    refer to himself as an original member of BOSTON; three,
11    threatening promoters and venues who seek to retain Goudreau
12    for musical performances.
13              The second one is easily dealt with, your Honor,
14    interfering with Mr. Goudreau's right to accurately refer to
15    himself as an original member of BOSTON.  This is under his
16    breach of contract count.  He has no such right.  He has
17    conceded that right, and he has testified time and time again
18    that the contract calls for him to say only "former member of
19    BOSTON."  So I'm not even sure why that's there in the
20    complaint.
21              With respect to threatening promoters and venues, your
22    Honor, I don't know what evidence they have.  And I would
23    suggest to this Court there is no such evidence.
24              The best they can do is to point to -- I believe it is
25    Exhibit 26, which is the letter that Ms. Stenger wrote to World
```

1    Classic Rockers, which accurately set forth that Mr. Fran Cosmo

2    was subject to a contractual restriction, which further

3    accurately pointed out some things that were wrong with the

4    advertisements here.  I certainly don't think that that letter

5    constitutes a breach of contract, your Honor.  And frankly,

6    there is no other evidence of a breach of contract.

7         And then, going back to the first point they raise,

8    interfering with Goudreau's right to identify himself as a

9    former member of the band BOSTON with respect to future

04:28 10   performances.  Again, what are they pointing to?  At best,

11   apart from this letter that we just looked at, they're pointing

12   to lawsuits that were filed.  Apparently none of them were

13   served.  They're looking at a draft complaint here, your Honor.

14   You have already ruled with respect to abuse of process.  You

15   have ruled as a matter of law that they have no abuse of

16   process claim.  Mr. Scholz was entitled to file those lawsuits.

17   There is nothing in the record to suggest that those lawsuits

18   themselves caused the type of damage we're talking about here.

19   And we do ask for a Rule 50 ruling on that point.

04:29 20        The breach of implied covenant of good faith and fair

21   dealing, your Honor, I think very much follows the same thing.

22   I don't think there is anything here that is in addition to the

23   contract claim here.

24        I do note that he has a statement in paragraph 71,

25   Goudreau was forced to resign from BOSTON by Scholz in 1981.

1    That, frankly, is not even part of this case here.

2            And I think, your Honor, most significantly, we

3    believe that we're entitled to Rule 50 relief on the 93A claim.

4    Again, in the absence of abuse of process, what exactly is the

5    unfair and deceptive practice?  This Court is well aware of

6    what the standards are for that, and I don't see anything that

7    they can call unfair and deceptive.  Filing complaints where

8    there is no abuse of process is not unfair and deceptive.

9    Enforcing contract rights is not unfair and deceptive; writing

04:30 10    demand letters.  And even if this Court were to somehow believe

11    that the contract claim survives, we believe that there is no

12    reason for the 93A claim to survive.

13            Thank you, your Honor.

14            THE COURT:  Thank you.

15            Counsel, as to the 93A claim, which I think we all

16    agreed was coming to me, I see that as being reserved on

17    between the parties, counsel.  I understand why --

18            MR. GREEN:  Yes, it is reserved for this Court.

19            THE COURT:  -- you're laying the groundwork but it's

04:30 20    reserved for me.

21            MR. GREEN:  We do agree.

22            THE COURT:  So I'll otherwise reserve it.

23            Counsel, unless the defendant wants to be heard on the

24    counterclaims, let me say this as to both Rule 50 motions on

25    either side -- and I appreciate the arguments, the themes that

1    have been picked up, particularly as to the defendant's motion

2    as to Mr. Scholz's claims.  Obviously, I am familiar with the

3    arguments argued to me before we began the trial.  I'm not

4    going to grant the Rule 50 motion.  Certainly your rights are

5    preserved until after a verdict is rendered in this case.  I

6    think on -- although some of these issues, Mr. Given, may be

7    quite close as a factual matter, I'm going to allow them to go

8    forward to the jury.

9        There are a few things that you mentioned in your

04:31 10    argument that I've addressed in the charge.  I'll hear from

11    counsel in a moment on them.  One was this concept, which I

12    don't think the parties will disagree with, which is that the

13    breach of the implied covenant of good faith and fair dealing

14    rises or falls with the trademark claims.  I think I actually

15    put language in the charge to that end, and that was based

16    largely on the arguments that I had with counsel when I met

17    with you at the pretrial and was addressing your motions in

18    limine.

19        There's some other issues, counsel, that you raise

04:32 20    that I am going to address in the charge.  That having been

21    said, I think a lot of the factual basis and reading the record

22    in the light most favorable to the plaintiff, I can't say that

23    no reasonable fact finder could find as to any of the claims

24    against the defendant.  So I'll deny it, but your rights are

25    reserved for any post-verdict findings.

```
 1            MR. GIVEN:  Thank you, your Honor.
 2            THE COURT:  The same goes for the plaintiff,
 3    Mr. Green, as to your motion as to the counterclaims.  I would
 4    say the evidence is also, I know, hotly contested, but I can't
 5    say no reasonable fact finder could find for the defendant as
 6    to the counterclaims -- I'm not addressing the 93A claim at
 7    this point -- but as to the contract claims that are before the
 8    jury.
 9            Counsel, as to the jury charge, I do want to hear from
10    both sides on the charge.
11            Just a few things I'll just note before we begin.  One
12    is that I reviewed the proposed instructions on either side, as
13    well as, I think, the plaintiff had a supplemental set of
14    instructions, which I also considered.  I also gave thought to
15    arguments that had been made before me in regards to
16    substantive motions and motions in limine.  There were a few
17    questions that I had that I'll address as we move through the
18    charge.  One Mr. Given has already touched upon, which is this
19    whole actual damages piece.  That was included in plaintiff's
20    proposals.  I do, Mr. Given -- I haven't forgotten the
21    discussion we previously had on that issue, but I'll hear
22    counsel on what should be done in the charge about that.  There
23    are a few other categories, frankly, mostly concerned with
24    damages that I have for counsel.  But let's just move through
25    it.
```

1          Counsel, unless -- let me do it this way.

2          Part I, counsel, which is pages 1 through 19, are my

3   general instructions.  I don't imagine -- I'll certainly hear

4   you if you have any objections or additions.  They tend not to

5   be particularly controversial, and I did look -- I think it was

6   the defendant that proposed some general instructions.  I did

7   look at those when I put this together.  But are there any

8   objections or additions to Part I?

9          MR. GREEN:  Not from the plaintiff, your Honor.

04:35 10          MR. BAKER:  Your Honor, we haven't really had a chance

11   to read them carefully enough.  The quick, superficial review

12   is no concerns.

13          THE COURT:  Counsel, let me just -- counsel, other

14   than making sure that when I refer to the burden of proof, I

15   made certain to refer to the defendant's burden on the

16   counterclaims, and also I'd just point out on page 10 in

17   regards to exhibits, just so the jury wasn't confused, I did

18   make reference to essentially the chalks that they're not

19   getting so that they would understand there wasn't something we

04:35 20   were withholding from them, there was a reason they didn't get

21   them.

22          Counsel, I did mention on page 15 the one deposition

23   which I had essentially given them the contemporaneous

24   instruction, but I've added it.

25          Other than that -- and the burden of proof appears on

1    18 to 19.  And again, I was trying to make clear that it

2    applied to the defendant on the counterclaims in the way it

3    applies to the plaintiff on the primary claims.

4         Counsel, I suspect the same is true as to section III,

5    which is much briefer and is basically their instructions for

6    deliberating.

7         Counsel, any objections?  These are just pages 38

8    through 43.

9         I will tell you that when I get to the bottom of 42 in

04:36 10   delivering it, that's when I would see counsel at sidebar to

11   tell me if I misspoke in any way in reading, or to preserve any

12   objections you have.  So that's -- before I get to page 43 is

13   where I would do that.

14        Any objections to Part III?

15        MR. GREEN:  No objection to Part III, your Honor.

16        MR. GIVEN:  No objection, your Honor.

17        THE COURT:  So Part II is the part, I suspect, we'll

18   spend our time.

19        Counsel, why don't I start with Mr. Green, and then we

04:37 20   can move forward.

21        MR. GREEN:  I think our first point, your Honor, will

22   be on page 21.

23        THE COURT:  Yes.

24        And is this the direct control issue, counsel?

25        MR. GREEN:  I'm on contributory trademark

1    infringement.

2           THE COURT:  Yes.  But is your issue as to the direct

3    control and monitoring?

4           MR. GREEN:  There is an issue on that, your Honor.

5           We would like to propose an edit in the first

6    paragraph.

7           "Infringement by third party, namely, Ernie and the

8    Automatics," and then we would like to say "and/or its agents."

9    One way or another, your Honor, we did make -- propose an

04:38 10   instruction that had to do with agents and authority here, and

11   the point we have here is that parties are responsible for

12   their -- the acts of their agents.

13          THE COURT:  Okay.

14          So first on the -- so your first addition is by third

15   party; namely, Ernie and the Automatics or its agent.

16          MR. GREEN:  And/or the agents thereof.

17          THE COURT:  Counsel, do you want to be heard on that?

18   I'm setting aside the direct control and monitoring.

19          MR. GIVEN:  I'd say if this were a straight-up

04:38 20   commercial case, I'd probably say no objection.  But, you know,

21   there is a great risk of confusion on the part of the jury here

22   as to who was and wasn't an agent.  I'm very, very concerned

23   about that, especially given the way this evidence came in.  I

24   mean, they put in a bunch of ads, some of which Ernie -- some

25   of which Mr. Boch touched, some of which he didn't, some which

1    were published, some which he didn't publish, some of them were

2    in the control of third parties.  And there's no such thing, as

3    I understand it, as tertiary liability under trademark law.

4            THE COURT:  Well, counsel, let me put it back to

5    Mr. Green.

6            Other than Mr. Boch, wouldn't it just be easier to

7    say, namely, Mr. Boch and/or Ernie and the Automatics?  Because

8    I take Mr. Given's point.  We're not talking -- right -- the

9    evidence isn't as to anyone other than Mr. Boch --

04:39 10         MR. GREEN:  Let me give an example.

11            With respect to a couple of ads, Mr. Boch said that it

12    was Mr. Baggott who was responsible for the ad.  Now,

13    Mr. Baggott worked on behalf of Mr. Boch and Ernie and the

14    Automatics.  On several occasions, Mr. Boch said, I gave

15    someone this job to do, they did it, didn't come out the way I

16    liked it.  But Mr. Boch is responsible for their acts, and

17    Mr. Goudreau is responsible thereby.  And this can be handled

18    either by a few additional words here or by another separate

19    instruction just dealing with the fact that parties can be

04:40 20    bound by their agents.

21            MR. GIVEN:  Your Honor, your suggested edit is

22    acceptable to the defense.  I think it's entirely proper to

23    identify Ernie Boch along with Ernie and the Automatics.  I

24    mean, if you want to add LLC to be exactly precise on the

25    subject, you're probably -- it's probably advisable to do so.

 1    Again, at the risk of repeating myself --

 2              THE COURT:  No, I get it.

 3              MR. GIVEN:  Okay.

 4              I'm just worried about the confusion.

 5              THE COURT:  I get the argument.

 6              I guess, Mr. Green, I will tell you that when I was

 7    trying to think of what the abbreviation should be, I went back

 8    and forth about whether it should be Ernie and the Automatics

 9    or Mr. Boch.  And I get your point that it's a little bit

04:40 10   broader than that, but I think Mr. Given has a fair point given

11    the testimony that they heard about various promoters.  I

12    wouldn't want there to be any confusion about that.

13              So I may -- I'm going to give it some more thought,

14    but what I may do is say Mr. Boch and/or Ernie and the

15    Automatics, LLC or something like that.  But I understand your

16    point.  But I think there should be some limits to it,

17    especially since we're otherwise giving them instructions

18    about --

19              MR. GREEN:  We don't have an issue with the rest of

04:41 20   that particular instruction, your Honor, but I do -- I will be

21    taking exception on that particular point, because I think the

22    evidence was clear that Mr. Baggott was authorized by Mr. Boch

23    to do a job; and if he didn't do his job, there are

24    consequences.

25              THE COURT:  Okay.

1          MR. GREEN:  But I do agree with you that you should

2     say Ernie Boch and/or Ernie and the Automatics here.

3          THE COURT:  Okay.

4          MR. GREEN:  Thank you.

5          THE COURT:  Counsel, just on the point -- so I note I

6     thought about this further, Mr. Green, after our discussion

7     about the preliminary instructions as to element two that

8     appears on 21, this is had direct control and monitoring.  I

9     did go back to my Memo and Order.  I did also, as I indicated

04:42 10    when we talked about the preliminary charge, go back to the

11    Robinson decision.  And I do think it is -- and I don't think I

12    said differently in the M and O as I read through the relevant

13    sections of it, that it's about whether there was direct

14    control and monitoring as opposed to the ability to.  Robinson

15    talks about the extent of direct control and monitoring, and I

16    think in various places in the M and O I use that language as

17    well, which is why -- this is a long-winded way of saying

18    that's why I had this language in section -- in element two.

19         MR. GREEN:  We understand, your Honor.

04:43 20         MR. GIVEN:  Your Honor, is it your preference to take

21    this instruction by instruction?  Is that the better way to do

22    it?

23         THE COURT:  I guess, counsel, if you have something,

24    either responding to Mr. Green or in this instruction, we might

25    as well do it all at once.

1          MR. GIVEN:  Sure.

2          As to this particular instruction, it sort of raises

3    the subject that I raised with your Honor before, which is the

4    orders of proof.

5          In the ordinary case, the primary infringer would be

6    added as a defendant with the secondary infringer.  All the

7    cases I've done, that's the way it's typically been.  This is a

8    very unusual case because the primary infringer is not a

9    defendant.

04:43 10          The typical order of proof in a case like this one is

11    to ask -- to instruct and ask the jury first if there was an

12    infringement of the trademark.  You only get to the subject of

13    secondary liability second.  The first question is:  Was there

14    infringement of the trademark?  Which, of course, in this case

15    there really are only two elements that plaintiff needs to

16    prove on that subject, likelihood of confusion and harm.  I've

17    already discussed the subject of harm.  I think there's a legal

18    defect in their proof, understanding the ruling of the Court.

19    But, ordinarily, the way this would be structured is first to

04:44 20    ask the question:  Has the primary infringer infringed the mark

21    of the plaintiff?  I would break it down.  Was the use of the

22    mark likely to cause confusion?  Did that use of the mark cause

23    harm?  Only if those two questions are answered in the

24    affirmative -- and the jury should be so instructed -- do you

25    get to the second level of liability, which is, did the

1    indirect infringer contribute to that infringement, or is that

2    indirect infringer vicariously liable?

3        Now, I see the instructions have been broken out as

4    between contributory and vicarious, which I think is

5    appropriate, although I do take some exception with the way

6    it's structured -- and we can talk about that -- but I would

7    urge the Court to consider -- it seems so logical and so

8    correct to ask the jury first:  Did Ernie and the Automatics

9    infringe Mr. Scholz's marks?  Because that is the premise of

04:45 10    this entire proceeding.

11        THE COURT:  I get your point.

12        Counsel, for what it's worth -- and I'll hear from

13    Mr. Green on this as well -- but I did think about that.  And,

14    counsel, I think in a few ways, one, by also separately on 24

15    and 25 breaking out those necessary elements of contributory

16    and vicarious in separate instructions; two -- and I think I do

17    this both implicitly and I think I do it explicitly, but I can

18    add it if I haven't done it explicitly, it's certainly clear

19    from the verdict form but I can make it clear here -- that they

04:46 20    need to find -- there needs to be a showing as to every

21    element.

22        So, anyway --

23        MR. GIVEN:  If I might just take one example, your

24    Honor, and it's really element two in the contributory

25    trademark infringement instruction at page 21.

1           The element says, "Defendant continued to supply his
2   product/services to a third party whom he knew or should have
3   known was engaging in trademark infringement."  That assumes
4   that there's trademark infringement.  The first question should
5   be:  Was there trademark infringement?  You don't get to this
6   second question unless you show -- in other words, it's got
7   trademark infringement embedded in the question.  And it's
8   going to be confusing to the jury.  They're going to read this
9   and say -- and maybe this is also reflected in the verdict form
04:47 10  which was just handed up -- they're going to think, oh, there
11  was trademark infringement.
12          It seems only logical, correct, and fair to ask the
13  jury first, and to instruct in this respect:  Was there
14  trademark infringement?  Then the second question -- and the
15  second instruction naturally flows from that.  That defendant
16  continued to supply his product/services to a third party whom
17  he knew or should have known was engaging in trademark
18  infringement.  I mean, in fact, it's used twice here, trademark
19  infringement, and then again on the subject of direct
04:47 20  monitoring and control, to infringe a trademark.
21          There's a great risk of confusion to the jury on this
22  subject --
23          THE COURT:  No, I understand your point.
24          MR. GIVEN:  Okay.
25          THE COURT:  So you would have me -- you would have it

1  be 1, 3, 4, 2.

2  MR. GIVEN:  1, 3, 4, 2, correct, your Honor.  I think

3  that makes logical sense.

4  THE COURT:  Mr. Green, on that point?

5  Meaning, I guess, counsel, at the end of the day,

6  they're going to be instructed they have to find all of the --

7  it has to be a showing as to all of the elements.  I see

8  Mr. Given's point.  I need to think about it a little more.

9  It's not as if I'm changing --

04:48 10  MR. GREEN:  No, your Honor.  If you're simply talking

11  about changing the order of 1, 2, 3, and 4, we don't have a

12  problem with that.

13  THE COURT:  Okay.

14  MR. GIVEN:  Which may lead us to some changes in the

15  verdict form.

16  MR. GREEN:  I would have a problem what that, your

17  Honor.

18  THE COURT:  The verdict form, counsel, with the

19  exception of elements one -- element one about the existence of

04:48 20  the trademark, and as to the contract claims, the existence of

21  a valid contract, it otherwise asks each of the element

22  questions.  So if I change the sequence here, I will also

23  change it in the verdict form.

24  Counsel, anything else on 21 to 22?

25  MR. GREEN:  No, your Honor.

1          THE COURT:  Okay.

2          MR. GREEN:  If I can go to 23 next.

3          THE COURT:  You may.

4          Let me just start with Mr. Given on this, because he

5     may have the same suggestion about sequence.

6          MR. GIVEN:  Yes.

7          THE COURT:  As I take it that you would have me do 3,

8     4, 1, 2.

9          MR. GIVEN:  Yes, ma'am.

04:49 10          MR. GREEN:  We don't have a problem with the order,

11     your Honor.

12          THE COURT:  Okay.

13          And if I did make that change, I would do the same on

14     the verdict form.

15          But, Mr. Green --

16          MR. GREEN:  My issue, your Honor, is with respect to

17     number 2, where it says, "Mr. Goudreau and the party had

18     authority to bind the other."

19          Now, we don't have to show, your Honor, that Mr. Boch

04:50 20     gave Mr. Goudreau authority.  Our case is clearly that

21     Mr. Goudreau gave Mr. Boch authority.  And rather than saying

22     that they both have the authority to bind one another, we would

23     simply say that number 2 be amended to say the third party had

24     authority to bind Mr. Goudreau in transactions.

25          THE COURT:  Okay.

1          MR. GREEN:  And I think it should say -- it then

2    continues with third parties.  I think that's actually a little

3    confusing.  I think it should say, "Ernie Boch and/or Ernie and

4    the Automatics had authority."

5          THE COURT:  Okay.

6          MR. GIVEN:  I'm advised by my brother Baker that under

7    Massachusetts law, the authority has to run in both directions.

8          I confess that I'm not greatly experienced in this

9    subject as it pertains to Massachusetts law, but that's what

04:50 10    I'm told.  So it appears to us, anyway, that the instruction is

11    properly drafted on this subject.

12          THE COURT:  Counsel, I guess -- and I'm fine if

13    Mr. Baker wants to address this issue, but, I mean, I think

14    what Mr. Green is saying -- I mean, there's no -- why does it

15    have to flow for both ways where the allegation is about,

16    essentially, what Mr. Goudreau delegated?

17          MR. BAKER:  Judge, that's my understanding of the way

18    apparent authority works, that it cuts both ways.

19          Now, maybe Mr. Green will argue it's not necessary to

04:51 20    demonstrate anything that Mr. Goudreau did on behalf of

21    Mr. Boch, but I think the jury instruction has to address that

22    and then leave it up to us to explain to the jury otherwise.  I

23    do believe it goes both ways for that apparent authority

24    agency/principle relationship to operate as a matter of law.

25          MR. GREEN:  Apparent authority, your Honor, is one

```
 1   holding out the other.  It is not either one holding out each
 2   other.  And I would challenge Mr. Baker to come up with any
 3   authority that says that --
 4            THE COURT:  So, counsel, how about before we leave
 5   here, you can both give me your best case on that proposition,
 6   and I'll look at it again.
 7            MR. BAKER:  Okay.
 8            MR. GREEN:  Certainly.
 9            THE COURT:  Counsel, just to Mr. Green's other
10   point -- and again, I went back and forth about this, but I
11   think it is less confusing to say who the third party is we're
12   talking about, so the -- so just looking at what is now
13   numbered 1.  Defendant, Mr. Goudreau -- I'm inclined to say the
14   same thing wherever I refer to EATA -- so a third party -- I'm
15   still on 23, what appears as number 1 now.
16            MR. GIVEN:  What I would suggest, your Honor, is that
17   when you first refer to Ernie and the Automatics, LLC, you do
18   so as follows -- this is at 21 -- namely, Ernie and the
19   Automatics, LLC and/or Ernie Boch -- I hate using "and/or" --
20   or Ernie Boch, Jr., and then, paren, collectively, quote, EATA.
21   And then from that point forward, you can just use EATA as a
22   substitute for the two collectively.
23            MR. GREEN:  And I, actually, think that's a good
24   suggestion, your Honor.  As long as it is clear it is and/or
25   Ernie Boch.
```

04:52 (line 10)
04:53 (line 20)

```
 1            THE COURT:  Yes.  So here's what I'll do.  On 21, the
 2    end of the first paragraph, I will do as suggested, Ernie Boch,
 3    Jr. and/or Ernie and the Automatics, LLC (EATA), and then I'll
 4    just use EATA going forward to 23.  And I'll just say
 5    defendant, Mr. Goudreau, and a third party.  I'll put in parens
 6    here EATA.  And 2, what's now 2, Mr. Goudreau and EATA.  I'm
 7    reserving on the issue you raised Mr. Green.
 8            MR. GREEN:  Thank you.
 9            MR. GIVEN:  I would just suggest using the word within
10    your paren, "collectively," comma, EATA.  Because you're
11    talking about more than one party, entity, individual.
12    That's --
13            THE COURT:  No, no, it's in the first line.
14    Mr. Goudreau and EATA as opposed to the third party.  In the
15    first part of number 2.
16            MR. GIVEN:  I was just referring to the first time
17    that you define EATA.
18            THE COURT:  Yes.
19            MR. GIVEN:  I do a lot of transaction work, and we're
20    really careful about that.
21            MR. GREEN:  Just to be clear, Mr. Given's suggestion,
22    which I assume the Court's adopting, is it's "and/or."
23            THE COURT:  Yes.
24            MR. GIVEN:  I didn't say "and/or," I said "or."
25            MR. GREEN:  No, you said "and/or," sir, which is why I
```

1    agreed to it.

2         THE COURT:  Well, counsel, you may have said it both

3    ways, but the way I'm accepting it is "and/or."

4         MR. GIVEN:  I said "and/or" but I said I don't really

5    like using "and/or."  It's strongly discouraged in drafting.

6         THE COURT:  So I'll do that, counsel.

7         MR. GIVEN:  Thank you, your Honor.

8         THE COURT:  Counsel, anything else on 23?

9         MR. GREEN:  Nothing else on 23, your Honor.

04:55 10         THE COURT:  Okay.

11         MR. GIVEN:  I don't see anything on 23.

12         THE COURT:  24?  This is just on trademark.

13         MR. GIVEN:  I have nothing.

14         MR. GREEN:  Nothing, your Honor.

15         THE COURT:  25?

16         MR. GIVEN:  Yes, definitely have something on 25.

17         THE COURT:  Okay.

18         MR. GREEN:  If Mr. Given would like, he can go first.

19    We do have one point on this.

04:55 20         THE COURT:  Mr. Given.

21         MR. GIVEN:  Small, but important, point.

22         Second -- first sentence of the second paragraph, I

23    was really -- I hate to use this word -- I was really confused

24    about why we were calling out actual confusion and saying that

25    it's not necessary.  Your Honor had a very informative decision

1    on this subject several years ago, and I'll just refer to it as

2    the Petco case, where your Honor went through the various

3    Pignons factors and spent a considerable amount of time talking

4    about actual confusion. And in fact, your Honor wrote, That

5    while proof of actual confusion is not essential to a finding

6    of likely confusion, evidence of actual confusion is often,

7    quote, considered the most persuasive evidence of likelihood of

8    confusion because past confusion is frequently a strong

9    indicator of future confusion.

04:56 10        So I didn't really understand this first sentence.

11    This first sentence seems to be telling the jury, Hey, guys,

12    you don't really need -- it's not necessary to show actual

13    confusion.

14        You've got the Pignons factors correctly stated, as I

15    understand it, your Honor, and they track your Honor's opinion

16    in Petco and in the Pignons decision.

17        I have no argument with the balance of the second

18    paragraph. But to call out actual confusion and say it's not

19    necessary -- if you're going to say it's not necessary, then

04:56 20    you probably, in all fairness, should say but it is the most

21    persuasive evidence of likelihood of confusion.

22        THE COURT:  Well, I guess, counsel, it might be

23    placement, too, of the sentence. Perhaps maybe it should start

24    affirmatively and it goes somewhere else, but the standard is

25    that the plaintiff doesn't have to show actual confusion. It

 1    may be -- let me just look down at the factors --

 2          MR. GIVEN:  And you have it.  These factors are

 3    non-exclusive.  Not every factor would necessarily be relevant.

 4    No single factor is determinative.  Why you would call out

 5    actual confusion and say, By the way, in case you were

 6    wondering, actual confusion is not necessary to show likelihood

 7    of confusion?  Just seems unfair in the totality of that

 8    paragraph when the balance of the paragraph, in effect, says

 9    you don't have to look at any single factor.

04:57 10          THE COURT:  Well, I guess, counsel, I think it is

11    actually a correct statement of the law.  Whether or not I also

12    add a sentence that although it's not required to be shown, you

13    can consider it as it bears on likelihood of confusion, might

14    be more complete.  But I don't think it's an incorrect

15    statement of --

16          MR. GIVEN:  I would say only that it's an incomplete

17    statement of binding authority on the subject.

18          THE COURT:  Mr. Green?

19          MR. GREEN:  Your Honor, case after case says it

04:58 20    exactly this way.  And, frankly, your Honor, there are very few

21    cases that talk about this being the most persuasive factor.  I

22    think the way you stated here is very much consistent with

23    Pignons and its progeny.

24          MR. GIVEN:  That's interesting because your Honor

25    cited two 1st Circuit cases on the subject where it said

1    exactly as I said.  Proof of actual confusion is not essential

2    to finding likelihood of confusion.  Evidence of actual

3    confusion is often, quote, considered the most persuasive

4    evidence of likelihood of confusion, citing Beacon Mutual

5    Insurance Company, 376 F.3d at pin cite 18.

6         All I'm saying, your Honor, is it just seems unfair to

7    call out actual confusion right at the top of the paragraph,

8    and then you go through the Pignons factors, correctly so.  You

9    point out that they're non-exclusive, correctly so.  You point

04:59 10   out that not every factor will necessarily be relevant,

11   correctly so.  No single factor is determinative, that includes

12   actual confusion.  Why you would call actual confusion out at

13   the top of the paragraph just seems unfair to me, unless you

14   complete the statement by saying, Evidence of actual confusion

15   is often considered the most persuasive evidence of likelihood

16   of confusion, which is 1st Circuit authority as cited in Petco.

17        MR. GREEN:  And is not the way it's set forth in

18   Pignons, which is the leading authority.

19        THE COURT:  Counsel, I'll go back and look at Pignons.

04:59 20        I'm not inclined, just for planning purposes, to take

21   it out.

22        I guess my big question is whether I should add

23   another line, meaning that it can bear upon the showing of

24   likelihood of confusion.

25        MR. GREEN:  Our only issue, your Honor, is in that

1    sentence, but it's just the way you word it there, when you

2    say, four lines down, as to Mr. Scholz's role as the source or

3    origin of EATA's sound recordings or its live performances -- I

4    think the confusion we're talking about is the use of the

5    trademark BOSTON in the musical context, not about what

6    Mr. Scholz's precise role was.  So we would prefer that you

7    amend the fourth line there, "create confusion in the mind of a

8    reasonably prudent purchaser or user as to the meaning of the

9    word 'BOSTON' in the musical context as they related to EATA's

05:00 10   sound recordings or its live performances."

11            MR. GIVEN:  I don't even know what that means, but I'm

12   assuming that your Honor has tied source and origin -- yeah,

13   right.  So in your instruction on page 24, you directly define

14   what a trademark is, indicates the source or origin of a good

15   or service, right in the second sentence of page 24.  So that

16   ties directly to the instruction you've just given.  It seems

17   exactly right.  I don't think there needs to be any amendment

18   on that one.  That one seems exactly right.

19            THE COURT:  Mr. Green, I was tracking the language

05:01 20   about trademark.

21            MR. GIVEN:  I don't even know what the meaning of the

22   word "BOSTON" the musical context -- what does that even mean?

23   The question is:  Was the Ernie and the Automatics, their goods

24   and their services, tied to Tom Scholz and BOSTON?  Did people

25   think that the source or origin of Ernie and the Automatics was

1    Mr. Scholz or the band BOSTON?  I find the proposition absurd,

2    but I guess we're going to go to the jury on it.  But, in any

3    event, the question is, source or origin of EATA's goods and

4    services.

5          MR. GREEN:  Your Honor, we were very happy with your

6    language four lines up on trademark on page 24.  For the word

7    "BOSTON," for use of that word in connection with sound

8    recordings and live musical performances and the BOSTON logo.

9          As Mr. Given well knows, that is exactly what the

05:02 10    trademark is all about.  It is not about Mr. Scholz's

11    origination of this.  He is the owner of it.

12          So we would simply ask that the line I pointed out on

13    25 be consistent with the language I just pointed out in 24.

14          MR. GIVEN:  Can I make one other point?  I hate --

15          THE COURT:  Let me just understand what Mr. Green is

16    proposing.

17          So what would you have that line say on 25?

18          MR. GREEN:  On 25, in other words, your Honor, we

19    would like you to pick up -- instead of saying "Mr. Scholz's

05:02 20    role as the source or origin of either EATA's sound

21    recordings," I would like you to say, The word "BOSTON," for

22    the use of that word in connection with sound recordings and

23    live musical performances and the BOSTON logo as set forth in

24    the previous page.

25          MR. GIVEN:  Well, I object to that.  I'll also say

1    this, your Honor:  Zero evidence on the subject of the BOSTON

2    logo.  I think everything that's -- and I just caught it myself

3    at page 24.  Anything instructing on the BOSTON logo should

4    come out of this case.  I trust the Court agrees.  There is

5    zero evidence that Ernie and the Automatics used that logo.

6    None.

7           And while we're on that subject, no evidence that

8    anyone ever introduced the band as Just Another Band Out of

9    Boston.  That is a fallacy.

05:03 10           THE COURT:  Here we're just talking -- on page 24,

11   we're talking about what trademark --

12           MR. GIVEN:  You're talking about the logo.  The logo

13   is not even in the case as far as I can tell.

14           MR. GREEN:  The logo is in the case, your Honor.  He

15   didn't move for a directed verdict on the logo, and your

16   instruction is consistent with the evidence.

17           MR. GIVEN:  It's not.

18           THE COURT:  I think for purposes of 24, I'm going to

19   leave it.

05:04 20           I will go back, Mr. Green.  I'm not sure about what

21   you're proposing for 25.  I will think about it and reserve on

22   that.

23           MR. GREEN:  Thank you, your Honor.

24           THE COURT:  Anything else on 25?

25           MR. GREEN:  No, your Honor.

```
 1              MR. GIVEN:  Let me just take a quick look.

 2         I don't think so, your Honor.  Thank you.

 3         THE COURT:  26.

 4              MR. GIVEN:  So I guess I persuaded on fair use.

 5         THE COURT:  Yes.

 6              MR. GIVEN:  Thank you, your Honor.

 7              THE COURT:  And I put it here because it seems

 8    logical.

 9              MR. GIVEN:  I have no objection to its placement.

10         THE COURT:  Okay.

11         27, counsel?  And this was just -- I think this came

12    up in the course of the trial.  I think the jury may be clear

13    on this, but I just added it.  I think it was in one or the

14    other proposals as well.

15              MR. GREEN:  We have no objection.

16              MR. GIVEN:  Your Honor, I actually had an instruction

17    proposed on this subject.  It's at document 208-2 at page 2.  I

18    do think a more fulsome instruction on this subject is

19    warranted given --

20              THE COURT:  I saw the more fulsome instruction.  I

21    thought that was going to be more confusing.

22              MR. GIVEN:  Okay.

23              THE COURT:  I just -- I mean, I think they get -- and

24    my memory may be a little faulty on this, but I think at some

25    point, I may have suggested as much to them directly.  I
```

 1    purposely didn't include the longer instruction because I

 2    didn't want to go off to give it more credence --

 3            MR. GIVEN:  I understand --

 4            THE COURT:  -- than it should get.

 5            MR. GIVEN:  I get it.

 6            Let me make one very tiny note on page 27.

 7            I think the same applies to that home video footage

 8    that was in the music video.  I think that the -- there's no

 9    claim -- Mr. Scholz is not claiming that EATA infringed

05:05 10    Mr. Scholz's copyrights or for that matter his right of

11    publicity in the home video footage that was used in the Ernie

12    and the Automatics music video.

13            MR. GREEN:  Well, I object to any reference to any

14    particular exhibits, your Honor.  If we're going to start doing

15    that, we're going to be here all night.  We're going to be

16    talking about --

17            THE COURT:  Oh, we're not.  It is Halloween.  I can't

18    be the only person with school-aged children.

19            MR. GIVEN:  My kids are back in California.  I thought

05:06 20    I was going to be home by now.  There you go.

21            It's a proper instruction.  I appreciate the Court's

22    willingness to give it.  I think it's exactly correct because

23    we do not want this jury to conflate copyright claims with

24    trademark claims are very, very distinct in the law.  And I

25    would only say that it seems to me that given that there could

1    be some confusion about that footage that they keep pointing

2    to, that a similar instruction be given on that home video

3    footage.

4          THE COURT:  Counsel, I'll think about it.

5          I think the songs have come up during different parts

6    of different witnesses' testimony.  I think the home video

7    didn't have that sort of lasting -- the home video footage

8    didn't have sort of the same lasting impression.  I'll think

9    about it.  I'm inclined to leave it the way it is, but I'll

05:07 10    think about it.

11          MR. GREEN:  Thank you, your Honor.

12          MR. GIVEN:  Thank you, your Honor.

13          THE COURT:  28, counsel?

14          MR. GIVEN:  I have nothing on 28.  Just bear with me.

15    It's a state law, so I'm going to defer to my brothers.

16          MR. GREEN:  Nothing from our end, your Honor.

17          THE COURT:  Mr. Baker?

18          MR. BAKER:  I'm speed reading, Judge.  Okay.

19          (Pause.)

05:07 20          MR. BAKER:  Judge, this seems to be an accurate

21    recital of the state law.  Defendant has no objection.

22          THE COURT:  Okay.

23          Counsel, 30, which is the breach of contract, the

24    introduction of the two counterclaims.

25          MR. GIVEN:  May I proceed?

1          THE COURT:  You may.

2          MR. GIVEN:  I had one very small note on that at the

3     bottom of page 30, and I suggested this in a -- let's see,

4     where did I put this -- I think I put it in my trial brief.

5     This was a suggested change to this instruction because your

6     Honor in your summary judgment decision exonerated Mr. Goudreau

7     of any breach of the 1983 Settlement Agreement; therefore, as

8     to the second element, defendant must show that he performed

9     his own obligations under that agreement.  You have so found.

05:08 10    So it seems to me that this should read just as you did as to

11    the first element, the parties do not dispute that the 1983

12    Settlement Agreement was a valid and binding contract.  As to

13    the second element, the Court has determined that defendant has

14    performed his own obligations under that agreement, period.

15          MR. GREEN:  And we would take exception to that, your

16    Honor.  And we point to the Court's -- another part of the

17    Court's ruling where you expressly ruled on declaratory

18    judgment that Mr. Goudreau could only refer to himself as

19    formerly of BOSTON, and the evidence is overwhelming in this

05:09 20   case that he did not permit that to happen here.  So I think

21    this is very much in play.

22          THE COURT:  Well, counsel, I'll go back and look at

23    it.  My first instinct is not to change it, but I will go back

24    and look at the M and O.

25          MR. GREEN:  Now, on 30, your Honor, I think I'm

1  reading this properly.  It is clear here that because it does

2  relate to element two, this is the breach of contract

3  counterclaim, but Mr. Goudreau can only prevail on either the

4  implied covenant or the contract counterclaim if he is not in

5  breach.  And I just want to make sure that these four elements

6  here are applying to both the implied covenant and the contract

7  claim.  Or putting it differently -- and I know you were trying

8  to cover two claims at once by the implied covenant --

9          THE COURT:  Yes.

05:10  10          MR. GREEN:  -- but I'm wondering if it might make

11  sense to talk about the breach of contract counterclaim,

12  although I do see why you did it here.  I'm not going to

13  challenge that at all in terms of the implied covenant first.

14          But my point there is you cannot -- just as you cannot

15  win a breach of contract claim if you are in breach, you cannot

16  win a breach of implied covenant claim if you are in breach.

17          MR. GIVEN:  Again -- look, logically, the way the

18  Court has done this makes sense because there are competing

19  implied covenant claims running in both directions.  It

05:10  20  probably can be fixed in the special verdict form.

21          I will maintain my objection with respect to that

22  language as to the second element, because I think we have

23  already demonstrated that Mr. Goudreau has performed his

24  obligations under the 1983 Settlement Agreement as so found by

25  this Court in its summary judgment decision.

1          And I think I just -- so the record is clear -- bear

2     with me, your Honor -- I did raise this in the -- I did raise

3     this in our trial brief, document 236 at page 6, under the

4     requested instructions where I withdrew the proposed

5     instruction on actual damages.  I proposed that, and I also

6     proposed amending the instruction on breach of contract as

7     follows:  As noted above, the 1983 Settlement Agreement is a

8     valid and binding contract between Mr. Goudreau and Mr. Scholz.

9     Further, Mr. Goudreau has performed his obligations thereunder.

05:11 10     However, you must still determine that what the agreement --

11     the agreement's terms and whether Mr. Scholz has breached those

12     terms.  I think there's a typo there, but you get the drift, I

13     assume, your Honor.

14          THE COURT:  Yes.

15          Counsel, as I said, I'll go back and look at the M and

16     O as to element two on page 30.

17          Mr. Green, I'm not necessarily following your argument

18     as to the implied covenant argument to the extent that that

19     claim exists on either side.  I guess, are you proposing

05:12 20     something change on page 30?

21          MR. GREEN:  I think I need some type of instruction,

22     your Honor, that for a party to recover on contract, whether

23     it's a breach of contract or breach of the implied contract,

24     that party has to perform his obligations.  I think what I'm

25     suggesting, your Honor, is we take the essence of what you have

1     under number 2 here on page 30 and put it back somewhere in the

2     previous implied covenant.  And frankly, it relates to

3     Mr. Scholz.  Mr. Scholz --

4          THE COURT:  Meaning it applies both ways.

5          MR. GREEN:  Right, right.  And I think one sentence

6     would probably do it, your Honor.

7          THE COURT:  Counsel, do you have an objection to that?

8     That would be actually a change to 29 as opposed to 30.

9          MR. GIVEN:  I think it's 28, right?

05:13 10          THE COURT:  Well, 28 to 29.

11          MR. GIVEN:  We're going to add an element that says

12     that the counterparty has performed his obligations under the

13     19 --

14          THE COURT:  Right.  I mean, I guess it would

15     essentially be -- if you look at 1, 2, and 3, there would be a

16     new 2, right?

17          MR. GIVEN:  I mean, I would defer to my brothers on

18     this.  I don't think it's a necessary element for the breach of

19     covenant of good faith and fair dealing, at least in

05:13 20     California.  I can't say for sure under Massachusetts law.

21     But, I'm assuming, if it's not here, it probably isn't, so we

22     would object to that change.

23          I might make one other stylistic point with respect to

24     when we -- I'm sorry, this is hard to do for me, I just started

25     wearing these cheaters.

1          When we refer to the 1983 Settlement Agreement,

2     stylistically I think from there forward when you refer to

3     contract, it just might as well refer to the 1983 Settlement

4     Agreement.  I mean, it would just make it clearer to the jury

5     it seems to me.

6          THE COURT:  I think I've done that in enough places,

7     but I'll read through it one more time at the end.

8          Counsel, I guess on the implied covenant of good faith

9     and fair dealing, before we leave today or soon thereafter, you

05:14 10    can e-mail to Ms. Hourihan -- I think there are two things I

11    asked about, best cite on the -- I think it was on the willful

12    infringement issue, and second on whether or not the

13    performance -- the claimant's performance is required to be

14    shown for the breach of implied covenant of good faith and fair

15    dealing.

16         MR. GREEN:  We'll be glad to do that, your Honor.

17         THE COURT:  Counsel, moving on, I think -- unless

18    there's anything else in 30 to 31?

19         MR. GIVEN:  No, ma'am.

05:15 20    MR. GREEN:  No.

21         THE COURT:  Damages.  32, I don't know if you have any

22    objections.  This is just sort of the introduction to damages.

23         MR. GIVEN:  To me that looks fine.  I'll refer again

24    to my Massachusetts brothers.

25         MR. GREEN:  32 is fine also to us, your Honor.

1           THE COURT:  So starting on 33 -- and, Mr. Green, I do

2    remember our discussion from -- I think it was the final

3    pretrial -- about actual damages.

4           MR. GREEN:  Right.  And I think what we are going to

5    suggest here, your Honor, is I think it probably makes sense to

6    omit 33 altogether, because our case is for lost profits on 34.

7    So I would take out 33.  And on 34, I would take out the

8    clause --

9           THE COURT:  -- "in addition to."

05:16 10           MR. GREEN:  -- "in addition to."

11           MR. GIVEN:  I agree with taking page 33 out of the

12    instructions.  That's out of the case.

13           I do have serious reservations about 34.

14           THE COURT:  Okay.

15           MR. BAKER:  Judge, could I address, please, the

16    damages question, which was dropped in my lap a couple of

17    moments ago?

18           THE COURT:  Okay.

19           MR. BAKER:  I'm reading what appears to be a tort

05:16 20    instruction.

21           The third paragraph down, "The purpose of the law in

22    awarding damages is to compensate an injured person for the

23    loss incurred because of another person's negligent conduct.

24    The object is to try to restore the person to the position that

25    he would have been had the wrong not occurred."  I think this

```
 1    might have seeped into this case somehow.

 2            THE COURT:  So I would -- so, counsel, I would take

 3    out --

 4            MR. BAKER:  That whole paragraph, respectfully, your

 5    Honor.

 6            THE COURT:  Well, I think --

 7            MR. BAKER:  I'm referring -- may it please the Court.

 8    The purpose of the law in awarding damages, it starts --

 9            THE COURT:  I was going to take out first sentence.

10    Hold on a second.

11            I think the third line -- I think the third sentence,

12    The purpose is not to reward, not to punish -- not to reward

13    and not to punish is a concept that would still stay there.

14    And, actually --

15            (Pause.)

16            THE COURT:  Counsel, I will definitely take out the

17    first sentence.

18            MR. BAKER:  Okay, Judge.

19            THE COURT:  I think as to the other sentences, I think

20    those are appropriate.  There's a "her" that should be a "him,"

21    and singular defendant, but I think I would otherwise keep

22    that.

23            MR. GIVEN:  You may have to change the second sentence

24    of that paragraph, Judge, just to identify what the object is.

25    The object of damages is to try to restore.
```

```
 1              THE COURT:  Yes.

 2              MR. BAKER:  When you talk in terms of damages, it's

 3      consequential damages.

 4              THE COURT:  Thank you, counsel.

 5              MR. GIVEN:  So we've jettisoned 33.

 6              Can we talk about lost profits?

 7              THE COURT:  You may.

 8              MR. GIVEN:  Thank you, your Honor.

 9              Again, I commend Fishman.  Absolutely dead on on the

05:18 10    subject of disgorgement of profits under the Lanham Act.  You

11      must in the 1st Circuit prove either direct one-for-one

12      competition, which there is no evidence of in this case, or a

13      willful violation of law.

14              And there's nothing in this instruction on either of

15      those subjects.  I would respectfully suggest to your Honor --

16              THE COURT:  I'll go back and look at it.

17              MR. GIVEN:  Okay.

18              It's dead on on this point.

19              THE COURT:  Mr. Green?

05:18 20        MR. GREEN:  We don't otherwise have an issue on 34,

21      your Honor.

22              THE COURT:  Do you agree about willful --

23              MR. GREEN:  No, we don't.  As I said, we want to

24      report back to the Court in our reading on Fishman.

25              THE COURT:  So you should file -- you should send
```

 1    something to Ms. Hourihan so I can --

 2              MR. GREEN:  We'll do that, your Honor.

 3              THE COURT:  So, counsel, let's just push forward.  I

 4    think we have only three more pages to go through.

 5              Counsel, 35?

 6              MR. GREEN:  We have no issues on 35, 36, or 37, your

 7    Honor.

 8              There are a couple of other matters we want to

 9    address, but we're fine with the language in all three pages.

05:19 10              THE COURT:  Mr. Given?

 11              MR. GIVEN:  One minute, your Honor.

 12              (Discussion off the record.)

 13              MR. BAKER:  Judge, let me work in reverse, please.

 14              The mitigation of damages seems to be a correct

 15    proposition of law.

 16              THE COURT:  Okay.

 17              MR. BAKER:  Page 36, the inclusion of interest, we

 18    agree that that is properly assessed by the clerk or by a

 19    question to the Court --

05:20 20              THE COURT:  Okay.

 21              MR. BAKER:  -- but not to the jury, obviously.

 22              And then, lastly, the breach of contract damages is

 23    correct also.

 24              THE COURT:  Okay.

 25              So, counsel, Mr. Green, are there other things?

1          MR. GREEN:  A couple of points, your Honor.

2          There was certainly evidence that came in today by

3     Mr. Goudreau about his attorney's fees, and it seems to me that

4     to avoid any confusion here, there should be an express

5     instruction from the Court to the jury that attorney's fees are

6     the province of the Court and not the province of the jury.

7     And I think it can be as simple as that.

8          THE COURT:  Counsel, any objection?

9          MR. TARLOW:  Your Honor, the evidence came in because

05:20 10     my brother opened up the question.  I believe the jury is

11     entitled to consider it.

12          THE COURT:  But not for the purposes of damages.  I

13     think what your brother is saying is that it should be clear

14     that they're not to include that.

15          MR. TARLOW:  I would suggest that the way the evidence

16     went in, they should.  But I take your Honor's point, and I

17     won't argue it further.

18          THE COURT:  So I will add something.  It will be

19     brief.

05:21 20          MR. GREEN:  And the only other request we make, your

21     Honor, is -- and this was in our original instructions, this

22     was our proposed instruction number 6.  We would like the Court

23     to include somewhere this these instructions the following

24     sentence:  "Under a previous ruling in this case, Goudreau had

25     no right to describe himself as an original member of BOSTON

1    and he's permitted to describe himself only as formerly of

2    BOSTON."  We cite to the Court's summary judgment decision,

3    page 28.  Just so there's -- because there is really no room

4    for any confusion on that point.

5              MR. TARLOW:  Your Honor, and I would object to that.

6    I would suggest if the Court was going to invite that

7    instruction, they should also have an instruction as to all the

8    other counts that were dismissed against Mr. Goudreau as well.

9    To allow one without the other, I would suggest both would be

05:22 10   prejudicial and should not be included.

11             THE COURT:  Counsel, your objections are noted as to

12   both.  I'm not going to include either.

13             Counsel, anything else?

14             Mr. Green?

15             MR. GREEN:  Not on the jury instructions.

16             THE COURT:  I know.  We'll move in a second to the

17   verdict form.

18             Anything else, Mr. Given, on the charge?

19             MR. GIVEN:  No, just understanding, as I do, that

05:22 20   we're reserving on the subject of lost profits and that your

21   Honor is going to look at that question --

22             THE COURT:  So here's what I'll do, counsel.  We will

23   meet in the morning --

24             (Discussion off the record.)

25             THE COURT:  We're going to meet in the morning at

1    8:30.

2           Counsel, I will let you know what final decisions I

3    have made on the ones that I've reserved on, and I'll just read

4    it into the record, just so the record is clear and counsel is

5    clear, and I'll give you a clean -- I'll give each side

6    probably just one copy, one clean copy of the final version.

7    But I will let you know that before we begin with the jury.

8           MR. GIVEN:  I would just urge, again, that the Court

9    take a careful look at Fishman.  It's directly on point on the

05:23 10   subject.

11           THE COURT:  I will.

12           On the verdict form -- is that why you stood?

13           MR. TARLOW:  No, your Honor.  I want to be clear,

14   because I think I'm going to be tasked with the research

15   assignment --

16           THE COURT:  On the two issues?

17           MR. TARLOW:  Yes, your Honor.

18           THE COURT:  So it was just on -- one was on whether

19   for the breach of the implied covenant of good faith and fair

05:23 20   dealing whether or not there needs to be a showing of the

21   claimant's performance, right, in the way there would be for

22   the primary contract claim.

23           And then the other was -- and I think, Mr. Given, at

24   least on your side was saying I should look at Fishman for the

25   willful infringement.  I asked -- I suppose on that issue, I

|  |  |
|---|---|
| 1 | was looking more to Mr. Green and his team for something if |
| 2 | he's relying on something contrary to <u>Fishman</u>. |
| 3 | MR. GREEN:  We understand, your Honor. |
| 4 | MR. GIVEN:  There's nothing contrary on that subject. |
| 5 | THE COURT:  So it was only those two things, |
| 6 | Mr. Tarlow. |
| 7 | MR. TARLOW:  Thank you, Judge. |
| 8 | THE COURT:  On the verdict form -- and let's just |
| 9 | assume I'm inclined to switch the sequence, counsel, as to the |
| 05:24 10 | two trademark claims.  So anything I switch in the charge I |
| 11 | will switch on the verdict form, so your rights are reserved on |
| 12 | that. |
| 13 | Counsel, on the -- I tried to make -- these basically |
| 14 | mirror the elements as they're broken down.  On the implied |
| 15 | covenant -- well, as to the first one where there's no dispute |
| 16 | about the trademark, I didn't include that element.  I just |
| 17 | jumped to the other element.  The sequence would be changed, |
| 18 | obviously, for contributory trademark infringement.  And also |
| 19 | on the breach of contract claim where there's no dispute about |
| 05:25 20 | the existence of the contract, I didn't start with is there a |
| 21 | contract. |
| 22 | MR. GIVEN:  Let me, if I might -- I agree with your |
| 23 | Honor's recitation of how the order will line up.  Our |
| 24 | expectation is that it will line up in accordance with the |
| 25 | instructions. |

1          I'm a little confused about if "yes," then what's the

2     next question; if "no," then what's the next question.

3          It seems to me -- I sort of understand why the Court

4     has broken up -- well, I guess I'm not really clear why the

5     Court has broken up the question twice of whether the use by

6     EATA of the mark in question was likely to cause consumer

7     confusion.  There was no evidence in this case that sorted out

8     one use and suggested it was contributory as to Mr. Goudreau

9     and another use that was vicarious as to Mr. Goudreau.  The

05:26 10   evidence came in all at once.

11          THE COURT:  But I think in the same way I'm

12     instructing them that they need to make those findings --

13          MR. GIVEN:  I understand.

14          THE COURT:  -- I think it's appropriate to have them

15     answer them both.  And the signals between the questions were

16     just to make clear that, you know, if you don't find as to an

17     essential element, you're done with that claim.

18          MR. GIVEN:  Well, then you should -- I think then the

19     error here is that if any of these questions are answered in

05:26 20   the negative, you're actually jumping to part 4, not part 3.

21     Because part 3 is Scholz's implied covenant claim.  As your

22     Honor has said over and over again, that claim rises or falls

23     and is entirely dependent upon the trademark claim.  So if

24     there's a negative answer in either parts, I guess, 1 or 2,

25     then you skip part 3.  You don't go to part 3, you go directly

```
 1    to part 4 and you consider Mr. Goudreau's --

 2              THE COURT:  I see your point.

 3              MR. GIVEN:  Okay.

 4              THE COURT:  Mr. Green --

 5              MR. GREEN:  I don't have an objection to that

 6    particular point, your Honor.

 7              THE COURT:  Okay.

 8              And then in terms of damages, I was trying to make

 9    clear as to the infringement claims -- this is on top of 3 --

05:27 10    that this is only if you either have a finding as to

11    contributory or vicarious.

12              MR. GREEN:  I do understand that, your Honor.

13              MR. GIVEN:  Well, the part at the top of page 3 that

14    needs to be struck, your Honor, is this query about actual

15    damages.  That obviously comes out.  So H sub a comes out.

16              THE COURT:  So it would just be b.

17              MR. GIVEN:  It would be b and c, correct.  Assuming

18    that they make a finding of infringement -- one, that they make

19    a finding of EATA's infringement; and two, that they find

05:28 20    Mr. Goudreau either contributorily liable or vicariously liable

21    for that infringement, then, yes, you get to the question of

22    what profits --

23              THE COURT:  Right.  So that's what the signals were.

24              MR. GREEN:  And, accordingly, your Honor, I'm sure

25    Mr. Given would also agree that because of that, we can take
```

         1    out 1 c at the top of page 2 and g at the bottom, because

         2    there's no need to show harm.  If we show -- if we show that

         3    there has -- that the others are answered "yes," then we get

         4    right to that question.

         5            MR. GIVEN:  No, that's not correct.

         6            MR. GREEN:  We certainly do.

         7            MR. GIVEN:  No, that's not correct.

         8            THE COURT:  Counsel, I think they're separate

         9    questions, whether or not there's harm, and then separately if

05:28   10    there's damage.  That's true for breach, too.

        11            MR. GIVEN:  Let me say it this way, your Honor.  You

        12    have to prove harm in order to demonstrate a trademark

        13    infringement.  To get to disgorgement of profit, there is a

        14    heightened level of proof per the Fishman decision, either

        15    direct one-for-one competition or willfulness.  So he's not

        16    correct to say that if they check "yes," there's harm, you go

        17    right to lost profits.  That's incorrect.

        18            MR. GREEN:  Well, again, we will respond on that, your

        19    Honor.

05:29   20            And, Mr. Given, yes, I heard you the first time.

        21            THE COURT:  All right, counsel.  We're almost there.

        22            MR. GREEN:  If we could -- you'll define EATA

        23    somewhere, like, in the beginning here --

        24            THE COURT:  Yeah, although it's probably less

        25    necessary by this point.  But, yes, I think -- I can do the

 1    same definition that I did at the beginning once.  I think by

 2    the point that they get to --

 3              MR. GREEN:  I think that's all we're asking for there,

 4    your Honor.  Thank you.

 5              THE COURT:  Counsel, anything else?

 6              MR. GREEN:  Nothing from our end.

 7              MR. BAKER:  Just one other matter, Judge.

 8              THE COURT:  Yes.

 9              MR. BAKER:  Under the law of the Commonwealth, a

05:29 10    question as to the date of breach of contract should be

 11    presented to --

 12              THE COURT:  Is that just as to the breach of contract?

 13              MR. BAKER:  That is our position, your Honor.  So it's

 14    Chapter 231, Section 6C type question.

 15              MR. GIVEN:  We had a proposed instruction.

 16              THE COURT:  I think you did.

 17              Mr. Green, do you agree with that?

 18              MR. GREEN:  I do agree that's often asked for, your

 19    Honor.  I guess the problem is in this case -- I don't want to

05:30 20    complicate things -- but Mr. Goudreau is talking about multiple

 21    breaches of contract, I think, and certainly he's talking -- I

 22    don't think he's proved anything on it, but arguably different

 23    damages on each.

 24              I have no problem if you want to ask a question:  When

 25    did the breach of contract occur?  And we can see where it goes

1    from there.

2            THE COURT:  I will -- I'll add that question.

3            I will take out the actual profits.  And if I think

4    upon reading the willful infringement cases on either side I

5    think there should be an additional question, I'll add it

6    there.

7            Counsel, I will address any changes I've made to the

8    verdict form when I see you at 8:30 as well.

9            Counsel, anything else?

05:31 10         MR. GIVEN:  No, ma'am.

11            THE COURT:  So I guess just last thing, and I think we

12    really all should go -- I know I should --

13            MR. BAKER:  Are you kicking us out, Judge?

14            MR. GREEN:  We appreciate your patience.

15            THE COURT:  Closing arguments, counsel, a sense of how

16    much time you're going to use on either side?  And just

17    sometimes this is different in different courtrooms.  I --

18    plaintiff would go first, defense would go, and then, if

19    plaintiff has reserved any time, plaintiff can have rebuttal.

05:31 20         MR. GREEN:  Right.

21            My strong hunch, your Honor, is I will ask for

22    45-minute limit, but I intend to do less than that.  But I will

23    be asking for some time to reserve following defendant's

24    closing.

25            THE COURT:  Okay.

1          Counsel?

2          MR. BAKER:  My feeling, Judge, is that we would use 45

3    minutes as well.  I hope we carefully marshaled our time today.

4    I think there's enough left in the tank, so to speak.

5          THE COURT:  Okay.

6          MR. BAKER:  If I go over a minute or two and it

7    doesn't offend the fact we still have some time, but we expect

8    45 minutes to be our argument.

9          THE COURT:  In terms of your warning on time, counsel,

05:32 10   so I'll assume sort of 45 minutes total on either side.

11         Mr. Green, do you want me to give you a warning at

12   five minutes left, ten minutes left?

13         MR. GREEN:  I think I will ask for five minutes left

14   on both, your Honor, and I will -- depending how long my

15   opening is, I will just ask to reserve the rest of the time.

16         THE COURT:  So I guess five minutes would mean your --

17         MR. GREEN:  Why don't we plan for 30 and 15, your

18   Honor.

19         THE COURT:  Okay.

05:32 20   MR. GREEN:  While we're on the subject of closings,

21   your Honor, we are simply going to be referring to exhibits.

22   We will be asking for exhibits to be shown on the monitors.

23         We don't anticipate using chalks.  And if there are

24   chalks going to be used by the other side, just so we're not

25   wasting time tomorrow, we do ask that we be able to see them.

```
 1              THE COURT:  Counsel, I'll let you work that out

 2    amongst yourselves.

 3              MR. GREEN:  Certainly.

 4              THE COURT:  I certainly will -- we'll have a little

 5    time in the morning if there's any issue I need to take up

 6    then.  So --

 7              MR. GREEN:  We'll do that.  Thank you, your Honor.

 8              THE COURT:  Thank you, counsel.

 9              MR. BAKER:  Happy Halloween.

10              THE COURT:  Thank you.

11              (Discussion off the record.)

12              (Court adjourned at 5:33 p.m.)

13                    - - - - - - - - - - - -

14                          CERTIFICATION

15              I certify that the foregoing is a correct transcript

16    of the record of proceedings in the above-entitled matter to

17    the best of my skill and ability.

18

19

20

21    /s/Debra M. Joyce                    June 8, 2017
      Debra M. Joyce, RMR, CRR, FCRR       Date
22    Official Court Reporter

23

24

25
```